UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**JANE DOE**, *et al.*,

    *Plaintiffs*,

v.

**PAMELA BONDI**, in her official capacity as Attorney General of the United States, *et al.*,[1]

    *Defendants*.

Case No. 1:25-cv-286-RCL

## ORDER

On February 18, 2025, this Court entered a Preliminary Injunction [ECF No. 44] enjoining the enforcement of Sections 4(a) and 4(c) of Executive Order 14168 on Eighth Amendment grounds against plaintiffs Jane, Mary, and Sara Doe. On February 21, the plaintiffs filed an Amended Complaint adding nine new plaintiffs, all of whom are transgender women incarcerated in women's BOP facilities seeking the same relief as the original three plaintiffs. *See* Amended Complaint, ECF No. 47. That same day, the plaintiffs filed a Motion for a Temporary Restraining Order and Expanded Preliminary Injunction [ECF No. 50] ("TRO/PI Mot.") to prevent the Government from implementing Executive Order 14168 as to all plaintiffs. The plaintiffs emphasized the urgency in resolving this Motion because "the additional plaintiffs . . . were rounded up by BOP officials and informed that they would be immediately transferred to men's prisons and would have their healthcare terminated pursuant to the Executive Order." TRO/PI Mot. 2. On February 23, the Government filed an Opposition [ECF No. 50] ("Opp'n"), and the plaintiffs filed a Reply [ECF No. 54] on February 24.

---

[1] Under Fed. R. Civ. Pr. 25(d), Attorney General Pamela Bondi is "automatically substituted as a party" as the successor for Acting Attorney General James R. McHenry III.

The Court has reviewed the parties' filings and determines that the same reasoning from the Court's original TRO Order [ECF No. 23] still applies, with nothing in the record to compel a different outcome. At the outset, the Court sees no reason to change its legal conclusions from the original TRO Order regarding availability of judicial review or unavailability of administrative exhaustion. The Government's proffered reasons for doing so are unavailing. The Court also observes that the Government offers no new developments regarding the Medication Provision, Sec. 4(c), of the Executive Order, so the same outcome will hold.

The only new development on the record is that the Government has identified low-security men's facilities in which to house the plaintiffs, which, according to the Government, completely alleviates the plaintiffs' alleged Eighth Amendment harms regarding the Transfer Provision, Sec. 4(a), of the Executive Order. *See* Opp'n 20; *see generally* Decl. of Rick Stover, Senior Deputy Assistant Director, Designation and Sentence Computation Center, ECF No. 53-2 ("Stover Decl."). The plaintiffs urge the Court to strike the Stover Declaration or at least afford it "little weight." Reply 6.

But even considering the Stover Declaration, the Court finds that the plaintiffs are still likely to succeed on their Eighth Amendment claim regarding the Transfer Provision, as this Court concluded in granting the original TRO motion. The Stover Declaration indicates that housing reassessments were conducted to identify men's facilities in which to house each plaintiff—but the Government's filings also make clear that the *only* change in circumstances from when the initial housing determination was made to now is Executive Order 14168. Stover Decl. ¶¶ 10, 17; Opp'n 3. When the initial housing determination was made for each of the named plaintiffs, the BOP determined that considering all statutorily and constitutionally required factors, a women's facility was the appropriate facility for each named plaintiff. This was the conclusion even in a

landscape where ninety-nine percent of transgender women in BOP custody are housed in men's facilities. *See* Opp'n 3. Summarily removing the possibility of housing the plaintiffs in a women's facility, when that was determined to be the appropriate facility under the existing constitutional and statutory regime, demonstrates a likelihood of success on the merits of the plaintiffs' Eighth Amendment claim.[2] The Court still takes no position on the plaintiffs' equal protection, APA, or separation of powers claims. *See* TRO Order 1.

Therefore, in consideration of the plaintiffs' Motion [ECF No. 50] for a Temporary Restraining Order and Preliminary Injunction, the Opposition [ECF No. 52] thereto, the Reply [ECF No. 54], and the entire record herein, and for the reasons contained in the original Temporary Restraining Order [ECF No. 23], it is hereby

**ORDERED** that the plaintiffs' Motion for a Temporary Restraining Order and Expanded Preliminary Injunction is **GRANTED**; and it is further

**ORDERED** that the Defendants are hereby enjoined from implementing Sections 4(a) and 4(c) of Executive Order 14168 against plaintiffs Jane, Mary, Sara, Emily, Zoe, Tori, Olivia, Susan, Lois, Sophia, Sally, and Wendy Doe, pending further Order of this Court; and it is further

---

[2] The Court is also unconvinced by the Government's proffered statistics attempting to show that a low-security men's facility would be *safer* for the plaintiffs than their current housing assignment. *See* Opp'n 3, 10. The Government's statistics do not disaggregate assaults against transgender inmates from overall rates of assault. And in any event, the proffered statistics are still consistent with the "numerous government reports and regulations recognizing that transgender persons are at a significantly elevated risk of physical and sexual violence relative to other inmates when housed in a facility corresponding to their biological sex." TRO Order 5. And that is to say nothing of the other harms identified by plaintiffs, which the Government fails to address: "that placement in a male penitentiary *by itself* will exacerbate the symptoms of their gender dysphoria, *even if* they are not subject to physical or sexual violence in their new facility—whether because they will be subject to searches by male correctional officers, made to shower in the company of men, referred to as men, forced to dress as men, or simply because the mere homogenous presence of men will cause uncomfortable dissonance." *Id.*

**ORDERED** that, pending further Order of this Court, Defendants shall maintain and continue the plaintiffs' housing status and medical care as they existed immediately prior to January 20, 2025.

Date: February 24, 2025
1:51 p.m.

Royce C. Lamberth
United States District Judge