E X H I B I T   2

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE; MARY DOE; SARA DOE; EMILY DOE; ZOE DOE; TORI DOE; OLIVIA DOE; SUSAN DOE; LOIS DOE; SOPHIA DOE; SALLY DOE; WENDY DOE; RACHEL DOE; and ELLEN DOE<br><br>Plaintiffs,<br><br>v.<br><br>PAMELA BONDI, *in her official capacity* as Attorney General of the United States; and WILLIAM LOTHROP, *in his official capacity* as Acting Director of the Federal Bureau of Prisons,<br><br>Defendants. | Case No.: 1:25-cv-00286-RCL |

### SECOND AMENDED COMPLAINT

1.      This Action is a federal statutory and constitutional challenge to Sections 4(a) and 4(c) of Executive Order 14168, titled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," (the "Order") which President Donald Trump issued just hours after his inauguration on January 20, 2025.  The Order directly targets transgender individuals and attempts to strip them of established legal protections.  Under Sections 4(a) and 4(c) of the Order, all transgender women who are incarcerated in federal prisons will be transferred to men's facilities, regardless of safety concerns, and all transgender people who are incarcerated in federal prisons will be denied medically necessary healthcare for gender dysphoria.

2.      Plaintiff Jane Doe is a transgender woman incarcerated in a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ for women located in ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ Jane is diagnosed with gender dysphoria, a rare but serious medical condition and

disability.  The medical standard of care for treatment of gender dysphoria is to allow a
transgender person to live in a sex different than their birth sex through medications, surgical
care, and social transition.

3.    Consistent with this standard of care, Jane has lived as a woman and has taken
hormones continuously for nearly a decade.  She is currently housed in a women's facility
█████████████████████████████████████████████████████████████
████████████.

4.    Pursuant to ████████████████ and the recommendations of BOP staff
members, Jane has been housed in a women's facility since ████████████.  She has been
designated as a minimum recidivism risk, poses no threat to her female peers, and her presence
in the women's facility has not caused any disruption or interference with prison operations.

5.    If Jane is transferred to a men's facility, she will not be safe.  She will be at an
extremely high risk of harassment, abuse, violence, and sexual assault.  She has previously been
sexually assaulted in BOP men's facilities before she was moved to a women's facility.  If
transferred, she may also be subject to strip searches by male correctional officers.  She may be
forced to shower in full view of men who are incarcerated.  And she will predictably experience
worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious
harm, including dramatically increased rates of suicidality and depression.

6.    Plaintiff Mary Doe is a transgender woman who is also incarcerated at ████
████ and is diagnosed with gender dysphoria.

7.    Consistent with the standard of care, Mary has lived as a woman and has taken
hormones for ███████████████████.  She has been housed in a women's

facility for ████████████████████████████████████. Prior to that she was housed in women's facilities in ████████████████████.

8.      If Mary is transferred to a men's facility, she will not be safe. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. When she was previously housed in BOP men's facilities, she was raped multiple times. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated. And she will predictably experience worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

9.      Plaintiff Sara Doe is a transgender woman who is incarcerated at ████████ ████████████████████ and is diagnosed with gender dysphoria. She also has ████████████████████████████████████████████████████ ████████████████████████████.

10.     Consistent with the standard of care, Sara has lived as a woman and has taken hormones for several years, including ████████████████████. Prior to her incarceration, she had several surgeries, including ████████████████████████ ████████████. Since her arrest ████████████████████████.

11.     If Sara is transferred to a men's facility, she will not be safe. She will be at an extremely high risk of harassment, abuse, violence, and sexual assault. She may be subject to strip searches by male correctional officers. She may be forced to shower in full view of men who are incarcerated, and her breasts and female genitalia will be exposed and vulnerable to sexual harassment, assault, and rape.

12.     In a men's facility, Sara will also predictably experience worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious harm, including worsening ███ and dramatically increased risks of suicidality and depression.

13.     Plaintiff Emily Doe is a transgender woman who is incarcerated at ████████ and is diagnosed with gender dysphoria.

14.     Consistent with the standard of care, she has lived as a woman, been treated as a woman, and taken hormones for over ███ years, all while in BOP custody.  When Emily was housed in male facilities, she was not able to participate in programming due to her fears about her safety, and she ██████████████████.  She was transferred to ██████████ by BOP's Transgender Executive Committee in ██████████.  Since being housed at a female facility, she has started ████████████████████████████████ ██████████████.

15.     If Emily is transferred to a men's facility, she will not be safe.  She will be at an extremely high risk of harassment, abuse, violence, and sexual assault.  She may be subject to strip searches by male correctional officers.  She may be forced to shower in full view of men who are incarcerated.  And she will predictably experience worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

16.     Plaintiff Zoe Doe is a transgender woman who is incarcerated in ██████████.  Zoe Doe is diagnosed with gender dysphoria.

17.     Consistent with the standard of care, Zoe has lived as a woman and has taken hormones since ████  She was first diagnosed with "gender identity disorder" in ████ by a psychiatrist.  She has repeatedly been diagnosed with gender dysphoria by BOP medical

personnel as well.  She has been housed in a federal women's facility for 

18.     If Zoe were transferred to a men's facility, she would not be safe.  She will be at

an extremely high risk of harassment, abuse, violence, and sexual assault.  She may be subject to

strip searches by male correctional officers.  She may be forced to shower in full view of men

who are incarcerated.  And she will predictably experience worsening gender dysphoria without

medical care, which can lead to serious harm, including dramatically increased rates of

suicidality and depression.

19.     Plaintiff Tori Doe is a transgender woman who is also incarcerated in ████

████   Tori is diagnosed with gender dysphoria.

20.     Consistent with the standard of care, Tori has lived as a woman and has taken

hormones for more than ████ .  In ████ prior to her incarceration, ███████

████████████████████████████████████████████████

████████████████████████████ Tori has been treated

as a woman by federal correctional officials and has been housed in a women's facility for over

████████ .

21.     If Tori is transferred to a men's facility, she will not be safe.  She will be at an

extremely high risk of harassment, abuse, violence, and sexual assault.  She has previously

experienced sexual assault and sexual harassment while housed in a men's facility.  She may be

subject to strip searches by male correctional officers.  She may be forced to shower in full view

of men who are incarcerated.  And she will predictably experience worsening gender dysphoria

without medical care, which can lead to serious harm, including dramatically increased rates of

suicidality and depression.

22.    Plaintiff Olivia Doe is a transgender woman who is incarcerated at ███████████

and is diagnosed with gender dysphoria.

23.    Consistent with the standard of care, Olivia has lived as a woman and has taken

hormones since ████████████████████.  When Olivia entered BOP custody, her

hormone treatment abruptly ended.  But her treatment was eventually restored, and she has been

consistently receiving hormones again ███████.  Olivia has been housed at a female facility

since ████.

24.    If Olivia is transferred to a men's facility, she will not be safe.  When previously

housed in BOP men's facilities, Olivia was brutally raped; ██████████████████

███████████    She will be at an extremely high risk of harassment, abuse, violence,

and sexual assault.  She may be subject to strip searches by male correctional officers.  She may

be forced to shower in full view of men who are incarcerated.  And she will predictably

experience worsening gender dysphoria exacerbated by a lack of medical care, which can lead to

serious harm, including dramatically increased rates of suicidality and depression.

25.    Plaintiff Susan Doe is a transgender woman who is incarcerated at ████████.

She is diagnosed with gender dysphoria.

26.    Consistent with the standard of care, Susan has lived as a woman for over ████

████ years.  She has known she was a woman for a very long time, and she has been taking

hormones since ████  Susan was transferred to ████████ by BOP's Transgender Executive

Committee in ████████ .  Since being placed in a women's facility, she finally feels like she can move around without worrying about being attacked and needing to defend herself.

27.     If Susan is transferred to a men's facility, she will not be safe.  When previously housed in BOP men's facilities, she was the victim of an attempted rape and was always on alert to guard against being attacked.  ████████████████████████ .  If returned to a male facility, Susan may be subject to strip searches by male correctional officers.  She may be forced to shower in full view of men who are incarcerated.  And she will predictably experience worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

28.     Plaintiff Lois Doe is a transgender woman who is incarcerated at ████████ . She is diagnosed with gender dysphoria.

29.     Consistent with the standard of care, Lois has lived as a woman and been taking hormones since ████████████████ .  She began dressing as a woman and feminizing her voice and her hair at that time.  Lois was transferred to ████████ by BOP's Transgender Executive Committee in ████████ .

30.     If Lois is transferred to a men's facility, she will not be safe.  She will be at an extremely high risk of harassment, abuse, violence, and sexual assault.  When she was previously housed with men at a ████████ , Lois was raped ████   At a male BOP facility, Lois may be subject to strip searches by male correctional officers.  She may be forced to shower in full view of men who are incarcerated.  In a men's facility, she will also predictably experience worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious harm, including worsening anxiety and dramatically increased risks of suicidality and depression.



31.    Plaintiff Sophia Doe is a transgender woman who is incarcerated at ███████

████. She is diagnosed with gender dysphoria.

32.    Consistent with this standard of care, Sophia has been living as a woman and

presenting as a woman for over ████ years.  She has taken hormones for more than ████ years,

████████████████. Sophia has had persistent gender dysphoria since she was a child.

Sophia has been housed in a women's facility for over ████████.

33.    If Sophia is transferred to a men's facility, she will not be safe.  She will be at an

extremely high risk of harassment, abuse, violence, and sexual assault.  She may be subject to

strip searches by male correctional officers.  She may be forced to shower in full view of men

who are incarcerated.  And she will predictably experience worsening gender dysphoria

exacerbated by a lack of medical care, which can lead to serious harm, including dramatically

increased rates of suicidality and depression.

34.    Plaintiff Sally Doe is a transgender woman who is incarcerated at ██████████

and is diagnosed with gender dysphoria.

35.    Consistent with the standard of care, Sally has received hormone treatment for ██

████ and she receives ███████████████. She was transferred to ██████████ in

████████. Sally has had gender dysphoria since childhood.  She has suffered with

███████████████ for most of her life.  Treatment for her gender dysphoria has been

the only effective way of alleviating those symptoms.

36.    If Sally is transferred to a men's facility, she will not be safe.  She will be at an

extremely high risk of harassment, abuse, violence, and sexual assault.  She may be subject to

strip searches by male correctional officers.  She may be forced to shower in full view of men

who are incarcerated.  And she will predictably experience worsening gender dysphoria

exacerbated by a lack of medical care, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

37.     Plaintiff Wendy Doe is a transgender woman who is incarcerated at ██████████ and is diagnosed with gender dysphoria.

38.     Consistent with the standard of care, Wendy has been living as a woman and taking hormones since ████    In ██████████, before entering BOP custody, Wendy received ████████████████████████████████.  Since entering BOP custody in ████ Wendy ██████████████████████████.

39.     Wendy has been living at ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

40.     If Wendy is transferred to a men's facility, she will not be safe.  She will be at an extremely high risk of harassment, abuse, violence, and sexual assault.  She may be subject to strip searches by male correctional officers.  She may be forced to shower in full view of men who are incarcerated.  And she will predictably experience worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious harm, including dramatically increased rates of suicidality and depression.

41.     In addition to facing immediate transfers to men's facilities, Plaintiffs  are at imminent risk of losing access to the medical care they each need to treat their gender dysphoria. Executive Order 14168 singles out transgender people to deny them essential healthcare, including medications that BOP may continue to provide to non-transgender people.  The Order

categorically bans transgender healthcare regardless of medical necessity.  It prohibits prison

medical providers from treating transgender patients' gender dysphoria on an individual basis

according to independent medical judgment.  This blanket ban will deprive Plaintiffs of essential

treatment, putting them at high risk of serious harm.

42.    Plaintiff Rachel Doe is a transgender woman who is incarcerated in ███

███. Rachel was diagnosed with gender dysphoria in ███ when she was ███.

43.    Consistent with the standard of care, Rachel has lived as a woman since then and

been on hormones ██████████████████████████████

████████████████████████████████

████████████████████████████████

44.    Until ██████, Rachel had been housed in women's facilities while in

federal custody. ████████████████████████

████████████████████████████████

███  On ██████, Rachel was sent to ██████ where she was again housed

with women.

45.    On or about ██████, BOP transferred Rachel from the women's side to

the men's side of ██████.  In early ██████, BOP transferred her to ███

██████ which houses only men.  When she left ██████ Rachel was subjected to a visual

strip search by two male officers with no female officers present.  In front of these two men,

Rachel had to remove all of her clothes and while nude, lift her breasts, bend over, squat, spread

her behind and genital area with her hands, and cough.  Since being housed with men, Rachel has

experienced daily sexual harassment by male inmates.  When she walks to the facility to get her

meals, men stare, whistle, clap, and knock on their windows.  Several male inmates have told her

verbally and in writing to meet them in various places in the prison for sex.  She has reported

these incidents 

46.    Rachel also has not been issued a bra or women's underwear, and she is unable to

access those items through commissary.  These deprivations are exacerbating Rachel's gender

dysphoria and placing her at a heightened risk of sexual assault.

47.    BOP has denied Rachel her hormone treatment since she arrived at ███

███. She is being denied this medication ███████████████



███████████████████████. As a direct

result of these deprivations of medical care, Rachel currently faces a serious risk of medical

injury and complications.

48.    Plaintiff Ellen Doe is a transgender woman who is incarcerated in ███

███. Ellen was diagnosed with gender dysphoria ███████████ .

49.    Consistent with the standard of care, Ellen has been living as a woman and

receiving hormone treatment for ███████, all while in BOP custody.  Prior to February

2025, Ellen had been housed with women for two years at ███████ pursuant to the

recommendation of the Transgender Executive Council.  Ellen was also in the process of being

evaluated ███████████ .

50.    In ███████████, BOP transferred Ellen to ███████ and then to

███████, which houses only men.  When she left ███████ and again when she arrived

at ███████, Ellen was subjected to a visual strip search by male officers.  Since arriving

in ███████ Ellen has been propositioned for sex and threatened by inmates.  She is terrified of

being assaulted in her room or in the shower, which have no locks. When Ellen was previously housed in a men's facility, she ███████████████████████████ ██████████████.

51.     Ellen has not been issued a bra or women's underwear, and she is unable to access those items through commissary. These deprivations are exacerbating Ellen's gender dysphoria and placing her at a heightened risk of sexual assault.

52.     Although Ellen is still receiving her hormone treatment, she is at imminent risk of losing access to this medical care she needs to treat her gender dysphoria. Executive Order 14168 singles out transgender people to deny them essential healthcare, including medications that BOP may continue to provide to non-transgender people. The Order categorically bans transgender healthcare regardless of medical necessity. It prohibits prison medical providers from treating transgender patients' gender dysphoria on an individual basis according to independent medical judgment. This blanket ban will deprive Ellen of essential treatment, putting her at high risk of serious harm.

53.     Plaintiffs bring claims for violations of the Fifth Amendment to the United States Constitution; the Eighth Amendment to the United States Constitution; the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*; the Separation of Powers; and the Administrative Procedure Act, 5 U.S.C. §§ 701–06. Plaintiffs seek declaratory and injunctive relief to enjoin enforcement of Sections 4(a) and 4(c) of Executive Order 14168. Without the injunctive relief sought, Plaintiffs will experience irreparable injury.

## JURISDICTION AND VENUE

54.     This action arises under the Constitution and statutes of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

55.     This Court has authority to enter a declaratory judgment and to provide
preliminary and permanent injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, Fed. R.
Civ. P. 57 and 65, and this Court's inherent equitable powers.

56.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because the
Defendants are domiciled in this district.

## **PARTIES**



57.     Plaintiff Jane Doe is a transgender woman.  She is incarcerated in ███████████
███████████████████████████████████████████ Jane Doe is a pseudonym.

58.     Plaintiff Mary Doe is a transgender woman.  She is incarcerated in ██████████
███████████████████████████████████. Mary Doe is a pseudonym.

59.     Plaintiff Sara Doe is a transgender woman. She is incarcerated in ███████████
████████████████████████████ Sara Doe is a pseudonym.

60.     Plaintiff Emily Doe is a transgender woman.  She is incarcerated in ██████████
████████████████████████████████. Emily Doe is a pseudonym.

61.     Plaintiff Olivia Doe is a transgender woman.  She is incarcerated in ██████████
███████████████████████████████████████ Olivia Doe is a
pseudonym.

62.     Susan Doe is a transgender woman.  She is incarcerated ████████████████
████████████████████████████████. Susan Doe is a
pseudonym.

63.     Lois Doe is a transgender woman.  She is incarcerated at █████████████████
███████████████████████. Lois Doe is a pseudonym

64.     Plaintiff Sally Doe is a transgender woman.  She is incarcerated in █████████
████████████████████████████████. Sally Doe is a pseudonym.

65.    Plaintiff Sophia Doe is a transgender woman.  She is incarcerated ▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.  Sophia Doe is a

pseudonym.

66.    Plaintiff Sally Doe is a transgender woman.  She is incarcerated at ▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.  Sally Doe is a pseudonym.

67.    Wendy Doe is a transgender woman.  She is incarcerated ▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.  Wendy Doe is a pseudonym.

68.    Zoe Doe is a transgender woman.  She is incarcerated ▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.  Zoe Doe is a pseudonym.

69.    Tori Doe is a transgender woman.  She is incarcerated ▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.  Tori Doe is a pseudonym.

70.    Rachel Doe is a transgender woman.  She is incarcerated at ▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.  Rachel Doe is a pseudonym.

71.    Ellen Doe is a transgender woman. She is incarcerated at ▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.  Ellen Doe is a pseudonym.

72.    Defendant Pamela Bondi is sued in her official capacity as Attorney General of

the United States.  The Attorney General oversees the Department of Justice, including the

Federal Bureau of Prisons (BOP), and has responsibility for overseeing the enforcement and

implementation of Sections 4(a) and 4(c) of Executive Order 14168 with respect to the Bureau of

Prisons.

/ / /

/ / /

/ / /

73.     Defendant William Lothrop is sued in his official capacity as Acting Director of the Federal Bureau of Prisons.  The Acting Director of BOP has responsibility for overseeing enforcement and implementation of Executive Order 14168 by all BOP staff.

## FACTS

## Plaintiffs' Sudden and Unjustified Removal from General Population and Risk of Transfer to a Men's Facility

74.     BOP maintains separate housing facilities for men and women.  Before January 20, 2025, BOP applied an individualized assessment process to determine appropriate housing for transgender women, consistent with the safety and security of all individuals and pursuant to the federal Prison Rape Elimination Act (PREA) and its implementing regulations.  Based on this assessment, transgender women may be housed in women's facilities when doing so promotes safety and security.[1]

75.     On January 20, 2025, President Trump issued an Executive Order directing the BOP to disregard its established policy and any associated safety and security risks concerning the housing and care of transgender women.

76.      On January 24, 2025, pursuant to this Executive Order, the BOP removed Plaintiffs Jane Doe, Mary Doe, and the other Plaintiffs incarcerated at ▮▮▮▮▮▮▮ from the general population of ▮▮▮▮▮▮▮ .

77.     BOP officials placed Plaintiffs in separate housing with other transgender women. All of these women, including Plaintiffs, were told they were removed from general population because of the Executive Order.

---

[1] U.S. Dep't of Just., Transgender Offender Manual §§ 5–6 (2022), *see* Dkt. 11-3.

78.     Plaintiffs were also informed that they would be imminently transferred to men's facilities because of the Executive Order.  When they were placed into the segregated unit, BOP officials told them they would be transferred no later than Thursday, January 30, 2025.  BOP officials told several of the Plaintiffs that the transfer paperwork had already been processed.

79.     On January 28, 2025, after transgender individuals at ███████████ began contacting counsel, the Plaintiffs at ███████████ were returned to general population housing but continued to be told that they would be imminently transferred to men's facilities.

80.     Similarly, on January 25, 2025, the BOP removed Sara Doe from the general population at ███████████.  BOP officials allowed Sara to make a phone call to her family and then placed her in the Special Housing Unit (SHU) with another transgender woman.

81.     BOP officials told Sara Doe that she was being transferred to a men's facility, and that her cell was being cleaned out and she would not be permitted to return.

82.     Sara Doe's mother and sister emailed ███████████ on January 25, 2025, to request that they reconsider the decision to transfer Sara to a men's prison.  They wrote: "Sending her to an all-male prison will be the end of her. No one deserves this. There needs to be another way, we beg for your sympathy. She will get sexually assaulted and even possibly killed for being who she is. She is a citizen designated as a female and deserves protection like any other human. . . . This could mean life or death and she has not received a death penalty as her sentence."

83.     In response to the email from Sara Doe's family, the BOP stated that they could not house Sara at ███████████ or any other women's facility because of the Executive Order.

84.     On about January 29, 2025, Sara Doe was returned to the women's general population at ███████. Upon information and belief, Sara still faces imminent transfer to a men's facility.

85.     Similarly, on or about January 24, 2025, pursuant to the Executive Order, the BOP removed Olivia Doe, Susan Doe, and the other Plaintiffs at ███████ from the general population of that facility.

86.     BOP officials placed these women in separate housing.  BOP officials told these women that because of the Executive Order, they had to place all transgender female inmates into special housing pending transfer to a male facility.

87.     On or about February 5, 2025, the Plaintiffs at ███████ were returned to general population housing.  BOP officials continue to state that they will be imminently transferred to men's facilities.

88.     On February 20, 2025, BOP officials at ███████ called the transgender women incarcerated at ███████, including many of the Plaintiffs at that facility, into the warden's office.  They were told that the Department of Justice had called the warden that morning and directed the warden to transfer all of them to men's facilities.  The women were told that the transfers could happen as early as Monday, February 24, 2025, and that their medical treatment would be cut off in the men's facilities.  Each of the women met with psychology staff for suicide assessments before being sent back to their units.

89.     On or about February 21, 2025, BOP officials at ███████ told Susan Doe, Lois Doe, and Olivia Doe that they were all being transferred to male facilities imminently.

90.    Plaintiffs' removal from general population, placement in segregated housing, and anticipated transfer to men's facilities have caused them significant distress and raise serious and imminent concerns regarding their safety and well-being.

**Plaintiffs Rachel and Ellen Doe's Transfer to a Men's Facility**

91.    In early March 2025, BOP transferred Rachel and Ellen Doe to ▌▌▌▌▌▌▌▌▌▌, a men's facility.

92.    During the transfer, both of them were subjected to visual strip searches by male officers.  Rachel and Ellen thus had to strip completely nude in front of male officers and lift up their breasts, bend over, spread their genital area, and remain completely exposed in the nude in front of men.

93.    Being housed in a men's facility places Rachel and Ellen at an immediate risk of physical and sexual assault.  Both Rachel and Ellen are being subjected to daily verbal sexual harassment by men in the facility, who whistle, clap, ogle, and bang on the windows of their rooms when Rachel or Ellen walk by.

94.    They are housed in a room that does not lock, and they use the bathroom and shower in a room that does not lock.

95.    Rachel and Ellen have both been propositioned for sex multiple times.  ▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌ about one sexual solicitation she received and reported. Both women are frightened of being sexually assaulted.

96.    Rachel and Ellen are also at serious risk of worsening gender dysphoria in men's facilities. Treating transgender women with gender dysphoria as men is known to intensify dysphoria, undermine medical treatment, and increase emotional distress, and it can precipitate self-harm.

### Gender Dysphoria

97.    Gender dysphoria is a serious medical condition marked by the significant distress or impairment that occurs when a transgender individual is made to live in their birth sex.  The condition is highly treatable.  When left untreated, however, it causes serious physical and emotional harms.

98.    Scientific and medical research also shows that gender dysphoria has a physiological and biological etiology.

99.    The only current, medically accepted treatment for gender dysphoria is to enable a transgender person to live in the sex different than their birth sex.

100.    The medical and scientific community recognize well-established protocols for supporting a person to go through gender transition, the treatment that allows a transgender person to live in their target sex.  These protocols are endorsed by the major medical and mental health associations in the United States, including but not limited to the American Medical Association, the American Psychiatric Association, the American Psychological Association, and the Endocrine Society.

101.    Under these accepted protocols, treatment for gender dysphoria can involve any combination of social transition, medications (including hormones), and a range of surgeries. The treatment prescribed for a particular patient depends on an individualized assessment of the patient's health and needs.  Gender transition care, including hormone therapy, is a highly effective treatment for gender dysphoria.

### Executive Order 14168 Will Cause Plaintiffs Irreparable Injury

102.    Executive Order 14168 began causing harm to Plaintiffs almost immediately.  As a result of the Order, they have already suffered significant distress.  The Order also raises serious concerns for their safety and well-being going forward.

103.    Section 2 of the Order includes a definition of "sex" that is intentionally designed to discriminate against transgender people.  Specifically, Section 2 of the Order defines "sex" as "an individual's immutable biological classification as either male or female."  In turn, it defines "male" as "a person belonging, at conception, to the sex that produces the small reproductive cell," and "female" as "a person belonging, at conception, to the sex that produces the large reproductive cell."  It includes these definitions to preclude transgender people from being able to live in a sex different than their birth sex and to deny them equal treatment.

104.    Section 4(a) of the Order then directs federal agencies to implement this discriminatory provision, including requiring the Attorney General to categorically bar all transgender women from ever being housed in women's prisons with no individualized consideration of their safety and security.  That section acknowledges that the requirement contradicts federal regulations found at 28 C.F.R. § 115.41.

105.    Evidence, research, case law, and practical experience show that transgender women housed in men's prisons face near constant sexual harassment and extremely high levels of violence and sexual assault.  Federal regulations recognize transgender status as a risk factor for sexual assault.  *See* 28 C.F.R. §§ 115.41(d)(7), 115.42(c)–(g).  A 2013 study by the Department of Justice estimated that nearly 35% of transgender people in state and federal prisons were sexually assaulted between 2007 and 2012.  U.S. Dep't of Justice Off. of Justice Programs, *Sexual Victimization in Prisons and Jails Reported by Inmates, 2011–12*, NCJ No. 241399, Supplemental Table 1 (2013).[2]  From 2011 to 2012, transgender people were sexually assaulted at nearly ten times the rate for the general incarcerated population.[3]

---

[2] Available at https://bjs.ojp.gov/content/pub/pdf/svpjri1112_st.pdf.

[3] *Compare id.* (noting a 39.9% sexual victimization rate for transgender people from 2011 to 2012), *with* the full report at 6 (reflecting a 4.0% rate of sexual victimization in the general

106.    Further, Plaintiffs will predictably experience worsening gender dysphoria in men's facilities.  They may be forced to wear men's clothing and undergarments, prevented from styling their hair as female, referred to as men, and addressed by their stereotypically male former names.  Treating transgender women with gender dysphoria as men is known to intensify dysphoria, undermine medical treatment, and increase emotional distress, and it can precipitate self-harm.

107.    Section 4(c) of the Order will also cause Plaintiffs serious, irreparable injury. That provision requires the Attorney General to "ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex."  Section 4(c) eliminates Plaintiffs' ability to continue taking hormone medications to treat their gender dysphoria, which their bodies have adjusted to receiving.

108.    The BOP is aware that each of the Plaintiffs has a diagnosis of gender dysphoria, that gender dysphoria is a serious medical condition requiring treatment, and that Plaintiffs have a serious medical need for such treatment.  BOP policy expressly allows hormone medication as a treatment for gender dysphoria based on an "individualized assessment" by medical staff.[4]  If providers determine that hormone medications are appropriate for an individual, that medication "will be provided."[5]  Consistent with this policy, upon information and belief, the BOP has consistently provided hormone medications to Plaintiffs for years pursuant to treatment plans determined by BOP medical and mental health staff.

---

prison population from 2011 to 2012), available at https://bjs.ojp.gov/content/pub/pdf/svpjri1112.pdf.

[4] U.S. Dep't of Just., Transgender Offender Manual § 8 (2022), *see* Dkt. 11-3.

[5] *Id.*

109.    If Plaintiffs' medically necessary treatment for gender dysphoria is terminated or restricted under Section 4(c), they will be at a well-known and substantial risk of serious harm. Medical professionals experienced in the treatment of gender dysphoria and in the prolonged use of hormone medications recognize that the abrupt termination and ongoing denial of hormone therapy can have disastrous consequences, including serious risk of permanent physical and emotional harm, severe danger of self-mutilation, and suicidal ideation and attempts. Some of the Plaintiffs who have had surgery to treat their gender dysphoria can no longer produce hormones on their own. Without prescription hormone medication, these Plaintiffs will not have sufficient hormones of any kind in their systems, which will lead to serious medical difficulties.

**Executive Order 14168 Facially Classifies Based on Sex and Transgender Status and Was Motivated By Discriminatory Animus**

110.    Executive Order 14168 classifies individuals on the basis of sex and transgender status. It was motivated by a sex-based discriminatory purpose and animus against transgender people.

111.    President Trump has been transparent about his hostility toward transgender people and openly stated his intentions to eliminate legal protections for transgender people and to deter them from obtaining medical care or being able to live in a sex other than their birth sex. On November 15, 2022, when he announced his candidacy for President, he explicitly promised to target transgender Americans through executive action.[6] He pledged a "day one" executive order to "cease all programs that promote the concept of sex and gender transition at any age."[7]

---

[6] ABC Action News, *(Full Speech) Former President Trump Announces 2024 Presidential Bid* at 48:40-49:13, YouTube (Nov. 15, 2022), https://www.youtube.com/watch?v=8tSYwJ1_htE; *id.* at 50:39-53 (suggesting he would attempt to ban transgender people from military service).

[7] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, Trump Vance: Make America Great Again! 2025 (Feb. 1, 2023), https://www.donaldjtrump.com/agenda47/president-trumps-plan-to-protect-children-from-left-

112.    Throughout his campaign, President Trump repeatedly characterized transgender Americans in dehumanizing terms, referring to them as "deranged"[8] and as victims of "madness"[9] and "insanity."[10]  He falsely claimed transgender identity was "never heard of in all of human history" and described transgender healthcare as "mutilation."[11]

113.    President Trump's campaign devoted substantial resources to promoting anti-transgender policies, spending approximately $215 million on advertisements vilifying transgender Americans.[12]  These advertisements comprised over 40 percent of all pro-Trump campaign messaging in the weeks before the 2024 election.[13]

---

wing-gender-insanity.

[8] Gabriel Bertrand, *Trump's Shocking Admission Exposes GOP's Bigoted Agenda*, Medium (June 17, 2023), https://medium.com/illumination/trumps-shocking-admission-exposes-gop-s-bigoted-agenda-e981becb2c5f.

[9] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, *supra* note 7.

[10] Jackson Walker, *Trump vows to remove 'transgender insanity' and critical race theory from US schools*, IdahoNews (Dec. 23, 2024, 8:37AM), https://idahonews.com/news/nation-world/trump-vows-to-remove-transgender-insanity-and-critical-race-theory-from-us-schools-phoeniz-arizona-woke-speech-usa-donald-president-white-house-education-department-crt-trans-gender-lgbt; *Trump and Vance make anti-transgender attacks central to their campaign's closing argument*, NBC News (Nov. 1, 2024, 10:23 AM), https://www.nbcnews.com/nbc-out/out-politics-and-policy/donald-trump-jd-vance-transgender-2024-election-rcna178390; Donald J. Trump, Truth Social (Dec. 18, 2023), https://truthsocial.com/@realDonaldTrump/posts/111599880929254153; Gabriel Bertrand, *supra* note 8; Joe Middleton, *Trump attacks transgender rights at Waco rally saying he will ban 'disfigurement of our youth'*, The Independent (Mar. 26, 2023), https://www.independent.co.uk/news/world/americas/donald-trump-transgender-waco-rally-b2308177.html.

[11] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, *supra* note 7.

[12] Audrey Kemp, *What Trump's win – and $215m worth of anti-trans ads – mean for the future of campaigning*, The Drum (Nov. 6, 2024), https://www.thedrum.com/news/2024/11/06/after-donald-trump-s-victory-marketers-weigh-their-role-countering-divisive.

[13] Lauren Barrón-López et al., *Why anti-transgender political ads are dominating the airwaves this election*, PBS News (Nov. 2, 2024 5:35 PM), https://www.pbs.org/newshour/show/why-anti-transgender-political-ads-are-dominating-the-airwaves-this-election.

114.    President Trump's official campaign platform included a "Plan to Protect Children from Left-Wing Gender Insanity," which promised to deny legal recognition to transgender Americans and restrict access to medically necessary healthcare.[14]

115.    On December 23, 2024, after winning the election, President Trump reaffirmed his intent to implement discriminatory policies through executive action, stating "with a stroke of [his] pen on day one," he would "stop the transgender lunacy" and "get transgender out of the military and out of our elementary schools and middle schools and high schools."[15]

116.    Executive Order 14168, issued on President's Trump's first day in office, implements these campaign promises, demonstrating that the discriminatory animus expressed throughout his campaign was the driving force behind the Order's restrictions on medical care and housing for incarcerated transgender people.

117.    The timing, content, and context of Executive Order 14168 demonstrate it was motivated by and implements the same discriminatory animus President Trump repeatedly expressed during his campaign, rather than any legitimate government purpose.

## CLAIMS FOR RELIEF

### COUNT I

**Challenge to Sections 4(a) and 4(c)**
**Fifth Amendment to the United States Constitution**
**Due Process Clause - Deprivation of Equal Protection of the Laws**
**Against All Defendants in Their Official Capacities**

118.    Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

---

[14] *President Trump's Plan to Protect Children from Left-Wing Gender Insanity*, *supra* note 7.

[15] Azcentral.com and The Arizona Republic, *Turning Point USA Donald Trump full speech: The 'golden age of America' begins now, says Trump*, YouTube (Dec. 23, 2024), https://www.youtube.com/watch?v=XuIeXJw6BA8, at 57:02-24.

119.    Like the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment prohibits unwarranted discrimination by the federal government.

120.    Sections 4(a) and 4(c) unjustifiably discriminate based on sex.  They are facial sex classifications and use individuals' birth sex to determine their housing placements and available medical care.  Section 4(a) compels the BOP to exclude "males" from "women's prisons." Section 4(c) prohibits the use of federal funds for any medical treatment prescribed "for the purpose of conforming an inmate's appearance *to that of the opposite sex*."  Section 4(c)'s express purpose is to deter all medical treatment deemed inconsistent with birth sex.

121.    Sections 4(a) and 4(c) require BOP to treat incarcerated people differently depending on their birth sex.  Under section 4(a), transgender women must be transferred to a men's facility based on their birth sex, while other women may remain in women's facilities. Similarly, under Section 4(c), transgender women are prohibited from obtaining medical treatments that are permitted for other women.

122.    Under the Fifth Amendment, sex classifications are subject to heightened scrutiny and are presumptively unconstitutional.

123.    Sections 4(a) and 4(c) also discriminate based on transgender status.  Section 4(a) requires dangerous transfers to men's facilities for all transgender women, solely because they are transgender.  Section 4(c) denies medically necessary healthcare to transgender people, solely because they are transgender.  Discrimination based on transgender status is sex discrimination subject to heightened scrutiny.

124.    Classifications based on transgender status are also subject to heightened scrutiny because transgender people constitute a quasi-suspect class.  Transgender people are a discrete and identifiable group of people with one shared distinguishing characteristic: they identify and

seek to live as a sex different than their birth sex. This defining characteristic bears no relation

to a transgender person's ability to contribute to society. Nevertheless, transgender people have

faced historical discrimination in law and in fact, and they have been unable to secure equality

through the political process.

125.    There is no legitimate penological purpose or other legitimate basis for Section

4(a)'s dangerous transfer requirement or Section 4(c)'s categorical healthcare ban.

126.    Neither Section 4(a) nor Section 4(c) is narrowly tailored to further a compelling

government interest or substantially related to an important government interest. Sections 4(a)

and 4(c) are not even rationally related to a government interest. Accordingly, these aspects of

Executive Order 14168 violate the Fifth Amendment.

127.    Finally, Sections 4(a) and 4(c) are motivated by discriminatory animus and are

unconstitutional under any level of scrutiny.

128.    If Section 4(a) and 4(c) are implemented, Plaintiffs will suffer irreparable injury,

including serious physical, psychological and emotional harm, mental anguish, distress,

humiliation, and indignity.

## COUNT II

**Challenge to Section 4(a)**
**Eighth Amendment to the United States Constitution**
**Failure to Protect**
**Against All Defendants in Their Official Capacities**

129.    Plaintiff incorporates all preceding paragraphs of the Complaint as though fully

set forth herein.

130.    Under the Eighth Amendment, Plaintiffs are entitled to be free from a known and

substantial risk of serious harm while in BOP custody.

131.    Transferring Plaintiffs to men's prisons will pose a substantial risk of serious harm, including an extremely high risk of violence and sexual assault from other incarcerated people and BOP staff.  In a men's prison, Plaintiffs will also be at high risk of worsening gender dysphoria exacerbated by a lack of medical care, which can lead to serious physical and mental health conditions including severe depression and suicidality.  These risks are obvious, well documented, and well known to BOP officials.

132.    The risk of sexual violence to transgender people in prison is recognized in existing federal regulations.  28 C.F.R. § 115.41(d)(7) requires BOP officials to consider an individual's transgender status as a factor increasing their "risk of sexual victimization."  An individual's sexual victimization risk must be considered as part of all housing and transfer decisions.  *Id.* §§ 115.41, 115.42(a).  Decisions about whether to house a transgender person in a men's or women's facility must be made "on a case-by-case basis" to ensure the individual's "health and safety" and the security of the facility.  *Id.* § 115.42(c).  Given the extremely high safety risks for transgender people in BOP custody, housing placements for transgender people "shall be reassessed at least twice each year to review any threats to [their] safety."  *Id.* § 115.42(d).

133.    Section 4(a) of the Order contains a citation to 28 C.F.R. § 115.41, indicating that President Trump was aware of transgender women's heightened risk of sexual victimization and the federal regulatory scheme that requires individualized housing placements to ensure their safety.  Nevertheless, the Order intentionally directed the Attorney General to "amend[]" § 115.41 "as necessary" to ensure that all transgender women would be transferred to men's facilities, no matter how dangerous, without regard for their individual safety and security.  The

Order's intentional disregard of a known and substantial risk of serious harm to transgender women in BOP custody, including Plaintiffs, violates the Eighth Amendment.

134.    Defendants are well aware of the grave risks Plaintiffs will face if they are transferred to men's prisons, but they are actively implementing Section 4(a) and have caused BOP officials to initiate Plaintiffs' transfers anyway.  Their decision to disregard the known and substantial risks of serious harm violates Plaintiffs' rights under the Eighth Amendment.

135.    If Section 4(a) is implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

**COUNT III**

**Challenge to Section 4(c)**
**Eighth Amendment to the United States Constitution**
**Medical Deliberate Indifference**
**Against All Defendants in Their Official Capacities**

136.    Plaintiffs incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

137.    A prison official who has knowledge of an individual's serious need for medical care and intentionally refuses to provide that care acts with deliberate indifference and therefore violates the Eighth Amendment's prohibition on cruel and unusual punishment.

138.    Plaintiffs have serious medical needs for hormone therapy as treatment for their gender dysphoria, which is a rare and serious health condition.  Abrupt termination of this treatment would violate the applicable standard of care and subject Plaintiffs to a known and substantial risk of serious harm.

139.    Terminating Plaintiffs' hormone therapy and other transition treatments would contravene their medical providers' consistent professional judgment that they need continuous

treatment for their gender dysphoria.  Denying Plaintiffs this medically necessary healthcare would constitute deliberate indifference to their serious medical needs and would violate the Eighth Amendment's prohibition on cruel and unusual punishment.

140.    Section 4(c) of the Order, which is being implemented by Defendants, establishes a blanket rule banning medically necessary treatments for all transgender people in BOP custody, without consideration of any individual's medical needs or their healthcare providers' independent medical judgment.  As such, Section 4(c) constitutes deliberate indifference to the serious medical needs of all transgender people in BOP custody and violates the Eighth Amendment's prohibition on cruel and unusual punishment.

141.    If Section 4(c) is implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

## COUNT IV

**Challenge to Section 4(a)**
**Rehabilitation Act of 1973, Section 504**
**Failure to Accommodate a Disability**
**Against All Defendants in Their Official Capacities**

142.    Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

143.    Plaintiffs have a current diagnosis of gender dysphoria as well as a record of gender dysphoria that is known to BOP officials.

144.    Gender dysphoria is a serious medical condition that qualifies as a disability.  It is a physical impairment that substantially limits the major life activities of interacting with others, reproduction, social and occupational functioning, and caring for oneself, among others.

145.     Housing Plaintiffs in women's facilities is a reasonable accommodation for their gender dysphoria and is part of the recommended treatment protocol set forth by the applicable standards of care and clinical practice guidelines.

146.     Involuntarily transferring Plaintiffs to men's facilities under Section 4(a) of the Order would be a cruel and unnecessary revocation of this reasonable accommodation and would deny them equal benefits of correctional and rehabilitative programs and services, including but not limited to safe housing, showers, and healthcare consistent with accepted medical standards. Accordingly, Section 4(a) violates Section 504 of the Rehabilitation Act of 1973.

147.     If Section 4(a) is implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

**COUNT V**

**Challenge to Section 4(c)**
**Rehabilitation Act of 1973, Section 504**
**Disability Discrimination**
**Against All Defendants in Their Official Capacities**

148.     Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

149.     Section 4(c) categorically bans medical treatments, regardless of medical need, if they are prescribed to "conform[] an inmate's appearance to that of the opposite sex"—meaning treatments are banned only if they are prescribed to treat gender dysphoria.

150.     Section 4(c) discriminates based on disability by excluding people with gender dysphoria, including Plaintiffs, from accessing medically necessary healthcare services that are provided to all other people in BOP custody based on medical need.  Accordingly, Section 4(c) violates Section 504 of the Rehabilitation Act of 1973.

151.    If Section 4(c) is implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

### COUNT VI

**Challenge to Sections 4(a) and 4(c)**
**Administrative Procedure Act**
**Arbitrary and Capricious, Unlawful, and Unconstitutional Agency Action**
**Taken Without Observance of Procedure Required By Law**
**Against All Defendants in Their Official Capacities**

152.    Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

153.    Defendants' actions to implement Sections 4(a) and 4(c) of the Executive Order constitute final agency action that has harmed Plaintiffs, affected their legal rights, and subjected them to an imminent risk of further harm.

154.    Defendants' decision to transfer Plaintiffs to men's facilities and the imminent threat to deny their necessary medical care solely because of their birth sex and transgender status are unconstitutional and violate their federal statutory rights.

155.    Defendants' decision to transfer Plaintiffs to men's facilities solely because of their birth sex and transgender status is arbitrary and capricious.

156.    Defendants' decision to deny Plaintiffs medically necessary care to treat their gender dysphoria solely because of their birth sex and transgender status is arbitrary and capricious.

157.    Defendants' decision to transfer Plaintiffs to men's facilities solely because of their birth sex and transgender status is contrary to law as set forth in 28 C.F.R. §§ 115.41–42 and in 29 U.S.C. § 794.

158.    Defendants' segregation of Plaintiffs in separate housing with only transgender women is contrary to law as set forth in 28 C.F.R. § 115.42(g) ("The agency shall not place lesbian, gay, bisexual, transgender, or intersex inmates in dedicated facilities, units, or wings solely on the basis of such identification or status, unless such placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting such inmates.").

159.    For the transfer decision to comply with 28 C.F.R. §§ 115.41–42, amendments to 28 C.F.R. §§ 115.41–42 would have to be made through notice-and-comment rulemaking. Section 4(a) directs the Attorney General to make such an "amendment," but no amendment has been made at this time.  Defendants' decision to transfer Plaintiffs prior to a valid amendment to 28 C.F.R. §§ 115.41–42 was made without observance of procedure required by law.

160.    Defendants' decision to transfer Plaintiffs without conducting an individualized assessment of all relevant circumstances, including their safety, was made without observance of procedure required by law.

161.    If Sections 4(a) and 4(c) are implemented, Plaintiffs will suffer irreparable injury, including serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

**<u>COUNT VII</u>**

**Challenge to Section 4(c)**
**Violation of Separation of Powers**
**Ultra Vires Presidential Action in Excess of Authority**
**Usurping the Legislative Function**
**Violation of Bicameralism and Presentment Clauses**
**Against All Defendants in Their Official Capacities**

162.    Plaintiffs incorporate all preceding paragraphs of the Complaint as though fully set forth herein.

163. Defendants, as part of the Executive branch of the United States government, cannot directly and unilaterally amend or cancel appropriations Congress has duly enacted, nor can Defendants order federal agencies to do so.

164. BOP receives federal funds to provide necessary medical care to incarcerated people, including medically necessary treatment for gender dysphoria. Section 4(c) of the Executive Order directs the withholding of this funding: by its terms, the Attorney General "shall ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." The Executive Order issues this directive without regard to any statute regarding funds appropriated to the Bureau of Prisons, or any applicable regulations.

165. By directing the Bureau of Prisons to terminate or withhold congressionally appropriated funds based on the President's own policy preferences, Section 4(c) of the Executive Order attempts to amend, repeal, rescind, or circumvent duly enacted federal appropriations.

166. By directing the Bureau of Prisons to terminate or withhold congressionally appropriated funds, Section 4(c) of the Executive Order attempts to allocate public funds to advance the President's policy preferences, rather than those of Congress. These actions exceed the President's Article II powers, unconstitutionally infringe upon Congress's powers, and attempt to amend federal legislation while bypassing Article I's Bicameralism and Presentment Clauses.

167. Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that Section 4(c) of the Executive Order violates the separation of powers and impermissibly arrogates to the Executive power that is reserved to Congress.

168.    Plaintiffs are further entitled to an injunction preventing Defendants from enforcing or implementing Section 4(c) of the Executive Order.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant the following relief:

(1)    Issue a judgment under 28 U.S.C. §§ 2201–02 declaring that Sections 4(a) and 4(c)of Executive Order 14168 violate Plaintiffs' rights under the Fifth and Eighth Amendments to the United States Constitution, the Rehabilitation Act of 1973, the Administrative Procedure Act, and the United States Constitution's division of powers among the separate branches of government, for the reasons and on the Counts set forth above;

(2)    Enter a preliminary and permanent injunction prohibiting Defendants and their officers, employees, servants, agents, appointees, and successors from implementing Sections 4(a) and 4(c) of Executive Order 14168, and requiring Defendants to maintain Plaintiffs' housing and medical treatment consistent with the status quo before January 20, 2025;

(3)    Award Plaintiffs damages, as well as their costs, expenses, and reasonable attorneys' fees pursuant to 28 U.S.C. § 2412, 42 U.S.C. § 12205, and other applicable laws; and

(4)    Grant such other and further relief as the Court deems just and proper.


Dated:  March 14, 2025               _/s/ Kara Janssen_
                                    Kara J. Janssen (admitted _pro hac vice_)
                                    Ernest Galvan (admitted _pro hac vice_)
                                    Adrienne Spiegel (admitted _pro hac vice_)
                                    Ben Hattem (admitted _pro hac vice_)
                                    EGalvan@rbgg.com
                                    KJanssen@rbgg.com

ASpiegel@rbgg.com
BHattem@rbgg.com
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
(415) 433-6830

Eve L. Hill (Bar No. 424896)
ehill@browngold.com
BROWN GOLDSTEIN & LEVY, LLP
120 E. Baltimore St., Suite 2500
Baltimore, MD 21202
Tel: (410) 962-1030
Fax: (410) 385-0869

Christopher Stoll (admitted *pro hac vice*)
Amy Whelan (admitted *pro hac vice*)
CStoll@nclrights.org
AWhelan@nclrights.org
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, CA 94102
Tel: (415) 365-1338
Fax: (415) 392-8442

Ernest Galvan (admitted *pro hac vice*)
Kara J. Janssen (admitted *pro hac vice*)
Adrienne Spiegel (admitted *pro hac vice*)
Ben Hattem (admitted *pro hac vice*)
EGalvan@rbgg.com
KJanssen@rbgg.com
ASpiegel@rbgg.com
BHattem@rbgg.com
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
(415) 433-6830

Jennifer L. Levi (admitted *pro hac vice*)
Sarah Austin (admitted *pro hac vice*)
GLBTQ Legal Advocates & Defenders
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
jlevi@glad.org
saustin@glad.org

*Attorneys for Plaintiffs*