IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PAMELA BONDI, in her official capacity as Attorney General of the United States, *et al.*,<br><br>Defendants. | Civil Docket No. 1:25-cv-286 |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
MARCH 14, 2025, MOTION FOR TEMPORARY RESTRAINING ORDER**

## RESPONSE

Defendants respectfully submit this response to Plaintiffs' March 14, 2025, motion for a temporary restraining order based on the Second Amended Complaint, which added two new Plaintiffs, Rachel Doe and Ellen Doe. Because the issues presented by Plaintiffs' motion largely overlap with issues addressed in the parties' prior briefing in this case and in *Jones v. Bondi*, No. 25-cv-401 (D.D.C.), the Court has authorized the parties to "incorporate by reference" arguments made in their prior briefs. Plaintiffs have done so in their motion, and Defendants likewise incorporate by reference here the arguments that they previously made in their TRO oppositions in this case (ECF Nos. 11, 52) and in *Jones* (ECF Nos. 24, 42).[1] Defendants submit this response to make three additional points in response to Plaintiffs' new allegations.

*First*, Plaintiffs seek to enjoin Defendants from implementing § 4(c) of the Executive Order as to the two new Plaintiffs on the ground that BOP has allegedly "cut off or threatened to cut off both [Plaintiffs'] necessary medical care to treat their gender dysphoria." Mot. at 2. As the attached declaration explains, however, that is incorrect. *See* Health Services Administrator ("HSA") Decl. ¶¶ 6–9. Plaintiffs acknowledge that "Ellen Doe is still receiving hormone treatment," Mot. at 2, and that has been the case since the Executive Order was issued nearly two months ago. There are "no plans to discontinue [this] treatment." HSA Decl. ¶ 6.

Rachel Doe will also continue to receive hormone treatment, HSA Decl. ¶ 9, contrary to Plaintiffs' allegations. *See* Mot. at 2. As the attached declaration explains, Rachel Doe had a prescription for estradiol (estrogen) before arriving at the new facility, and, after arriving at the new facility on ▮▮▮▮▮ received the prescribed

---

[1] The Court has already preliminarily enjoined BOP's implementation of section 4(a) and (c) of the Executive Order as to the plaintiffs named in the First Amended Complaint. ECF Nos. 23, 55.

dose of estradiol on ▮▮▮▮ HSA Decl. ¶¶ 5,7.[2] Although Rachel then refused to accept the medication until Rachel was able to speak with the medical staff, Rachel has since met with the medical staff at the new facility, who has changed the prescription from oral tablets to a patch. *Id.* ¶¶ 8–9.

Defendants have consistently argued that Plaintiffs' challenge to § 4(c) of the Executive Order was unripe because BOP had not denied necessary medical care, including hormone medication, to any Plaintiff in this case. *See* ECF No. 52 at 22. That remains the case today, and there is no indication that BOP will stop any medically necessary care. While Plaintiffs maintain that their medical care is "at risk" of termination, *see* Mot. at 9, the assertion is speculative and does not warrant the extraordinary relief of a preliminary injunction. Indeed, as noted before, a BOP memorandum issued on February 28 confirms that BOP will implement the Executive Order consistent with applicable law, "including the Eighth Amendment." *See* ECF No. 42-2 in *Jones*, No. No. 25-cv-401.[3]

*Second*, Plaintiffs contend that Ellen Doe and Rachel Doe should be transferred back to women's facilities in part because they "have been repeatedly propositioned for sex by men at their facilities in the short time since they were transferred." Mot. at 2. BOP takes any allegations of sexual harassment seriously,

---

[2] The HSA declaration notes that Rachel Doe arrived at the new facility on ▮▮▮▮ and received a dose of estradiol on ▮▮▮▮ HSA Decl. ¶¶ 5, 8. Paragraph 7 of the declaration inadvertently refers to Rachel Doe arriving at the new facility "▮▮▮▮ ▮▮▮" as noted earlier in the declaration, however, Rachel Doe in fact arrived at the new facility on ▮▮▮▮.

[3] Rachel Doe's declaration also states, "I also have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. I have not received any medical treatment for that either." ECF No. 62-2 ¶ 14. As the HSA declaration explains, however, "Rachel Doe was also given a physical exam," and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." HSA Decl. ¶ 10. "The medical staff found that normal routine care is all that is necessary at this time pending receipt of outside medical records, and that Rachel Doe will be monitored accordingly." *Id.*

will investigate such allegations, and will discipline any inmates found to have engaged in such conduct. According to BOP's records, Ellen Doe has not made any complaints of sexual harassment since arriving at the new facility. Associate Warden Decl. ¶ 9. Rachel Doe did report receiving one note that was sexual in nature from an unknown inmate and was accordingly interviewed by Special Investigative Services (SIS). *Id.* ¶ 10. According to BOP's records, Rachel did not feel threatened or concerned, and has been going to general population and recreation without issue. *Id.* ¶¶ 11–12.

*Third*, Plaintiffs note that Ellen Doe and Rachel Doe "are also unable to access bras and women's underwear." Mot. at 2. But even assuming that Ellen Doe and Rachel Doe were unable to keep the bras and underwear they already have, Plaintiffs cite no case holding that this would amount to an Eighth Amendment violation, and several courts have held that it does not. *See Smith v. Hodge Unit Staff & Admin.*, No. 6:23CV268, 2024 WL 5346411, at *5 (E.D. Tex. Dec. 6, 2024) (collecting cases), *report and recommendation adopted*, No. 6:23-CV-268-JDK-KNM, 2025 WL 254780 (E.D. Tex. Jan. 21, 2025). Plaintiffs also note that Ellen Doe and Rachel Doe have been "subjected to strip searches by male officers and without female officers," but even if true, they cite no case holding that this would amount to an Eighth Amendment violation, and courts have held that it does not. *See, e.g.*, *Plunkett v. Parham*, No. 2:19-CV-1450 KJM AC P, 2024 WL 3446520, at *7 (E.D. Cal. July 17, 2024) ("[A] brief search conducted for a legitimate penological purpose and without explicitly sexual contact or other attendant misconduct does not rise to the level of a constitutional violation."), *report and recommendation adopted,* No. 2:19-CV-01450-DC-AC (PC), 2024 WL 4977148 (E.D. Cal. Dec. 4, 2024).

Accordingly, for the foregoing reasons and the reasons explained in Defendants' prior briefing on these issues, Plaintiffs' motion for a temporary restraining order should be denied. If the Court nonetheless enters a temporary

3

restraining order, it should also simultaneously enter a preliminary injunction, as it has done when it granted Plaintiffs' prior TRO motions. The relevant circumstances are unlikely to change before any TRO would expire, so it would serve the interests of judicial economy to enter a preliminary injunction with any TRO.

Dated: March 17, 2025            Respectfully submitted,

                                                  YAAKOV M. ROTH
Acting Assistant Attorney General

JEAN LIN
Special Litigation Counsel

/s/ *John Robinson*
JOHN ROBINSON (Bar No. 1044072)
ELIZABETH B. LAYENDECKER
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
(202) 616-8489
john.j.robinson@usdoj.gov

4