**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JANE DOE**, et al., | |
| Plaintiffs, | |
| v. | Case No.: **1:25-cv-00286-RCL** |
| **PAMELA BONDI**, *in her official capacity* as Attorney General of the United States, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR A RENEWED PRELIMINARY INJUNCTION**

**<u>INTRODUCTION</u>**

The facts that supported preliminary relief for Plaintiffs remain unchanged. Plaintiffs continue to be at substantial risk of serious harm if their medical care is terminated or they are transferred to men's facilities. Plaintiffs respectfully request that the Court enter a new preliminary injunction for an additional ninety (90) days. Pursuant to the Prison Litigation Reform Act, the current preliminary injunctions will expire on May 25 and June 17, respectively. Plaintiffs respectfully ask the Court to enter a new preliminary injunction renewing this relief for the 90-day period from May 25 to August 23, 2025. Defendants informed the Court in their stay motion that they would not oppose renewal of these two preliminary injunctions for ninety (90) days. ECF. No. 76, p. 2 fn 1 ("If Plaintiffs move to renew these two preliminary injunctions for 90 days, Defendants would not oppose it."). Accordingly, this motion is unopposed.

## I.    STATEMENT OF FACTS

Plaintiffs have previously detailed the facts giving rise to their claims.[1]  Plaintiffs

incorporate those prior statements of facts in addition to the summary here.  Plaintiffs have all

resided in women's facilities for months or years pursuant to individualized determinations made

by the Bureau of Prisons.  And Plaintiffs all have diagnoses of gender dysphoria, a serious but

treatable medical condition, for which they have received treatment from BOP.  Plaintiffs face a

substantial risk of serious harm if they are transferred to men's prisons or if their medical

treatment for gender dysphoria is terminated.  *See* ECF No. 13-4 ¶¶ 3, 5-6; ECF No. 13-5 ¶¶ 5-

17; ECF No. 62-1 ¶¶ 4-8; ECF No. 62-2 ¶¶ 4-16; Exh. A (Zoe Doe Decl.) ¶¶ 3-11; Exh. B

(Olivia Doe Decl.) ¶¶ 2-11; Exh. C (Susan Doe Decl.) ¶¶ 3-10; Exh. D (Sally Doe Decl.) ¶¶ 5-

12; Exh. E (Emily Doe Decl.) ¶¶ 3-12; Exh. F (Lois Doe Decl.) ¶¶ 4-12; Exh. G (Mary Doe

Decl.) ¶¶ 4-12; Exh. H (Wendy Doe Decl.) ¶¶ 4-18; Exh. I (Sara Doe Decl.) ¶¶ 3-10.[2]

In the months since Plaintiffs initiated this lawsuit, Defendants have taken no action to

reverse their discriminatory and dangerous approach to housing and medical care for transgender

women in BOP custody.  To the contrary, Defendants' memoranda, policy changes, and actions

underscore their discriminatory purpose, their animus against transgender people, and their

deliberate indifference.  For example, to comply with the Executive Order, Defendants have

deleted the word "transgender" every time it appeared in "all external-facing" agency

documents.  *See* Fed. Bureau of Prisons, *Agency Complies with Executive Order*,

---

[1] *See* Memorandum of Points and Authorities in Support of Motion for Temporary Restraining Order, ECF No. 13-1, at 3–5; Memorandum of Points and Authorities in Support of Motion for Temporary Restraining Order, ECF No. 50-1, at 3–5; Memorandum of Points and Authorities in Support of Motion for Temporary Restraining Order, ECF No. 62-1 at 3–6.

[2] Pursuant to the Court's protective order, Plaintiffs are redacting from the publicly filed version of these declarations information that could identify Plaintiffs, including biographical, criminal, and medical details.  Protective Order, ECF No. 79 at 2.

https://www.bop.gov/news/20250211-agency-complies-with-executive-order.jsp.  They have

removed from the public domain their 56-page Clinical Guidance policy for "Gender-Affirming

Care of Transgender and Gender Nonbinary Persons. "  *See* Fed. Bureau of Prisons, *Gender-

Affirming Care of Transgender and Gender Nonbinary Persons* (2023), https://perma.cc/U5UT-

S9PN.  And they have "cancelled" the Program Statement that specified the unique and serious

risks transgender people face and the actions agency staff should take to mitigate those risks.

*See* Federal Bureau of Prisons Program Statement Cancellation of Statement Number 5200.08,

Cancellation No. PSC04-2025 (February 25, 2025); *see also* ECF 62 at 3; U.S. Dep't of Justice,

Fed. Bureau of Prisons, *Transgender Offender Manual* at 1 (stating objective is "[t]o enhance

staff's understanding of the increased risk of suicide, mental health issues and victimization"),

https://perma.cc/4BP6-YWRP.

        Erasing mention of this specific population and the serious risks they face does not

eliminate those risks, nor does it eliminate Defendants' knowledge of the risks.  To the contrary,

it increases the risk of harm these women face by minimizing their extreme vulnerabilities to

harm and prohibiting staff from considering those risks.  Defendants' policies and conduct

amount to paradigmatic discrimination and deliberate indifference.

## II.    PROCEDURAL HISTORY

        On January 20, 2025, President Trump issued Executive Order 14168.  On January 30,

2025, Plaintiffs Jane Doe, Mary Doe, and Sara Doe initiated this action seeking injunctive relief

to prohibit Defendants from implementing Sections 4(a) and 4(c) of Executive Order 14168.  On

February 4, 2025, this Court entered a temporary restraining order prohibiting Defendants from

implementing Sections 4(a) and 4(c) of the Executive Order, ECF No. 23, and on February 18,

2025, the Court granted Plaintiffs' request for a preliminary injunction.  ECF No. 44.  Following

the February 18 Order, Defendants resumed their attempt to transfer individuals not covered by

that Order.  Thus, on February 21, 2025, Plaintiffs filed their First Amended Complaint to add

Emily Doe, Zoe Doe, Tori Doe, Olivia Doe, Susan Doe, Lois Doe, Sophia Doe[3], Sally Doe, and

Wendy Doe as additional plaintiffs seeking injunctive relief.  ECF No. 47.

On February 24, 2025, this Court entered a preliminary injunction prohibiting Defendants

from implementing Sections 4(a) and 4(c) of the Executive Order with regard to the three

original Plaintiffs and the nine additional Plaintiffs.  ECF No. 55.  On March 14, 2025, Plaintiffs

filed their Second Amended Complaint to add Rachel Doe and Ellen Doe as plaintiffs—after

BOP had transferred them to a men's facility—and to seek injunctive relief for them.  ECF No.

59.  On March 19, 2025, this Court entered a preliminary injunction prohibiting Defendants from

implementing Sections 4(a) and 4(c) of the Executive Order with regard to Rachel and Ellen Doe

and requiring BOP to transfer them back to a women's facility immediately and to reinstate or

continue their gender dysphoria treatment.  ECF No. 68.

On April 2, 2025, Defendants noticed an appeal of the Court's orders issuing injunctive

relief, focusing "only on whether transferring these inmates to men's facilities is illegal."  ECF

Nos. 72, 76.  On April 24, 2025, Defendants moved to stay further proceedings in the District

Court until August 23, 2025, except with regard "to any motions to extend or renew the

preliminary injunctions, any issue that may arise from compliance with those preliminary

injunctions, the entry of any protective order, any motions to amend the complaint to add new

plaintiffs and for preliminary injunctive relief regarding those plaintiffs, and other case

management issues [and] [e]ither Plaintiffs or Defendants may move to lift the stay at any time."

ECF No. 76.  The Court granted the motion.  ECF No. 77.

---

[3] Plaintiff Sophia Doe has voluntarily dismissed her claims (ECF No. 80) and does not seek
relief through this motion

## III.    LEGAL STANDARD

An injunction issued in a lawsuit covered by the Prison Litigation Reform Act ("PLRA")

automatically expires after 90 days unless the court "render[s] it permanent" by "ma[king]

specific findings that the restraint is narrowly drawn, extends no further than necessary to correct

the violation of [the] federal right, and is the least intrusive means necessary to correct that

violation." *Banks v. Booth*, 3 F.4th 445, 448 (D.C. Cir. 2021); *see also* 18 U.S.C. §§

3626(a)(1)(A), 3626(a)(2).  Alternatively, upon a showing by Plaintiffs that preliminary relief

remains necessary, the Court can impose a new preliminary injunction.  "Nothing in the statute

limits the number of times a court may enter preliminary relief."  *Mayweathers v. Newland*, 258

F.3d 930, 935 (9th Cir. 2001); *see also Monroe v. Bowman*, 122 F.4th 688, 697 (7th Cir. 2024);

*Smith v. Edwards*, 88 F.4th 1119, 1125 (5th Cir. 2023); *Alloway v. Hodge*, 72 F. App'x 812 (10th

Cir. 2003).  The new injunction can be identical to the prior one, so long as the court makes the

"needs-narrowness-intrusiveness" findings anew.  *See Mayweathers*, 258 F.3d at 935–56.  This

Court can thus renew the relief currently in place—and thereby continue to preserve the status

quo—by issuing a new injunction and finding that the relief is "narrowly drawn, extend[s] no

further than necessary to correct the harm the court finds requires preliminary relief, and [is] the

least intrusive means necessary to correct that harm."  18 U.S.C. § 3626(a)(2).

*Winter* provides the familiar substantive standard.  To obtain a preliminary injunction,

plaintiffs must show that they are likely to succeed on the merits, that they are likely to suffer

irreparable harm in the absence of preliminary relief, that the balance of equities tips in their

favor, and that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555

U.S. 7, 20 (2008).  When the government is the defendant, the balance-of-equities and public-

interest factors merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## IV.    ARGUMENT

This Court has already concluded that Plaintiffs are likely to succeed on the merits of their Eighth Amendment claims.  ECF 23 at 8–10; ECF 55; ECF 68.  Plaintiffs incorporate by reference the arguments made in their prior motions.  *See* Memorandum of Points and Authorities in Support of Motion for Temporary Restraining Order, ECF 13-1, at 14–18; Memorandum of Points and Authorities in Support of Motion for Temporary Restraining Order, ECF 50-1, at 6–10; Memorandum of Points and Authorities in Support of Motion for Further Preliminary Injunction or Temporary Restraining Order, ECF 66-1 at 7–11.

There have been no factual developments that would disrupt the Court's prior conclusions that Plaintiffs have shown that they are likely to succeed on the merits of their Eighth Amendment Claim, that they will face irreparable harm in the absence of continued injunctive relief, and that the public interest and balance of equities weigh in favor of granting preliminary injunctive relief.  For the reasons stated here and in Plaintiffs' prior motions, Sections 4(a) and 4(c) of Executive Order 14168 and Defendants' implementation of it violate the Eighth Amendment, the Fifth Amendment's Due Process Guarantee, and the Administrative Procedure Act ("APA").[4]

### A.    Plaintiffs have shown a likelihood of success on the merits of their claims.

#### 1.    Eighth Amendment Claim

Plaintiffs have previously shown that they are likely to succeed on the merits of their Eighth Amendment claim.  *See* Memorandum of Points and Authorities in Support of Motion for Temporary Restraining Order, ECF 13-1, at 14–18; Memorandum of Points and Authorities in Support of Motion for Temporary Restraining Order, ECF 50-1, at 6–10; Memorandum of Points

---

[4] Plaintiffs maintain additional claims as well, but do not restate them here for purposes of seeking preliminary injunctive relief.

and Authorities in Support of Motion for Further Preliminary Injunction or Temporary Restraining Order, ECF 66-1 at 7.  The Executive Order's *categorical* requirement that Plaintiffs be transferred to men's prisons—despite preexisting individualized determinations that a women's prison is the appropriate placement for them—constitutes a failure to protect Plaintiffs from a substantial risk of serious harm and deliberate indifference to Plaintiffs' serious risk of substantial bodily injury if transferred to men's facilities.  *See Farmer v. Brennan*, 511 U.S. 825, 839–40, 846 (1994).  As this Court observed, Defendants have "[s]ummarily remov[ed] the possibility of housing the plaintiffs in a women's facility, when that was determined to be the appropriate facility under the existing constitutional and statutory regime[.]"  ECF No. 55 at 3.  That policy violates the Eighth Amendment.  *Id.*

Similarly, the Executive Order's categorical requirement that Plaintiffs cease to receive medical treatment for their gender dysphoria—which BOP has diagnosed in all Plaintiffs and for which BOP has provided treatment to all Plaintiffs for months or years—amounts to a failure to protect and deliberate indifference.  The Court has made this determination three times.  ECF No. 23 at 8–10; ECF No. 55 at 2–3; ECF 68 at 2–3.  Because nothing has changed, the Court should reach the same conclusion again.[5]

### 2.    Equal Protection Claim.

As the Court has recognized, Plaintiffs' Eighth Amendment claims are sufficient to sustain a preliminary injunction preventing Defendants' implementation of Sections 4(a) and 4(c) of the Executive Order with regard to Plaintiffs.  Order, ECF No. 23, at 8.  Defendants' actions also violate Plaintiffs' Equal Protection rights.  Plaintiffs incorporate by reference the

---

[5]  The only change occurred pursuant to this Court's Order, ECF 68: Defendants returned Rachel and Ellen Doe to women's facilities and reinstated Rachel's hormone treatment.  Thus, all Plaintiffs are now similarly situated with respect to their Eighth Amendment claims.

arguments in favor of their Equal Protection claim from their prior motions detailing that

Defendants' implementation of the Executive Order is subject to heightened scrutiny, and, so

scrutinized, fails to pass constitutional muster. *See* Memorandum of Points and Authorities in

Support of Motion for Temporary Restraining Order, ECF 13-1, at 7–14; Memorandum of Points

and Authorities in Support of Motion for Temporary Restraining Order, ECF 50-1, at 10–17.

Further, as set forth in Plaintiffs' prior briefings, the Executive Order is based on animus and

would fail even rational basis review. *See* Memorandum of Points and Authorities in Support of

Motion for Temporary Restraining Order, ECF 13-1, at 14; Memorandum of Points and

Authorities in Support of Motion for Temporary Restraining Order, ECF 50-1, at 16–17.

### 3.  APA Claim.

Defendants' implementation of Sections 4(a) and 4(c) of the Executive Order also

violates the APA for the reasons set forth in Plaintiffs' prior motions.  Memorandum of Points

and Authorities in Support of Motion for Temporary Restraining Order, ECF 13-1, at 18–21;

Memorandum of Points and Authorities in Support of Motion for Temporary Restraining Order,

ECF 50-1, at 19-23. As Plaintiffs have argued, BOP's blanket policies, mandated by the

Executive Order, of transferring transgender women to men's facilities run contrary to PREA

regulations, effectively rescind those regulations without following necessary procedures, and

are arbitrary and capricious, unconstitutional, and not in accordance with law. *Id.*  Similarly,

BOP's blanket policies, mandated by the Executive Order, of denying medically necessary

healthcare to transgender people, are arbitrary and capricious, unconstitutional, and not in

accordance with law.  To preserve this claim, Plaintiffs incorporate these arguments by

reference.

**B.** **Plaintiffs have shown that they face irreparable harm without an injunction.**

This Court has previously found that all Plaintiffs would suffer irreparable harm without an order preventing Defendants from enforcing Sections 4(a) and 4(c). *See* Order, ECF 23, at 10; Order, ECF 55, at 2–3; ECF 68 at 2–3. Without a renewed injunction, Plaintiffs will be transferred imminently to male prisons, where they will face an extremely high risk of sexual assault and physical violence. *See, e.g.*, *Greene v. Bowles*, 361 F.3d 290, 292 (6th Cir. 2004) (describing severe physical attack against a transgender woman by another prisoner); *Tay v. Dennison*, 457 F. Supp. 3d 657, 664–68 (S.D. Ill. 2020) (describing severe sexual misconduct against a transgender woman by prison staff and physical attack by a male prisoner).

Without injunctive relief, Plaintiffs will also have their medically necessary hormone treatment and other care discontinued. The denial of critical treatment for gender dysphoria would result in serious medical complications and physical changes, would worsen Plaintiffs' symptoms of gender dysphoria, and would likely lead to serious and potentially life-threatening consequences, such as heightened risk of suicidality. *See* Ettner Decl. ECF No. 013-6 ¶¶ 7. Moreover, as the Court has recognized, "placement in a male penitentiary *by itself* will exacerbate [Plaintiffs'] symptoms of their gender dysphoria, even if they are not subject to physical or sexual violence in their new facility—whether because they will be subject to searches by male correctional officers, made to shower in the company of men, referred to as men, forced to dress as men, or simply because the mere homogenous presence of men will cause uncomfortable dissonance." Order, ECF 55, at 3 n.2.

**C.** **The balance of equities and the public interest weigh in favor of granting injunctive relief.**

The balance of equities and public interest factors strongly favor a renewed injunction. As this Court has found, "the public interest in seeing the plaintiffs relocated *immediately* to

male facilities is slight at best.  And it is hard to cognize of *any* public interest in the immediate cessation of their hormone therapy," other than negligible cost savings and an abstract interest in furthering the Executive Branch's policy preferences.  ECF 23 at 11.  By contrast, Plaintiffs' interests are "not abstract at all."  *Id.*  That determination is equally true today as when the Court previously entered injunctive relief.  Defendants' interest in a radical departure from the status quo remains "slight at best," ECF 23 at 11.  Plaintiffs' interests in relief from the Executive Order remain urgent.

## CONCLUSION

The requested injunction is narrowly drawn and extends no further than necessary to correct and prevent the harm to plaintiffs that would result from implementation of the Executive Order.  18 U.S.C. § 3626(a)(2).  It prohibits Defendants from applying only the challenged sections of the Executive Order and BOP's implementing memoranda, and it prohibits Defendants from doing so only as to Plaintiffs.  It is also the least intrusive means necessary to correct this harm.  BOP has no discretion under the Executive Order to maintain Plaintiffs' housing in women's facilities, nor to continue Plaintiffs' necessary medical care.  Thus, enjoining Defendants is the least intrusive action the Court could take that will ensure Plaintiffs are not deprived of their rights.  Finally, renewing the preliminary injunctions for 90 days will have no adverse impact on public safety or the operation of the criminal justice system because the order will simply maintain the status of Plaintiffs' medical care and housing while the litigation proceeds.  For the foregoing reasons, Plaintiffs respectfully request that the Court enter a new preliminary injunction renewing the relief in the current injunctions for an additional ninety (90) days, from May 25 to August 23, 2025.

Dated: May 12, 2025

/s/ Kara J. Janssen

Kara J. Janssen (admitted *pro hac vice*)
Ernest Galvan (admitted *pro hac vice*)
Adrienne Spiegel (admitted *pro hac vice*)
Ben Hattem (admitted *pro hac vice*)
EGalvan@rbgg.com
KJanssen@rbgg.com
ASpiegel@rbgg.com
BHattem@rbgg.com
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
(415) 433-6830

Eve L. Hill (Bar No. 424896)
ehill@browngold.com
BROWN GOLDSTEIN & LEVY, LLP
120 E. Baltimore St., Suite 2500
Baltimore, MD 21202
Tel: (410) 962-1030
Fax: (410) 385-0869

Christopher Stoll (admitted pro hac vice)
Amy Whelan (admitted pro hac vice)
CStoll@nclrights.org
AWhelan@nclrights.org
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, CA 94102
Tel: (415) 365-1338
Fax: (415) 392-8442

Jennifer L. Levi (admitted pro hac vice)
Sarah Austin (admitted pro hac vice)
GLBTQ Legal Advocates & Defenders
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
jlevi@glad.org
saustin@glad.org

*Attorneys for Plaintiffs*
