# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **RHONDA FLEMING and** | § | |
| **MIRIAM CRYSTAL HERRERA,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:25-CV-0157-D** |
| | § | **(Consolidated with** |
| **WARDEN T. RULE, WILLIAM K.** | § | **Civil Action No. 4:25-CV-0438-D)** |
| **MARSHALL, III, PAMELA J. BONDI,** | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

## DECLARATION OF RHONDA FLEMING

I, Rhonda Fleming, declare:

1. My name is Rhonda Fleming. I am over the age of eighteen and competent to make this declaration. I make this declaration based on my personal knowledge of the matters set forth herein.

2. I am currently incarcerated in the Bureau of Prisons at FMC Carswell in Fort Worth, Texas.

3. The living arrangements at FMC Carswell provide very little privacy. Inmates must sleep, change clothes, and bathe in full view of one another. Showers and restrooms are communal, and there are no private facilities available to inmates within the general population.

4. Despite being designated a women's facility, FMC Carswell now houses at least a dozen biological male inmates who claim to identify as women. These male inmates are placed in the same housing units as female inmates, use the same showers and restrooms, and move freely about the compound.  Within units at Carswell, four inmates typically will share a cell, and the

---

**DECLARATION OF RHONDA FLEMING**

**APP100**

cells do not have doors, let alone locks. While shower stalls have doors, there are approximately 4-inch gaps around the doors to enable female guards to see the shower.

5.      Many of these male inmates retain male genitalia and possess the physical characteristics and strength of men. Several are known to have been convicted of violent or sexual offenses. Their presence in the general population has created an environment of constant fear, anxiety, and humiliation for me and other women incarcerated here.

6.      I have personally witnessed male inmates undressing and showering alongside women. I have also observed male inmates entering restrooms while women were using them and staring at female inmates while they were naked or changing clothes. These events are deeply distressing and violate my most basic sense of modesty and dignity.

7.      In July 2025, a male inmate physically assaulted a female prisoner in her room after saying, "I'm not trans, I'm bisexual and everything works." Even after that assault, prison officials took no meaningful action to remove male inmates from our housing units.

8.      I practice Messianic Judaism. A central tenet of my faith is modesty: I may not expose my unclothed body to men who are not my husband, nor may I view the nude body of men who are not my husband. For me, undressing or showering in the presence of men is a grave sin and an affront to my faith.

9.      My faith also teaches me to avoid "sitting with the wicked" and to worship with God's people. I have a strong fear of God and believe He punishes disobedience to His commandments. I cannot in good conscience participate in worship services that include men pretending to be women. This has denied me the ability to worship as commanded. More specifically, I have been denied access to Jewish services with the Rabbi because a male inmate has been present for Passover and other important Jewish Holy Days.

---

**DECLARATION OF RHONDA FLEMING**

**APP101**

10.     The BOP's policy of housing biological males in women's facilities forces me to violate these religious convictions. I am compelled either to expose my body in front of men or to refrain from bathing or using the restroom. As a result, I live in a constant state of moral conflict and spiritual distress.

11.     I have filed complaints and grievances about these conditions, but they have been ignored or dismissed. Rather than addressing my concerns, prison staff have warned me that continued complaints could result in disciplinary action or transfer. Indeed, prison staff have repeatedly retaliated against me due to my firm resolve that the BOP Transgender Policy violates my religious and bodily privacy rights.  The FBOP employees have used the disciplinary process to intimidate me and stop the filing of grievances and complaints.  At the same time that the BOP disregards the safety of biological women, it simultaneously demonstrates a clear bias towards the male inmates.  By way of example, in the past I was housed at Federal Prison Camp-Bryan, a lower security facility in Texas.  During a chapel service, I made a comment about "the other man in the room," who was a large, young man who identified was a woman.  He complained that I referred to him as a man, I was written up for "abusive/obscene language," and soon thereafter I was moved out of the camp and back to prison.

12.     FMC Carswell has, at times, placed biological male inmates not only in general-population housing but also in the Special Housing Unit ("SHU"). In that setting, women can be locked inside a cell with a man and forced to shower and use the toilet—without a partition—in front of a man.

13.     On or about July 19, 2025, I was placed in the SHU after objecting to the presence of male inmates in my housing unit. Prison officials threatened to assign me to a cell with a biological male inmate (Katy Bernal Guzman) who was in the SHU for physical assaulting female

---

**DECLARATION OF RHONDA FLEMING**

**APP102**

prisoners. I was terrified at the thought of being confined in a cell with this man and requested suicide watch rather than risk being assaulted in the cell. This experience caused severe distress and reinforced my belief that FMC Carswell officials are indifferent to my safety and religious conscience.

14.    The conditions at FMC Carswell subject me to daily fear, humiliation, and anxiety. I am constantly on guard, uncertain whether I will be exposed or harassed. Many women here have similar experiences but are too afraid to report them because of retaliation or disbelief.

15.    The policy of housing men in women's facilities contradicts common sense and undermines the safety and dignity of women. It forces me to expose my body to men, violates my religious beliefs, and subjects me to a substantial risk of sexual harassment and assault.

16.    As a result of these unlawful policies and the constant fear and humiliation they cause, I have suffered serious physical and emotional harm. I live with a reasonable and ongoing fear of sexual assault by male inmates, which has caused chronic anxiety, sleeplessness, and recurring headaches. The stress has also resulted in stomach pain, loss of appetite, and other physical symptoms. I have experienced what I believe to be sexual harassment and intimidation, and I suffer continual fear of rape and bodily harm each day I remain housed under these conditions. These harms are not merely emotional but manifest in physical pain and deterioration of my health and well-being.

17.    I have exhausted, or attempted in good faith to exhaust, all available administrative remedies. I repeatedly requested administrative remedy forms from prison staff to grieve the BOP's policy of housing biological males in women's facilities, but those forms were never provided. On January 31, 2025, I submitted a written message to the Grievance Coordinator specifically requesting access to the grievance process and forms related to this issue, but my

**DECLARATION OF RHONDA FLEMING**

request went unanswered. A true and correct copy of the message requesting a grievance form is attached as **Exhibit B-1**. Despite these efforts, no administrative remedy process was made available to me.

---

DECLARATION OF RHONDA FLEMING

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct.

November 3, 2025.

_____
Rhonda Fleming

**DECLARATION OF RHONDA FLEMING**

**APP105**

# EXHIBIT B-1

Case 1:25-cv-00286-RCL    Document 141-2    Filed 06/05/26    Page 9 of 31
Case 4:25-cv-00157-D    Document 59    Filed 11/03/25    Page 110 of 115    PageID 440

Case 4:25-cv-00157-D    Document 29    Filed 07/14/25    Page 6 of 8    PageID 120

TRULINCS  20446009 - FLEMING, RHONDA ANN - Unit: CRW-I-N
---------------------------------------------------------------------------------------------

FROM: 20446009
TO: Administrative Remedies
SUBJECT: ***Request to Staff*** FLEMING, RHONDA, Reg# 20446009, CRW-I-N
DATE: 01/31/2025 03:32:02 PM

To: Grievance Coordinator
Inmate Work Assignment: na

I need access to the grievance process.  I am requesting forms for the issue sent to the Special Monitor, as written below.
Thank you
-----FLEMING, RHONDA ANN on 1/31/2025 3:30 PM wrote:

> *No response ever provided.*

*EX-A-2*

**APP107**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **RHONDA FLEMING and** | § | |
| **MIRIAM CRYSTAL HERRERA,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:25-CV-0157-D** |
| | § | **(Consolidated with** |
| **WARDEN T. RULE, WILLIAM K.** | § | **Civil Action No. 4:25-CV-0438-D)** |
| **MARSHALL, III, PAMELA J. BONDI,** | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

## DECLARATION OF MIRIAM HERRERA

I, Miriam Herrera, declare:

1.      My name is Miriam "Mimi" Crystal Herrera. I am over eighteen years of age, of sound mind, and competent to testify. I make this declaration based on my personal knowledge.

2.      I am currently incarcerated in the Bureau of Prisons at FMC Carswell in Fort Worth, Texas.

3.      Despite its designation as a women's prison, FMC Carswell houses biological male inmates who claim to identify as women within the general female population. These male inmates retain male genitalia, share our living quarters, and use the same bathrooms, showers, and recreation areas as women. Within the Units at Carswell, four inmates typically will share a cell, and the cells do not have doors, let alone locks.  While shower stalls have doors, there are approximately 4-inch gaps around the doors to enable female guards to see into the shower.

4.      I have personally witnessed and experienced repeated incidents of harassment and voyeurism by these male inmates. On one occasion, while I was showering, Peter Langan, a male

---

**DECLARATION OF MIRIAM HERRERA**

**APP109**

inmate wearing makeup positioned himself in front of a mirror that reflected directly into the shower area and stared at me while I bathed. When I closed the shower door, he deliberately opened it, laughed, and told me he would be waiting for me in the bathroom after lights out. I was terrified.

5. On other occasions, male inmates have entered the restrooms while women were using them and have made lewd comments about our bodies. One male inmate in a wheelchair bragged that his position gave him "a better view of women's private parts." I have also observed male inmates having sexual relations with female prisoners in cells and showers.

6. These repeated intrusions have taken a serious toll on me. I was sexually abused in the past by someone I lived with, and being forced to shower or change clothes where men can see me brings all of that trauma back. I feel sick with fear and anxiety whenever I have to go into the bathroom or shower area. It feels like I'm never safe. The lack of privacy, coupled with the frequency of such incidents, has caused lasting psychological harm and ongoing fear of sexual victimization.

7. These experiences have caused me severe fear, humiliation, and anxiety. I often have difficulty sleeping and live in constant apprehension of being watched, harassed, or assaulted. Many women here have similar fears but are too afraid to complain because they worry about retaliation.

8. My Christian faith teaches that men and women should not see one another naked or share intimate spaces outside of marriage. I believe that modesty before men is a moral duty. Being forced to undress, shower, or use the restroom in the presence of men violates my religious convictions and my conscience.

**DECLARATION OF MIRIAM HERRERA**

**APP110**

9.     Because of these conditions, I am continually forced to choose between following my faith and performing basic daily functions such as bathing or using the restroom. The emotional and spiritual toll of this dilemma has been overwhelming.

10.    When I and others complained about these conditions, officials at FMC Carswell ignored our grievances and warned that further complaints could result in disciplinary action or transfer. Instead of protecting women, staff have told us we must "adjust" to the presence of men.

11.    After this lawsuit was filed, I was informed by staff that I would soon be transferred from FMC Carswell to FCI Aliceville in Alabama. The stated reason was "institutional need," but staff indicated the transfer was related to my participation in this case. The timing and context made it clear that the transfer was retaliatory.

12.    A transfer to FCI Aliceville would be devastating. It is hundreds of miles from my family in Texas, and I depend on their support. Aliceville is known to have chronic staffing shortages and inadequate medical care. Moving me there would isolate me from my family and counsel and worsen my conditions of confinement.

13.    The mere threat of transfer has already caused me stress and fear. I understand that prison officials may retaliate against inmates who seek legal redress, and the threat to move me confirms that risk. I fear that without court intervention, I could be transferred at any time in retaliation for asserting my rights.

14.    The conditions I have described are real, ongoing, and dangerous. They endanger my physical safety and burden my exercise of religion.

---

**DECLARATION OF MIRIAM HERRERA**

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct.

November 3, 2025.

Miriam Herrera

**DECLARATION OF MIRIAM HERRERA**

**APP112**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **RHONDA FLEMING and**<br>**MIRIAM CRYSTAL HERRERA,** | § | |
| **Plaintiffs,** | § | |
| v. | § | **Civil Action No. 4:25-CV-0157-D** |
| **WARDEN T. RULE, WILLIAM K.**<br>**MARSHALL, III, PAMELA J. BONDI,**<br>**and THE UNITED STATES OF**<br>**AMERICA,** | § | **(Consolidated with**<br>**Civil Action No. 4:25-CV-0438-D)** |
| **Defendants.** | § | |
| **ELIZABETH ANN HARDIN,**<br>**BRENDA LEIGH KIRK, JASMINE**<br>**MEABON, JESSICA CLEMENCIO**<br>**MORAIS, and KEISHA WILLIAMS** | § | |
| **Intervenor-Plaintiffs,** | § | |
| v. | § | |
| **WARDEN T. RULE, WILLIAM K.**<br>**MARSHALL, III, PAMELA J. BONDI,**<br>**and THE UNITED STATES OF**<br>**AMERICA,** | § | |
| **Defendants.** | § | |

## APPENDIX TO INTERVENOR-PLAINTIFFS'
## MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION
## <u>AND BRIEF IN SUPPORT</u>

Intervenor-Plaintiffs file this Appendix in support of their Motion for Preliminary and Permanent Injunction and Brief in Support. The contents of the declarations of each Intervenor-Plaintiff contained herein were reviewed and approved by the declarant. Because Intervenor-Plaintiffs are incarcerated, a copy has been sent to them by U.S. mail for execution. Counsel will promptly file the executed declarations upon receipt.

### APPENDIX INDEX

| DESCRIPTION | APP. PAGES |
|---|---|
| Declaration of Elizabeth Ann Hardin, Mar. 26, 2026 | 1–2 |
| Declaration of Brenda Leigh Kirk, Mar. 26, 2026 | 3–6 |
| Declaration of Jasmine Meabon, Mar. 26, 2026 | 7–9 |
| Declaration of Jessica Clemencio Morais, Mar. 26, 2026 | 10–12 |
| Declaration of Keisha Williams, Mar. 26, 2026 | 13–16 |

March 30, 2026

Respectfully submitted,

*/s/ John Greil*
John Greil
  Tex. Bar No. 24110856
Brian J. Field (*pro hac vice*)
Justin A. Miller
  Tex. Bar No. 24116768
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
jgreil@schaerr-jaffe.com
bfield@schaerr-jaffe.com
jmiller@schaerr-jaffe.com

*Counsel for Intervenor-Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| RHONDA FLEMING and<br>MIRIAM CRYSTAL HERRERA,<br><br>    Plaintiffs,<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>    Defendants.<br><br>––––––––––––––––––––<br><br>ELIZABETH ANN HARDIN,<br>BRENDA LEIGH KIRK, JASMINE<br>MEABON, JESSICA CLEMENCIO<br>MORAIS, and<br>KEISHA WILLIAMS<br><br>    Intervenor-Plaintiffs,<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 4:25-CV-0157-D<br>(Consolidated with<br>Civil Action No. 4:25-CV-0438-D) |

### DECLARATION OF ELIZABETH ANN HARDIN

I, Elizabeth Ann Hardin, declare:

1. My name is Elizabeth Ann Hardin. I am over eighteen years of age, of sound mind, and competent to testify. I make this declaration based on my personal knowledge.

2. Until I was transferred in February 2026, I was incarcerated at FMC Carswell in Fort Worth, Texas, where I was housed in Two North.

---

DECLARATION OF ELIZABETH ANN HARDIN

**APP.1**

3.   While I was at Carswell, male inmates were present in Two North and in women's private areas. I personally saw Sean Patrick O'Brien in the women's bathroom around 4:00 a.m. while I was getting ready for my 6:00 a.m. work shift. I saw him shaving there with a visible erection.

4.   Because male inmates were present in the bathroom and shower area, I changed my daily routine to protect my privacy. I no longer came out of the shower in a towel. Instead, I got fully dressed inside the shower so I would not be seen. I also stopped changing shirts openly in the bathroom and avoided bathrooms with broken or non-locking doors.

5.   The problem at Carswell was not limited to where inmates slept. Women and male inmates still used common areas, including the elevators. That is one reason why simply moving a male inmate to another hallway would not solve the problem for me.

6.   In December 2025, after this court's order to Fleming and Herrera, I was still dealing with this problem in the elevators and other shared spaces. Around that time, Peter Langan would give me weird looks when he saw me getting on the shared elevator. This made me feel unsafe and uncomfortable, and I did not want to have to share an elevator with him.

7.   In February 2026, I was told I was being sent for RDAP. I understood that I was supposed to go to Bryan, Texas, but instead I was sent through the Oklahoma transfer center and then to Waseca, Minnesota. This transfer took me farther from my family, which I did not want, and which was difficult for me personally.

8.   I do not know for certain why I was sent to Minnesota instead of Bryan. But I believe my transfer to Minnesota may have been in retaliation for my participation in this lawsuit about male inmates being housed with women at Carswell.

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is

true and correct.

March __, 2026.

_____
Elizabeth Ann Hardin

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| RHONDA FLEMING and<br>MIRIAM CRYSTAL HERRERA,<br><br>    Plaintiffs,<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>    Defendants.<br><br>———————————————<br><br>ELIZABETH ANN HARDIN,<br>BRENDA LEIGH KIRK, JASMINE<br>MEABON, JESSICA CLEMENCIO<br>MORAIS, and<br>KEISHA WILLIAMS<br><br>    Intervenor-Plaintiffs,<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 4:25-CV-0157-D<br>(Consolidated with<br>Civil Action No. 4:25-CV-0438-D) |

## DECLARATION OF BRENDA LEIGH KIRK

I, Brenda Leigh Kirk, declare:

1. My name is Brenda Leigh Kirk. I am over eighteen years of age, of sound mind, and competent to testify. I make this declaration based on my personal knowledge.

2. I am incarcerated at FMC Carswell. In December 2025 and March 2026, I was housed in Two North.

---

**DECLARATION OF BRENDA LEIGH KIRK**

**APP.3**

3.  At Carswell, the problem is not limited to where the male inmates sleep. Women in Two North still have to use the same elevator and other common areas. To leave my unit, I have to go down the elevator through One North, where the male inmates are housed. I see male inmates in the elevator and in food service every day, often several times a day.

4.  One of the male inmates I regularly encounter is Zack Lawrence, who has sexually assaulted a female inmate. By March 2026, he had become loud, hostile, and threatening. In shared spaces, including the elevator, he would make hostile comments blaming women for the restrictions placed on him and mutter violent things. His behavior makes me fear that he might snap and hurt someone. Even today I have to ride the elevator with him. There's only one elevator for the top floor, so Two South and Two North take the elevator. Males still live in Two South, so even though there are no men in Two North, I have to be in a confined area with males.

5.  In December 2025, another inmate, Takisha Brown, began harassing me. Brown said that the women involved in this case should be segregated away from the men because we were the ones who had a problem with the men being here. I had not been discussing this case with other inmates, so I did not understand how Brown knew who was involved in the case.

6.  Around the same time, Brown wrote false statements about me on the bathroom wall and spread rumors about me to other inmates. Because of that, several women approached me and asked why I had supposedly been talking about them. I reported this harassment to staff because I believed it was connected to my participation in this case. I knew Brown was trying to get me in trouble because of this case.

7.  When I reported Brown's harassment to Lieutenant Garcia, he did not want to hear my complaint. Instead, he focused on my job and said he would call Counselor Cooperwood about it. Lieutenant Stegall looked at the handwriting and said that's not Brown's handwriting, which was false. I saw Brown go in the stall while I was in the bathroom, Brown wrote it in the stall, and then she told me "deal with that, bitch." That response made me believe staff were not protecting me from retaliation.

8.  Right after Brown's harassment and the lack of response, prison staff informed me I could not have my job any more. They told me it was because you can't keep a job longer than a year, but I had been in the same job for three and a half years, and never had a problem. I have seen many other inmates hold down the same job for multiple years.

9.  As you hold a job for longer time, you receive different job grades, with different pay. I was at Grade 2 for my job as orderly clerk. I took care of all the payroll, ordering, supplies, for our housing unit.

---

DECLARATION OF BRENDA LEIGH KIRK

**APP.4**

10. Moving a male inmate to another hallway, or moving women to another hallway, would not solve this problem for me. I still have to encounter male inmates in the elevator, food service, and other shared spaces. That is why I believe the male inmates should be removed from the women's housing units and placed in a separate unit.

11. I feel women should not have to be subjected to this. Men housed here have already done horrible things to women and children. The situation is wrong, and the prison is not taking women's concerns seriously.

12. Shortly after I joined the lawsuit, I was told that my acceptance in the Office Management Program for training once I get out had been revoked. I was not given a real reason, and believe it was revoked because of my participation in this case. They said it was because I didn't have a job anymore, but I only didn't have a job because they revoked my orderly position.

---

**DECLARATION OF BRENDA LEIGH KIRK**

**APP.5**

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct.

March __, 2026.

_____

Brenda Leigh Kirk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| RHONDA FLEMING and<br>MIRIAM CRYSTAL HERRERA,<br><br>    **Plaintiffs,**<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>    **Defendants.**<br><hr><br>ELIZABETH ANN HARDIN,<br>BRENDA LEIGH KIRK, JASMINE<br>MEABON, JESSICA CLEMENCIO<br>MORAIS, and<br>KEISHA WILLIAMS<br><br>    **Intervenor-Plaintiffs,**<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>    **Defendants.** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **Civil Action No. 4:25-CV-0157-D**<br>**(Consolidated with**<br>**Civil Action No. 4:25-CV-0438-D)** |

## <u>DECLARATION OF JASMINE MEABON</u>

I, Jasmine Meabon, declare:

1. My name is Jasmine Meabon. I am over eighteen years of age, of sound mind, and competent to testify. I make this declaration based on my personal knowledge.

2. I am incarcerated at FMC Carswell. In late 2025 and early 2026, I have been housed in Two South. I was in One North until about August 2025. There is currently one male

---

**DECLARATION OF JASMINE MEABON**

**APP.7**

inmate living in Two South, I do not know his name, but I have seen him use the female restroom.

3. On or about November 10, 2025, I was using the restroom on the recreation yard when a male inmate, Gary Boone, came into the restroom while I was in a stall. He looked over the stall and asked me if I needed help wiping my vagina.

4. There was a sign on that restroom stating that only one inmate was allowed in at a time. I could see there was a camera, and staff told me there was camera footage showing Boone entering the restroom while I was inside. I reported what happened, including to Lieutenant Recorder and SIS staff member Freeze, but I do not believe staff took the matter seriously.

5. What happened with Boone affected me deeply. I have previously been the victim of rape, and this incident caused flashbacks and set me back mentally.

6. Even after they moved a male inmate, Michael Reed, out of my housing unit, I still saw Boone in shared spaces, including outside and in main line for food. I tried to stay away from him as much as I could. By March 2026, I still sometimes saw him, and when I did, he would be laughing. Because we still share common areas, moving male inmates from one women's unit to another does not solve the problem for me.

7. I also believe staff have not taken my safety seriously. I filed a grievance to the warden, but I felt like what happened to me was thrown under the rug. I was told the captain was supposed to follow up with me, but no one meaningfully addressed what happened.

8. I am afraid of retaliation if I complain. I fear retaliation both from male inmates and from staff. I fear staff may search my locker, treat me aggressively, or try to put me in the SHU, and I do not believe the prison protects women who report these problems.

9. It is not enough to move male inmates to another hallway or move women somewhere else while the same men still use the same restrooms, main line, and other shared spaces. I believe the male inmates should be removed from the women's housing units and placed in a separate unit.

10. I feel like staff should take our safety more seriously, and not just mine, but the safety of all the women here. This situation has been very draining for me, especially because what happened to me feels like it was thrown under the rug. No one has really talked to me about it or followed up with me, and it has left me feeling like nobody cared and like what happened to me did not matter. I want staff to do better and to take these incidents seriously when women report them.

11. On or about March 18, 2026, Jessica Clemencio Morais and I were in the women's restroom talking. There were many other inmates in the restroom, and staff believed some of them had been smoking. Morais and I were not smoking. Male officers came into the women's restroom without announcing themselves or knocking. They banged on

---

**DECLARATION OF JASMINE MEABON**

**APP.8**

the doors and ordered people to come out. A female officer later came to our stall. Morais and I were fully dressed, and we were not doing anything sexual or threatening.

12. Even though many other inmates were in the restroom, only Morais and I were taken to the Special Housing Unit. This was my first incident report at Carswell, and it was not a serious incident report. The other inmates were not taken to the SHU. After that, Warden Rule spoke to me and Clemencio in an angry and aggressive way and threatened to ship me out if I got into more trouble. That threat scared me. It made me believe staff were singling us out. No one knew who I was before the lawsuit, and since the lawsuit staff and leadership has had a target on me.

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct.

March __, 2026.

_____
Jasmine Meabon

**DECLARATION OF JASMINE MEABON**

**APP.9**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| RHONDA FLEMING and<br>MIRIAM CRYSTAL HERRERA,<br><br>    Plaintiffs,<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>    Defendants.<br><hr>ELIZABETH ANN HARDIN,<br>BRENDA LEIGH KIRK, JASMINE<br>MEABON, JESSICA CLEMENCIO<br>MORAIS, and<br>KEISHA WILLIAMS<br><br>    Intervenor-Plaintiffs,<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 4:25-CV-0157-D<br>(Consolidated with<br>Civil Action No. 4:25-CV-0438-D) |

## <u>DECLARATION OF JESSICA CLEMENCIO MORAIS</u>

I, Jessica Clemencio Morais, declare:

1. My name is Jessica Clemencio Morais. I am over eighteen years of age, of sound mind, and competent to testify. I make this declaration based on my personal knowledge.

2. I am incarcerated at FMC Carswell. In late 2025 and early 2026, I was housed in One North. By March 2026, I had been moved to Two South.

---

**DECLARATION OF JESSICA CLEMENCIO MORAIS**

**APP.10**

3.  In November 2025, there were male inmates housed in One North with me. I regularly saw male inmates in the unit. Men would wink at women, blow kisses, come too close to women in the phone and computer lines, and be in places where they could see women in the showers.

4.  I personally had problems with Gary Boone. On or about November 12, 2025, I saw Boone enter the restroom while another woman, Jasmine Meabon, was inside. After he came out, he asked me a sexual question about having sex in exchange for commissary. On another occasion, while it was raining, he told me to come out of the rain and come closer to him, in a sexual way. His behavior made me feel uncomfortable and unsafe.

5.  I reported the restroom incident to staff and asked that camera footage be preserved. I also emailed the warden and psychology staff asking them to hold the footage. Even after I reported it, I do not believe staff took the incident seriously or meaningfully protected me.

6.  By February 2026, Boone had received papers related to this case and was showing them to other inmates in the unit. Other inmates were whispering and looking at me. Because Boone lived in the same unit and the gate was open, I spent most of the day outside the unit, from about seven in the morning until eight at night, trying to avoid conflict.

7.  I asked staff to move me away from Boone. On February 20, 2026, Captain Smith told me she did not have to move me even though I told her I felt very uncomfortable in the unit and with my unit team. I believed staff were treating me differently and holding a grudge against me because I was involved in this lawsuit.

8.  Around February 28, 2026, I was subjected to retaliation by staff about my clothing. As I was going to recreation, staff made me change clothes and took my clothes because they said my sweatpants and t-shirt were too tight, even though they were my usual size and had not been altered. Staff commented on my body and made me feel humiliated. This caused me a mental breakdown and made me afraid to leave my room or even wear my clothes. I think they were targeting me because of this lawsuit.

9.  By March 2026, I had been moved to Two South, but that did not solve the problem. I still had to see Boone in shared spaces, especially recreation. In March 2026, Boone stood directly behind the bench where I was sitting with another woman, stared at us, and listened to our conversation. He also continued to stay close to me and stare at me. That made me scared and very uncomfortable because I did not know what he was going to do.

10. Even after I was moved to Two South, staff continued retaliating against me about my clothes and other matters. Moving me to another unit did not fully protect me, because I still had to encounter Boone in shared spaces and I still faced retaliation from staff.

---

**DECLARATION OF JESSICA CLEMENCIO MORAIS**

**APP.11**

11. In my experience, it is not enough to move a woman to a different hallway or move a man to another hallway while we still overlap in recreation and other shared areas. I believe the male inmates should be removed from the women's housing units and placed in a separate unit.

12. On or about March 18, 2026, I was in the women's restroom with Jasmine Meabon. I was upset and crying because of a family problem involving my little sister, and Meabon came to check on me. Other inmates in the restroom were smoking, but Meabon and I were not. Two male officers came into the women's restroom without announcing themselves or knocking, which is against policy. They began slamming on the stall doors and accusing inmates of smoking. Because they came in suddenly and aggressively, I was scared and did not open the stall door right away. A female officer later came to our stall. Meabon and I were fully dressed.

13. Even though other inmates were in the restroom and staff believed others had been smoking, only Meabon and I were taken to the Special Housing Unit. I was charged with being out of bounds and disobeying an order. The female officer told us words to the effect that if we had opened the door right away, she would not have sent us to the SHU. The other inmates were not taken to the SHU. Afterward, Warden Rule personally threatened that if we got into more trouble he would separate us and ship us out. But I do not have serious disciplinary charges against me. Based on how staff handled this incident, I believe staff were targeting me and retaliating against me because of this lawsuit.

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct.

March __, 2026.

_____
Jessica Clemencio Morais

**DECLARATION OF JESSICA CLEMENCIO MORAIS**

**APP.12**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **RHONDA FLEMING and**<br>**MIRIAM CRYSTAL HERRERA,** | § § § | |
| **Plaintiffs,** | § § § | |
| **v.** | § § | **Civil Action No. 4:25-CV-0157-D** |
| | § | **(Consolidated with** |
| **WARDEN T. RULE, WILLIAM K.**<br>**MARSHALL, III, PAMELA J. BONDI,**<br>**and THE UNITED STATES OF**<br>**AMERICA,** | § § § § § | **Civil Action No. 4:25-CV-0438-D)** |
| **Defendants.** | § § § | |
| | § § | |
| **ELIZABETH ANN HARDIN,**<br>**BRENDA LEIGH KIRK, JASMINE**<br>**MEABON, JESSICA CLEMENCIO**<br>**MORAIS, and**<br>**KEISHA WILLIAMS** | § § § § § § | |
| **Intervenor-Plaintiffs,** | § § | |
| **v.** | § § | |
| **WARDEN T. RULE, WILLIAM K.**<br>**MARSHALL, III, PAMELA J. BONDI,**<br>**and THE UNITED STATES OF**<br>**AMERICA,** | § § § § § | |
| **Defendants.** | § § § | |

**DECLARATION OF KEISHA WILLIAMS**

I, Keisha Williams, declare:

1. My name is Keisha Williams. I am over eighteen years of age, of sound mind, and competent to testify. I make this declaration based on my personal knowledge. I earned a B.S. in Electrical Engineering in 1998, an M.S. in Electrical Engineering in 2000, and a Juris Doctor with a concentration in Intellectual Property in 2006, and I held a Top Secret clearance with a lifestyle polygraph.

**DECLARATION OF KEISHA WILLIAMS**

**APP.13**

2. In December 2025, I was housed in One North at FMC Carswell. In early March 2026, I was moved to the camp at FMC Carswell.

3. In One North, male inmates were housed with women and shared the same showers, restrooms, and living areas with us. There was no meaningful separation. I personally saw that men could see into the showers and bathrooms, and I personally caught Gary Boone watching me.

4. Boone also acted aggressively toward me in common areas. He would bump me, use hostile language, and make me feel unsafe. At one point, he accused me of bumping him while I was getting my mail, but I told staff to check the cameras because he had bumped me on purpose. I reported Boone's conduct, but I did not see staff take meaningful action to protect me.

5. Other male inmates also made me fear for my safety. In February 2026, I reported that Michael Sternquest had been trying to antagonize me, trying to place himself wherever I was, and had reported a false PREA allegation against me. Around that same time, I also reported that Sternquest had threatened to blow up the place when he leaves and to harm people he had conflicts with while at Carswell.

6. Moving me to the camp did not solve the problem. Even at the camp, male inmates are still present in common areas, including the mail room. In my experience, that means the same basic problem continues even after a transfer, because women still have to encounter men in shared spaces.

7. I also believe I have faced retaliation for speaking up about these issues. Staff knew I was complaining about the presence of men in the women's housing units. After I complained, staff told me to stop filing emails and grievances because it made them look bad. I have also believed that staff retaliated against me through other aspects of my confinement when I continued to speak up.

8. I have a serious autoimmune disease, ulcerative colitis. My condition has been severe, and my body has gone septic multiple times while I have been in BOP custody.

9. I believe staff have retaliated against me through my medical care. In December 2025, I stated that when I complain or write things up, staff give me subpar medical care to keep me sick. I also stated that I had been told by a social worker that staff were retaliating against me medically by giving me inadequate care.

10. After I was moved to the camp on March 3, 2026, my medication situation got worse. The camp only had pill line twice a day, so I stopped receiving my midday Gabapentin dose. Even after I asked for help, and even after staff recommended that I receive that midday dose, Dr. Brown deleted the midday dose completely. I believed I was being punished for being moved to the camp and was being forced to walk around in severe pain.

DECLARATION OF KEISHA WILLIAMS

**APP.14**

11. I also believe staff have used my release-related issues against me. In February 2026, I stated that I had about 2,100 days of First Step Act credit but that only about 1,100 days were being applied. In December 2025, I was also told to state in a sensitive grievance that staff could retaliate against me by taking away privileges and First Step Act credits.

12. In my experience, it is not enough to move a woman to another hallway or move men from one unit to another. It only shifts the danger and leaves women exposed to the same men, the same threats, and the same retaliation in shared spaces. That is why I believe the male inmates should be removed from the women's housing units and placed in a separate unit.

13. The prison tries to scare women from reporting by leaking supposedly confidential complaints back to staff. There's no other way they could know some of the things I have put in forms that are supposed to be confidential. Staff retaliation has tried to make me stop fighting and stop speaking up, but I will continue to speak up because I am a fighter, and I won't quit.

14. I believe BOP staff uses substandard medical care to retaliate against me for speaking up about the condition of women at Carswell. I have serious medical conditions, including ulcerative colitis, and I have gone septic multiple times while in BOP custody. In 2025, despite severe symptoms including substantial bleeding, rapid weight loss, nausea, fatigue, dizziness, and weakness, I believe my care was delayed and inadequate for months, and I was not timely sent out for the level of treatment I needed. I have also had recommended outside testing and follow-up care that did not occur, and I learned from my records that an abdominal MRI identified Bosniak cysts on my right kidney, but no one explained that finding to me.

15. On March 20, 2026, I went to the Camp Clinic for a severe allergic rash on my face, arms, hands, and chest, but I was not given any treatment and no one followed up with me that day. On March 21 and 22, 2026, my rash became worse and I repeatedly sought care, including from Nurse Masters and Dr. Rasha, but I was given only Benadryl despite the visible severity of the rash, inflammation, and itching. By March 23, 2026, I was still waiting to be seen again while continuing to suffer from a severe and obvious allergic reaction.

16. I served this country for more than twenty years and never imagined that I would one day be in prison asking simply for safety and adequate medical care. I want people to understand that what happens inside these walls is real: women live with fear, women suffer in silence, and serious medical needs can go untreated while no one on the outside sees it. I am speaking out because I do not want this hidden from the public, and I do not want other women to endure what I have endured.

DECLARATION OF KEISHA WILLIAMS

**APP.15**

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct.

March __, 2026.

 

_____

Keisha Williams

**DECLARATION OF KEISHA WILLIAMS**

**APP.16**