# EXHIBIT C

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>TODD BLANCHE, in his official capacity as<br>Acting Attorney General of the United States, et al.,<br><br>    Defendants<br>and<br><br>Brenda Leigh Kirk, Jasmine Meabon,<br>Jessica Clemencio Morais, and Keisha Williams,<br><br>    Proposed Intervenor-Defendants. | No. 1:25-cv-00286-RCL |
| JANE JONES, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>TODD BLANCHE, in his official capacity as<br>Acting Attorney General of the United States, et al.,<br><br>    Defendants<br>and<br><br>Brenda Leigh Kirk, Jasmine Meabon,<br>Jessica Clemencio Morais, and Keisha Williams,<br><br>    Proposed Intervenor-Defendants. | No. 1:25-cv-00401-RCL |
| MARIA MOE, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD TRUMP, in his official capacity as<br>President of the United States, et al.,<br><br>    Defendants<br>and<br><br>Brenda Leigh Kirk, Jasmine Meabon,<br>Jessica Clemencio Morais, and Keisha Williams,<br><br>    Proposed Intervenor-Defendants. | No. 1:25-cv-00653-RCL |

**[PROPOSED] MEMORANDUM OF INTERVENOR-DEFENDANTS
BRENDA LEIGH KIRK, JASMINE MEABON, JESSICA CLEMENCIO MORAIS,
AND KEISHA WILLIAMS IN OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION [ECF No. 117]**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND .............................................................................................................................. 3

PROCEDURAL BACKGROUND.................................................................................................... 7

ARGUMENT ................................................................................................................................... 8

    I.      Plaintiffs Cannot Satisfy the Balance of Equities or Public Interest If Their Requested Relief Forces Women to Share Intimate and Daily Living Spaces with Biological Males. ...................................................................................... 8

    II.    Relief Requiring Biological Males in Women's Spaces Would Violate Women's Constitutional Rights. .................................................................................. 10

           A.      Plaintiffs' requested relief will harm Movants' constitutionally protected bodily privacy. ............................................................................. 10

           B.      Plaintiffs' requested relief will subject Movants to cruel and unusual punishment. .............................................................................................. 10

    III.   Plaintiffs Mischaracterize *Fleming* and Cannot Erase the Women's Testimony. ........................................................................................................... 12

    IV.   Plaintiffs' Requested Housing Relief is Not Narrowly Tailored Under the PLRA. ............................................................................................................... 13

CONCLUSION.............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Amoco Prod. Co. v. Vill. of Gambell*,
    480 U.S. 531 (1987) .................................................................................................. 8

*Bucklew v. Precythe*,
    587 U.S. 119 (2019) ................................................................................................ 11

*Doe v. Blanche*,
    172 F.4th 901 (D.C. Cir. 2026) ................................................................................ 2

*Doe v. McHenry*,
    763 F. Supp. 3d 81 (D.D.C. 2025) ........................................................................... 1

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ................................................................................................ 11

*Kennedy v. Louisiana*,
    554 U.S. 407 (2008) ................................................................................................ 12

*Lee v. Downs*,
    641 F.2d 1117 (4th Cir. 1981) ................................................................................ 10

*Nken v. Holder*,
    556 U.S. 418 (2009) .................................................................................................. 8

*Pitts v. Thornburgh*,
    866 F.2d 1450 (D.C. Cir. 1989) .............................................................................. 11

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) .................................................................................................. 8

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ...................................................................................................... 9

*Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*,
    93 F.3d 910 (D.C. Cir. 1996) .................................................................................. 10

**Statute**

18 U.S.C. § 3626 .......................................................................................................... 13

**Other Authority**

Masha Gessen,
    *Chase Strangio's Victories for Transgender Rights*,
    The New Yorker (Oct. 12, 2020) .............................................................................. 9

Proposed Intervenor-Defendants Brenda Leigh Kirk, Jasmine Meabon, Jessica Clemencio Morais, and Keisha Williams ("Movants") respectfully oppose Plaintiffs' emergency motion for a temporary restraining order and preliminary injunction to the extent Plaintiffs seek relief requiring the Bureau of Prisons to house biological male inmates in women's prisons, women's housing units, women's restrooms, women's shower areas, women's changing areas, or any other spaces where incarcerated women must live, bathe, undress, toilet, eat, recreate, receive medical care, or travel.

Movants take no position on Plaintiffs' medical-care arguments. This opposition addresses only the housing relief Plaintiffs request, which, if granted, will subject female inmates like Movants to serious harm.

## INTRODUCTION

Movants have been forced to live, shower, change, and use bathrooms with biological male inmates in federal prison. It has caused them serious psychological unrest, fear, indignity, and humiliation. They do not want to suffer through such harm any longer.

Plaintiffs' requested injunction asks the Court to protect Plaintiffs from one asserted constitutional injury by imposing another constitutional injury on incarcerated women like Movants. Equity does not countenance such an outcome. Nor do the facts justify it.

This Court's prior preliminary injunction rested in important part on the absence of a factual record showing concrete harm to women: "[T]he defendants have not so much as alleged that the plaintiffs in this particular suit present any threat to the female inmates housed with them, or that this threat cannot be managed locally by prison staff." *Doe v. McHenry*, 763 F. Supp. 3d 81, 89 (D.D.C. 2025), *vacated and remanded sub nom. Doe v. Blanche*, 172 F.4th 901 (D.C. Cir. 2026). The D.C. Circuit quoted that reasoning but vacated and remanded because the injunction

lacked the plaintiff-specific findings necessary to support relief. *Doe v. Blanche*, 172 F.4th 901, 916–19 (D.C. Cir. 2026).

While that factual premise might have accurately reflected the record in this case, it did not accurately reflect the facts on the ground in federal prison. Forcing women to share restrooms and shower areas with males will always harm them. And since this Court's earlier preliminary injunction, women incarcerated at FMC Carswell—where at least four Plaintiffs in this action are housed—have come forward with sworn, specific evidence of the privacy, safety, and dignity harms caused by housing biological males in women's spaces. *See* 1st Am. Prop. Complaint-in-Intervention, *Fleming v. Warden T. Rule*, No. 4:25-cv-00157-D (N.D. Tex. Jan. 8, 2026), ECF No. 125 ("*Fleming* Compl."); App'x to Intervenors' Mot. Prelim. Inj., *id.* (N.D. Tex. Mar. 30, 2026), ECF No. 153 (containing declarations of intervenor-plaintiffs).

Their testimony is disturbing: They describe a male inmate shaving in a women's bathroom with a visible erection; a male inmate looking over a restroom stall and asking an incarcerated woman if she needed help wiping her vagina; male inmates positioned where they can watch women shower; daily forced encounters with males in enclosed spaces like elevators; sexual propositions; staring; threatening conduct; and retaliation against women who complain.

Those facts currently missing from the record here must be considered, and they change the equitable calculus. Plaintiffs may argue that transfer to an open male general-population prison would harm them. But that does not give Plaintiffs a constitutional right to shower with women, change in front of women, use women's restrooms, live in women's dormitories, or move through women's daily prison spaces. Even if Plaintiffs' preferred placement improves their mental health, the Constitution does not permit the Court to improve one inmate's conditions by degrading another inmate's bodily privacy or personal safety.

2

The Court should deny any injunction that requires BOP to keep Plaintiffs in women's general population, women's housing units, women's private areas, or shared spaces with incarcerated women. If the Court concludes that some interim housing protection is necessary, any relief must be tailored to a separate, secure placement that protects Plaintiffs without forcing women to share intimate or daily living spaces with biological males.[1]

## BACKGROUND

Movants are biological women incarcerated at FMC Carswell. Movants are also Intervenor-Plaintiffs in related litigation pending in the United States District Court for the Northern District of Texas. *See Fleming v. Rule*, No. 4:25-cv-00157-D (N.D. Tex.). In that action, Movants object to being housed with male inmates, including several convicted of rape, sex offenses, and other violent offenses. The Movants assert that the federal government's policy and practice of housing biological males in women's prisons violates female inmates' constitutional rights, including their Fifth Amendment right to bodily privacy and their Eighth Amendment right to be free from cruel and unusual punishment. *See Fleming* Compl.

FMC Carswell is designated for female offenders. The record in *Fleming v. Rule* shows that women at Carswell live in four-person cells without doors and communal units with relatively open showers (curtains or doors, which do not fully obstruct sightlines) and limited privacy. Inmates sleep, bathe, and change clothes within constant view of one another. Decl. of Rhonda Fleming ¶¶ 3–4, *Fleming*, No. 4:25-cv-00157-D (N.D. Tex. Nov. 3, 2025), ECF No. 59 at APP.100–101 ("Fleming Decl."); Decl. of Miriam Crystal Herrera ¶¶ 3–5, *id.,* at APP.109–110

---

[1] Movants take no position on any question about whether Plaintiffs should return to all-male facilities or whether BOP should identify different housing arrangements.

3

("Herrera Decl."). In that environment, the introduction of biological males obliterates any sense of security or modesty. Fleming Decl. ¶ 6; Herrera Decl. ¶¶ 3–7.

The factual record in the *Fleming* litigation documents numerous harms caused by biological males at FMC Carswell—both the general indignity of women being forced to shower or change where males can view them, as well as specific incidents of threatening and sexual behavior by males.

For instance, Movant Kirk details why "the problem is not limited to where the male inmates sleep." Decl. of Brenda Leigh Kirk ¶ 3, *Fleming,* No. 4:25-cv-00157-D (N.D. Tex. Mar. 30, 2026), ECF No. 153 at APP.3–6 ("Kirk Decl."). Women in Two North (one of the three general population housing units at Carswell) must use the same elevator and other common spaces, and she sees male inmates "in the elevator and in food service every day, often several times a day." *Id.* ¶ 3. One male inmate she has regularly encountered is Zack Lawrence, "a sexual offender convicted of attempted enticement of a minor to engage in sexual activity and distribution of child pornography."[2] Lawrence has become "loud, hostile, and threatening," made hostile comments blaming women for restrictions placed on him, and "mutter[ed] violent things" at women. *Id.* ¶ 4. Ms. Kirk had to ride the elevator with him because "[t]here's only one elevator for the top floor," where she is housed. *Id.* ¶ 4.

Movant Meabon was verbally assaulted by a male inmate in the Carswell recreation area restroom. Ms. Meabon was using the recreation-yard restroom when Gary Boone[3] entered while she was in a stall. Decl. of Jasime Meabon ¶ 3 *Fleming,* No. 4:25-cv-00157-D (N.D. Tex. Mar. 30,

---

[2] *See Fleming* Compl. ¶ 75 & n.16 (citing Judgment in a Criminal Case at 1, *United States v. Lawrence*, No. 2:08-cr-00044-LSC-PWG (N.D. Ala. July 24, 2008), Dkt. 24).

[3] Boone "was convicted in connection with the pipe bombing that resulted in the death of his wife's lover." *See Fleming* Complaint ¶ 75 & n.19 (citing *United States v. Boone*, 245 F.3d 352, 356–57 (4th Cir. 2001)).

2026), ECF No. 153 at APP.7–9 ("Meabon Decl."). According to Ms. Meabon's declaration, Boone "looked over the stall and asked me if I needed help wiping my vagina." *Id.* Ms. Meabon reported the incident to prison staff, and staff told her there was camera footage showing Boone entering the restroom while she was inside. *Id.* ¶ 4. But she does not believe staff took the matter seriously. *Id.* The incident caused flashbacks for Ms. Meabon, who had previously been raped. *Id.* ¶ 5. Meabon continued to see Boone in shared spaces, including outside and in main line for food; by March 2026, she still saw him, and "when I did, he would be laughing." *Id.* ¶ 6.

Movant Morais witnessed Boone (a male inmate) entering the bathroom with Meabon inside. Decl. of Jessica Clemencio Morais ¶ 4, *Fleming,* No. 4:25-cv-00157-D (N.D. Tex. Mar. 30, 2026), ECF No. 153 at APP.10–12 ("Morais Decl."). After Boone came out, he asked Ms. Morais "a sexual question about having sex in exchange for commissary." *Id.* By March 2026, even after Morais was moved to a different location within FMC Carswell, Boone "stood directly behind the bench where I was sitting with another woman, stared at us, and listened to our conversation." *Id.* ¶ 9.

Movant Morais was also accosted by other male inmates. When she was in a housing unit with other males, they would "wink at women, blow kisses, come too close to women in the phone and computer lines, and be in places where they could see women in the showers." *Id.* ¶ 3.

Movant Williams explains the indignity of being housed with male inmates. She states that male inmates were housed with women and "shared the same showers, restrooms, and living areas with us." Decl. of Keisha Williams ¶ 3, *Fleming,* No. 4:25-cv-00157-D (N.D. Tex. Mar. 30, 2026), ECF No. 153 at APP.13–16 ("Williams Decl."). "There was no meaningful separation." *Id.* She "personally saw that men could see into the showers and bathrooms," and she "personally caught Gary Boone watching" her. *Id.* Boone also acted aggressively in common areas, bumped her, used

5

hostile language, and made her feel unsafe. *Id.* ¶ 4. Ms. Williams reported Boone's conduct but saw no meaningful staff action to protect her. *Id.* She also reported that another male inmate, Michael Sternquist, had threatened "to blow up the place when he leaves" and to harm people with whom he had conflicts at Carswell—including the women in the *Fleming* litigation. *Id.* ¶ 5. Even after Ms. Williams was subsequently moved to a camp, that did not solve the problem because male inmates are still present in shared spaces, including the mail room. *Id.* ¶ 6.

Elizabeth Ann Hardin, another *Fleming* declarant formerly at Carswell (but not a proposed intervenor here), confirms the same pattern. She personally saw a male inmate, Sean Patrick O'Brien, in the women's bathroom around 4:00 a.m. shaving "with a visible erection." Decl. of Elizabeth Ann Hardin ¶ 3, *Fleming,* No. 4:25-cv-00157-D (N.D. Tex. Mar. 30, 2026), ECF No. 153 at APP.1–2 ("Hardin Decl."). Because male inmates were present in the bathroom and shower area, she changed her daily routine: she stopped coming out of the shower in a towel, got fully dressed inside the shower, stopped changing shirts openly in the bathroom, and avoided bathrooms with broken or non-locking doors. *Id.* ¶ 4. She also describes another male inmate, Peter Langan, as giving her "weird looks" in shared elevator spaces, making her feel unsafe and uncomfortable. *Id.* ¶ 6.

Those declarations also show that the harm done to women by making them live, sleep, change, and shower with biological males would be real even if the males *didn't* threaten them with violence and unwanted sexual advances.

Finally, the declarations establish significant retaliation against women who oppose the prison's policy of housing male inmates with women. BOP moved Hardin to Minnesota, far from her family in Texas, which Hardin suspects may have been in retaliation for the *Fleming* lawsuit. Hardin Decl. ¶¶ 7–8. Kirk faced harassment and retaliation tied to her participation in the *Fleming*

case: she lost the job she was working in prison and was excluded from a training program. Kirk Decl. ¶¶ 5–8, 10, 12. Meabon suffered flashbacks from Boone's restroom intrusion because she is a rape survivor and fears retaliation if she complains. Meabon Decl. ¶¶ 3–8. Morais suffered humiliation, fear, and a mental breakdown after continued exposure to Boone and retaliatory treatment by staff. Morais Decl. ¶¶ 4, 8–10, 13.

The declaration of Rhonda Fleming also speaks to the humiliation and indignity caused by placing men in women's prisons. Rhonda Fleming's declaration confirms that the harm to women is not abstract. FMC Carswell provides "very little privacy"; women must "sleep, change clothes, and bathe in full view of one another," and the showers and restrooms are communal. Decl. of Rhonda Fleming ¶ 3, *Fleming*, No. 4:25-cv-00157-D (N.D. Tex. Nov. 3, 2025), ECF No. 59 at APP.100–105 ("Fleming Decl."). Yet biological males are housed in the same units, "use the same showers and restrooms," and "move freely about the compound." *Id.* ¶ 4. Ms. Fleming explains that many of these men "retain male genitalia" and that their presence has created "constant fear, anxiety, and humiliation" for women. *Id.* ¶ 5. She has personally witnessed male inmates "undressing and showering alongside women," entering restrooms while women were using them, and staring at women while they were naked or changing clothes. *Id.* ¶ 6. Those incidents, she states, are "deeply distressing" and violate her "most basic sense of modesty and dignity." *Id.*

This record establishes the point that was missing when the Court first considered the balance of equities: The harms to incarcerated women are direct, specific, continuing, and constitutional in dimension.

## PROCEDURAL BACKGROUND

On November 19, 2025, Plaintiffs Rhonda Fleming and Miriam Crystal Herrera obtained a temporary restraining order in the *Fleming* litigation. *See* Temp. Restraining Order, *Fleming,* No. 4:25-cv-00157-D (N.D. Tex. Nov. 19, 2025), ECF No. 83. Judge Fitzwater restrained the

government "from housing any male inmate within the general female population in any housing unit where either plaintiff is currently or will be housed during the pendency of this TRO." *Id.* at 1. That relief was later entered as a permanent injunction and final judgment. *See* Stipulated Order of Permanent Inj. & Final Judgment, *id.* (N.D. Tex. Feb. 2, 2026), ECF No. 137.

The government responded to these court orders by moving Ms. Fleming to another prison and moving Ms. Herrera to a housing unit at Carswell without males. For the hundreds of other female inmates at Carswell, they were left to continue living in housing units with males and had to continue using common shower and restrooms with males.

However, as the Government has advised this Court, on June 2, 2026, Judge Fitzwater issued another preliminary injunction that requires all male inmates at FMC Carswell to be housed separately from all women inmates. *See* Notice of Prelim. Inj. Issued in *Fleming v. Rule* (N.D. Tex.) (D.D.C. June 3, 2026), ECF No. 133.

## ARGUMENT

I.     **Plaintiffs Cannot Satisfy the Balance of Equities or Public Interest If Their Requested Relief Forces Women to Share Intimate and Daily Living Spaces with Biological Males.**

The final two preliminary-injunction factors generally merge when the federal government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Yet it is worth considering the difference between "the balance of the equities" and "the public interest." The former focuses on the parties to the case: "[A] court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987). The latter asks the court to look beyond the parties: "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

8

Indeed, the third and fourth factors can counsel against issuance of an injunction. *See, e.g.*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008) ("A proper consideration of these factors alone requires denial of the requested injunctive relief.").

Plaintiffs cannot carry their burden to satisfy these elements if they request an order that requires BOP to keep biological males in women's general population, women's housing units, women's restrooms, women's showers, women's changing areas, or shared spaces where incarcerated women must live and move.

Plaintiffs at times frame the case as a zero-sum game: Plaintiffs are either kept in women's facilities, or they are transferred to male general population. That is a false choice. There are alternatives that do not inflict harms on women, including segregated units, hospital units, or even nonintegrated placement at camps or other arrangements. The injunction issued in the *Fleming* litigation confirms that this is feasible. *See* ECF 133-1 (Prelim. Inj., *Fleming,* No. 4:25-cv-00157-D (N.D. Tex. June 2, 2026).

Plaintiffs' evidence may bear on the effect of immediate transfer to male facilities. But it does not establish using women's showers leaves women unharmed.  And separate placement is not a novel or punitive innovation. The *New Yorker* has reported that the working group studying transgender-identifying prisoners during the Obama Administration asked incarcerated transgender-identifying people what they needed, and they said they wanted a "trans unit." Masha Gessen, *Chase Strangio's Victories for Transgender Rights*, The New Yorker (Oct. 12, 2020), https://tinyurl.com/phzsh6ws. Yet lawyers overrode the preferences of those trans-identifying inmates because the attorneys viewed such units as "stigmatizing." *Id.*

The public interest is not served by an injunction that shifts constitutional injury from Plaintiffs to incarcerated women. And the equities cannot favor an order that protects Plaintiffs

9

while exposing Ms. Kirk, Ms. Meabon, Ms. Morais, Ms. Williams, and other women at Carswell (and other federal prisons) to sexualized surveillance, threats, humiliation, and retaliation.

**II.    Relief Requiring Biological Males in Women's Spaces Would Violate Women's Constitutional Rights.**

**A.    Plaintiffs' requested relief will harm Movants' constitutionally protected bodily privacy.**

The Fifth and Eighth Amendments provide constitutional protection for prisoners' bodily privacy, especially against forced exposure of unclothed bodies and intimate bodily functions to members of the opposite sex. *See Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 929 (D.C. Cir. 1996) (Eighth Amendment protects against "invasions of the [female] inmates' privacy"); *Lee v. Downs*, 641 F.2d 1117, 1119–20 (4th Cir. 1981) ("Most people, however, have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating.").

The record from *Fleming* shows direct bodily-privacy violations at FMC Carswell caused by the presence of biological males. Ms. Hardin changed how she showered and dressed because male inmates were present in women's bathroom and shower areas. Hardin Decl. ¶ 4. Ms. Morais saw male inmates positioned where they could see women in showers. Morais Decl. ¶ 3. Ms. Williams states that male inmates shared the same showers, restrooms, and living areas with women, that there was "no meaningful separation," and that she personally caught Boone watching her. Williams Decl. ¶ 3. An injunction requiring that arrangement to continue would compel the very forced cross-sex exposure the Constitution protects against.

**B.    Plaintiffs' requested relief will subject Movants to cruel and unusual punishment.**

The Eighth Amendment requires prison officials to take reasonable measures to protect inmates from substantial risks of serious harm, including violence and sexual abuse by other

10

prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832–34, 837 (1994). As to the Eighth Amendment's objective standards, the danger of housing women with male inmates—including rapists, sex offenders, and murderers who have been housed at Carswell[4]—is obvious. Forcing women to live, shower, change, use restrooms, and move through daily prison life with biological males creates an objectively serious risk of sexual harassment, voyeurism, intimidation, and assault. If that was not evident on its face, the specific declarations submitted by Movants makes it undeniable.

The Eighth Amendment's subjective component is also satisfied. BOP has received repeated reports, grievances, and complaints about the presence of males at FMC Carswell. Ms. Meabon reported Boone's restroom misconduct. Meabon Decl. ¶¶ 4, 7, 10. Ms. Morais reported the same incident, asked that camera footage be preserved, and emailed the warden and psychology staff. Morais Decl. ¶ 5. Ms. Williams reported Boone's aggressive conduct and Sternquest's threats. Williams Decl. ¶¶ 4–5. Ms. Kirk reported harassment tied to this litigation, but staff brushed her off and focused instead on her job. Kirk Decl. ¶¶ 6–8. BOP's response has been reshuffling, inaction, or retaliation.

The placement of biological males in women's prisons clearly constitutes cruel and unusual punishment to the women who are harmed. The Eighth Amendment does not permit officials to "superadd" terror, pain, or disgrace to a lawful sentence. *Bucklew v. Precythe*, 587 U.S. 119, 133 (2019) (cleaned up). The presence of males in women's prisons is humiliating and adds terror and disgrace to women's incarceration. It is also unusual, having no place in our constitutional tradition. *See Pitts v. Thornburgh*, 866 F.2d 1450, 1458 (D.C. Cir. 1989) (noting a "pervasive characteristic of American prisons, namely, the separation of inmates on the basis of gender"). The fact that a small number of prisons have recently deviated from that tradition does not render the

---

[4] *See Fleming* Compl. ¶ 75.

practice "usual." *See Kennedy v. Louisiana*, 554 U.S. 407, 432 (2008), *modified on denial of reh'g*, 554 U.S. 945 (2008) (holding that capital punishment for child rape constituted cruel and unusual punishment despite acknowledgement that "in the last 13 years there has been change toward making child rape a capital offense").

### III.    Plaintiffs Mischaracterize *Fleming* and Cannot Erase the Women's Testimony.

According to the Government defendants, "Four of the biologically male inmates housed at FMC Carswell that are subject to the preliminary injunction are Plaintiffs in *Doe v. Blanche* (Carla Jones, Zoe Doe, Emily Doe, and Mary Doe)." ECF No. 133 at 1. Plaintiffs' counsel have thus been aware of the *Fleming* litigation for some time, but they have failed to bring it to the Court's attention, despite the obvious relevance.

Plaintiffs have thus known that there is evidence in the public record showing complaints about harm caused by biologically male inmates being housed with women. But they nevertheless ask this Court to repeat its earlier conclusion that no one had "so much as alleged" a threat to female inmates. *See* Mem. in Supp. of Pls.' Emergency TRO at 63–64, ECF No. 117-1 (quoting *Doe v. McHenry*, 763 F. Supp. 3d at 89–90).

Now forced to confront *Fleming*, Plaintiffs argue that it should be disregarded because the *Fleming* court allegedly issued relief without written Prison Litigation Reform Act ("PLRA") findings and because the Government supposedly did not oppose injunctive relief on the merits. Pls.' Reply in Supp. of Prelim. Inj. at 20, (D.D.C. June 3, 2026), ECF No. 135. That argument fails several times over.

First, Movants do not ask this Court to defer blindly to *Fleming*. They ask this Court to consider the evidence presented there: declarations from incarcerated women describing what actually happens when biological males are housed in women's prisons.

12

Second, whatever is true about the *Government's* invocation of prison deference, Movants are not the Government (nor have they asked for any prison deference in the *Fleming* case). And the Government has been vigorously litigating against the Movants and other women inmates in the *Fleming* litigation. It opposed intervention, moved to dismiss the women's complaint, opposed the women's motion for preliminary injunction, and noted its objection when injunctive relief issued. *See* Resp. to Mot. Intervene, *Fleming,* No. 4:25-cv-00157-D (N.D. Tex. Dec. 1, 2025), ECF No. 90; Defs.' Mot. Dismiss, *id.* (N.D. Tex. Mar. 9, 2026), ECF No. 147; Defs.' Resp. in Opp'n to Mot. Prelim. Inj.*, id.* (N.D. Tex. Apr. 20, 2026), ECF No. 166; Jt. Notice, *id.* (N.D. Tex. June 1, 2026)*,* ECF No. 198.

The Government's failure to protect incarcerated women is the reason Movants had to appear in this litigation.

Third, while the Plaintiffs fault "*[t]he Government's* generalized concerns regarding the safety, privacy, and dignity," ECF 135 at 20 (emphasis added), they do not and cannot rebut the *specific* concerns Movants' declarations identify: specific inmates, specific incidents, specific locations, specific reports to staff, and specific consequences.

## IV.    Plaintiffs' Requested Housing Relief is Not Narrowly Tailored Under the PLRA.

The PLRA independently bars Plaintiffs' requested housing relief because it would require BOP to keep biological males in women's general population or shared women's spaces. Preliminary injunctive relief concerning prison conditions must be "narrowly drawn," "extend no further than necessary to correct the harm," and be "the least intrusive means necessary to correct that harm," and the Court must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." 18 U.S.C. § 3626(a)(2). An order requiring BOP to keep Plaintiffs in women's housing units, showers, restrooms, changing

13

areas, or common spaces would extend far beyond Plaintiffs' asserted injury (sexual assault in men's prison) by requiring women to bear the burden of Plaintiffs' preferred placement.

## CONCLUSION

Movants respectfully request that the Court deny Plaintiffs' motion to the extent it seeks housing relief that requires BOP to place or keep Plaintiffs in women's prisons, women's general-population housing, women's restrooms, women's showers, women's changing areas, women's dormitory spaces, or shared spaces where incarcerated women are present.

June 5, 2026                                    Respectfully submitted,

                                               */s/ Brian J. Field*
                                               BRIAN J. FIELD
                                               D.C. Bar No. 985577
                                               JOHN GREIL*
                                               Texas Bar No. 24110856
                                               SCHAERR | JAFFE LLP
                                               1717 K Street NW, Suite 900
                                               Washington, DC 20006
                                               Tel.: (202) 787-1060
                                               bfield@schaerr-jaffe.com
                                               jgreil@schaerr-jaffe.com

                                               **Pro hac vice* forthcoming

                                               *Counsel for Proposed Defendant-Intervenors*
                                               *Brenda Leigh Kirk, Jasmine Meabon,*
                                               *Jessica Clemencio Morais, and Keisha Williams*

14