**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, et al., | |
| Plaintiffs, | |
| v. | No. 1:25-cv-00286-RCL |
| TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al., | |
| Defendants | |
| and | |
| Brenda Leigh Kirk, Jasmine Meabon, Jessica Clemencio Morais, and Keisha Williams, | |
| Proposed Intervenor-Defendants. | |
| JANE JONES, et al., | |
| Plaintiffs, | |
| v. | No. 1:25-cv-00401-RCL |
| TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al., | |
| Defendants | |
| and | |
| Brenda Leigh Kirk, Jasmine Meabon, Jessica Clemencio Morais, and Keisha Williams, | |
| Proposed Intervenor-Defendants. | |
| MARIA MOE, et al., | |
| Plaintiffs, | |
| v. | No. 1:25-cv-00653-RCL |
| DONALD TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants | |
| and | |
| Brenda Leigh Kirk, Jasmine Meabon, Jessica Clemencio Morais, and Keisha Williams, | |
| Proposed Intervenor-Defendants. | |

**MEMORANDUM OF PROPOSED INTERVENOR-DEFENDANTS
BRENDA LEIGH KIRK, JASMINE MEABON,
JESSICA CLEMENCIO MORAIS, AND KEISHA WILLIAMS
IN SUPPORT OF MOTION TO INTERVENE AND FOR UNSEALING**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 2

PROCEDURAL BACKGROUND........................................................................................... 6

ARGUMENT........................................................................................................................... 7

    I.      Proposed Intervenor-Defendants are Entitled to Intervene as of Right. ...................... 7

          A.      The motion is timely. ....................................................................................... 7

          B.      Movants have Article III standing and legally protectable interests................. 8

          C.      Disposition of this action may impair Movants' ability to protect those interests. ........................................................................................................... 9

          D.      The Government does not adequately represent Movants. ............................ 10

    II.     In the Alternative, Movants Should be Granted Permissive Intervention. ................. 11

CONCLUSION...................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Dimond v. District of Columbia*,
   792 F.2d 179 (D.C. Cir. 1986)................................................................................. 10

*Doe v. Blanche*,
   172 F.4th 901 (D.C. Cir. 2026).......................................................................... 1, 11

*Doe v. McHenry*,
   763 F. Supp. 3d 81 (D.D.C. 2025)....................................................................... 1, 11

*Env't Def. Fund, Inc. v. Higginson*,
   631 F.2d 738 (D.C. Cir. 1979)................................................................................ 10

*Farmer v. Brennan*,
   511 U.S. 825 (1994)................................................................................................... 8

*Fortner v. Thomas*,
   983 F.2d 1024 (11th Cir. 1993) .................................................................................. 8

*Kent v. Johnson*,
   821 F.2d 1220 (6th Cir. 1987) .................................................................................... 8

*Lee v. Downs*,
   641 F.2d 1117 (4th Cir. 1981) .................................................................................... 8

*Mandan, Hidatsa & Arikara Nat. v. U.S. Dep't of Interior*,
   66 F.4th 282 (D.C. Cir. 2023)..................................................................................... 9

*SEC v. Prudential Sec. Inc.*,
   136 F.3d 153 (D.C. Cir. 1998)..................................................................................... 7

**Rule**

Fed. R. Civ. P. 24................................................................................................... 7, 9, 11

**INTRODUCTION**

Brenda Leigh Kirk, Jasmine Meabon, Jessica Clemencio Morais, and Keisha Williams (collectively, "Movants") are incarcerated women who have been forced to live, shower, change, and use bathrooms with biological males in a federal prison. Specifically, they are incarcerated at ███████████, where at least ███ Plaintiffs in this action are housed. *See* Notice of Prelim. Inj. Issued in *Fleming v. Rule* (N.D. Tex.) at 1 (D.D.C. June 3, 2026), ECF No. 133[2] ("███ of the biologically male inmates housed at ███████████ that are subject to the preliminary injunction are Plaintiffs in *Doe v. Blanche* (████████████████████████████████).").

Women have been harmed by the presence of biological males at ███████████, and the Government defendants in this case have failed to document and present those harms to this Court. For instance, this Court's previous preliminary injunction rested on the fact that "the defendants have not so much as alleged that the plaintiffs in this particular suit present any threat to the female inmates housed with them, or that this threat cannot be managed locally by prison staff." *Doe v. McHenry*, 763 F. Supp. 3d 81, 89 (D.D.C. 2025), *vacated and remanded sub nom. Doe v. Blanche*, 172 F.4th 901 (D.C. Cir. 2026); *accord Doe v. Blanche*, 172 F.4th 901, 910 (D.C. Cir. 2026) (quoting similar). Movants have provided specific evidence of this threat in separate litigation in Texas. *See Fleming v. Warden T. Rule*, No. 4:25-cv-00157-D (N.D. Tex.).

In that case, and as discussed more thoroughly below, Movants have demonstrated concrete, immediate, and intimate harms: a male inmate in a women's bathroom with a visible erection; a male inmate looking over a stall and asking a woman whether she needed help wiping her vagina; male inmates positioned where they can see women shower; male inmates using the same bathrooms, elevators, food lines, recreation areas, and mail rooms as women; sexual

---

[2] Unless stated otherwise, all ECF cites are to documents from this action.

propositions; staring; threatening conduct; and retaliation against women who complain. Those facts bear directly on the public interest, the balance of equities, PLRA narrowness, and the constitutionality of the relief Plaintiffs seek here.

Intervention is necessary because the Government does not adequately represent Movants' interests. In this case, the Government has defended institutional discretion and Executive Branch policy. But it has not developed the women's constitutional theory, has not submitted declarations from any incarcerated women, and has not squarely argued that forcing women to share showers, toilets, changing areas, housing units, and common areas with biological males violates women's bodily privacy and Eighth Amendment rights.

Movants thus respectfully seek to intervene to protect their rights.

## BACKGROUND

Movants are biological women incarcerated at ████████. Movants are also Intervenor-Plaintiffs in related litigation pending in the United States District Court for the Northern District of Texas. *See Fleming v. Warden T. Rule*, No. 4:25-cv-00157-D (N.D. Tex.). In that action, Movants object to being housed with male inmates, including several convicted of rape, sex offenses, and other violent offenses. The Movants assert that the federal government's policy and practice of housing biological males in women's prisons violates female inmates' constitutional rights, including their Fifth Amendment right to bodily privacy and their Eighth Amendment right to be free from cruel and unusual punishment. *See* 1st Am. Prop. Complaint-in-Intervention, *Fleming*, No. 4:25-cv-00157-D (N.D. Tex. Jan. 8, 2026), ECF No. 125 ("*Fleming* Compl.").

The factual record in the *Fleming* litigation documents numerous harms caused by biological males at ████████—both the general indignity of women being forced to shower

or change where males can view them, as well as specific incidents of threatening and sexual behavior by males.

For instance, Movant Kirk details why "the problem is not limited to where the male inmates sleep." Decl. of Brenda Leigh Kirk ¶ 3, *Fleming,* No. 4:25-cv-00157-D (N.D. Tex. Mar. 30, 2026), ECF No. 153 at APP.3–6 ("Kirk Decl.") (Ex. A). Women in ████████████ ███████████████████████████) must use the same elevator and other common spaces, and she sees male inmates "in the elevator and in food service every day, often several times a day." *Id.* ████████████████████████████████

████████████████████████████████████████

████████████ ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████

    ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

3 ████████████████████████████████████████
████████████████████████████████████████

4 ████████████████████████████████████████
████████████████████████████████████████
████████

3

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██

    ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████

Movant Morais was also accosted by other male inmates. When she was in a housing unit with other males, they would "wink at women, blow kisses, come too close to women in the phone and computer lines, and be in places where they could see women in the showers." *Id.* ¶ 3.

Movant Williams explains the indignity of being housed with male inmates. She states that male inmates were housed with women and "shared the same showers, restrooms, and living areas with us." Decl. of Keisha Williams ¶ 3, *Fleming,* No. 4:25-cv-00157-D (N.D. Tex. Mar. 30, 2026), ECF No. 153 at APP.13–16 (Ex. A). ████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

4



Even after Ms. Williams was subsequently moved to a camp, that did not solve the problem because male inmates are still present in shared spaces, including the mail room. *Id.* ¶ 6.

Elizabeth Ann Hardin, another *Fleming* declarant formerly at ████████ (but not a proposed intervenor here), confirms the same pattern. ██████████████████████████████ ██████████████████████████████████████████████████████████████ Decl. of Elizabeth Ann Hardin███, *Fleming,* No. 4:25-cv-00157-D (N.D. Tex. Mar. 30, 2026), ECF No. 153 at APP.1–2 ("Hardin Decl.") (Ex. A). Because male inmates were present in the bathroom and shower area, she changed her daily routine: she stopped coming out of the shower in a towel, got fully dressed inside the shower, stopped changing shirts openly in the bathroom, and avoided bathrooms with broken or non-locking doors. *Id.* ¶ 4. ████████████████████████████

Those declarations also show that the harm done to women by making them live, sleep, change, and shower with biological males would be real even if the males *didn't* threaten women with violence and unwanted sexual contact.

Finally, the declarations establish significant retaliation against women who oppose the prison's male-inmate policy. BOP moved Hardin to Minnesota, far from her family in Texas, as retaliation for the *Fleming* lawsuit. Hardin Decl. ¶¶ 3–8. Kirk faced harassment and retaliation tied to her participation in the *Fleming* case: she lost the job she was working in prison, and was excluded from a training program. Kirk Decl. ¶¶ 3–8, 10, 12. Meabon ███████████

5

███████████████████████████████████████ and fears retaliation if she complains. Meabon Decl. ¶¶ ██ 8. Morais suffered ████████████████████████████ ████████████ and retaliatory treatment by staff. Morais Decl. ¶¶ ████, 13.

The declaration of Ms. Rhonda Fleming speaks to the humiliation and indignity caused by placing men in women's prisons. Rhonda Fleming's declaration confirms that the harm to women is not abstract. ████████ provides "very little privacy"; women must "sleep, change clothes, and bathe in full view of one another," and the showers and restrooms are communal. Decl. of Rhonda Fleming ¶ 3, *Fleming*, No. 4:25-cv-00157-D (N.D. Tex. Nov. 3, 2025), ECF No. 59 at APP.100–105 ("Fleming Decl.") (Ex. A). Yet biological males are housed in the same units, "use the same showers and restrooms," and "move freely about the compound." *Id.* ¶ 4. Ms. Fleming explains that many of these men "retain male genitalia" and that their presence has created "constant fear, anxiety, and humiliation" for women. *Id.* ¶ 5. She has personally witnessed male inmates "undressing and showering alongside women," entering restrooms while women were using them, and staring at women while they were naked or changing clothes. *Id.* ¶ 6. Those incidents, she states, are "deeply distressing" and violate her "most basic sense of modesty and dignity." *Id.*

## PROCEDURAL BACKGROUND

On November 19, 2025, Plaintiffs Rhonda Fleming and Miriam Crystal Herrera obtained a temporary restraining order in the *Fleming* litigation. *See* Temp. Restraining Order, *Fleming,* No. 4:25-cv-00157-D (N.D. Tex. Nov. 19, 2025), ECF No. 83. Judge Fitzwater restrained the government "from housing any male inmate within the general female population in any housing unit where either plaintiff is currently or will be housed during the pendency of this TRO." *Id.* at 1. That relief was later entered as a permanent injunction and final judgment. *See* Stipulated Order of Permanent Inj. & Final Judgment, *id.* (N.D. Tex. Feb. 2, 2026), ECF No. 137. The Government

6

responded to these court orders by moving Ms. Fleming to another prison and moving Ms. Herrera to a housing unit at ███████ without males. *See* Kirk Decl. ¶ 3. Thus, hundreds of women at ████████ continued to live in housing units with males and had to continue using common shower and restrooms with males.

As the government has advised this Court, on June 2, 2026, Judge Fitzwater issued a preliminary injunction that requires all male inmates at ████████ to be housed separately from all women inmates. *See* ECF No. 133.

## ARGUMENT

### I.    Proposed Intervenor-Defendants are Entitled to Intervene as of Right.

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, a person seeking to intervene as of right must show: (1) that their motion is timely; (2) that they have a protectable legal interest in the action's subject; (3) that the action may as a practical matter impair their ability to protect that interest; and (4) that the current parties will not adequately represent that interest. *Accord SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998). Movants satisfy each requirement.

### A.    The motion is timely.

The case is on remand from the D.C. Circuit for plaintiff-specific findings. Plaintiffs filed an emergency TRO less than one month ago, and this court has implemented an expedited briefing schedule with Plaintiffs' reply due June 3, 2026, in advance of the D.C. Circuit's mandate being issued to this Court on June 8, 2026. Movants received judicial relief earlier this week from the Northern District of Texas. *See* Prelim. Inj., *Fleming*, No. 4:25-cv-00157-D (N.D. Tex. June 2, 2026), ECF No. 199. That injunction was noticed to this Court on June 3, and it was part of Plaintiffs' argument in their reply brief filed on June 3. *See* Pls.' Reply in Supp. of Prelim. Inj. at 20, ECF No. 135. Movants seek intervention now to address the precise record defect that has

shaped this court's equitable analysis: firsthand evidence from women harmed by the presence of biological males in federal prisons.

Intervention will not delay adjudication. Movants do not seek to restart the case, assert cross- or counter-claims, or request immediate discovery. Their materials rely on pleadings and declarations already in the court record in the *Fleming* litigation. By contrast, denying intervention would prejudice the only parties whose bodily privacy and safety are directly burdened by the requested injunction.

### B.    Movants have Article III standing and legally protectable interests.

Movants have standing because Plaintiffs seek an injunction that will continue exposing them to concrete injuries: unwanted exposure to male bodies in women's intimate spaces; the risk that male inmates will view their naked bodies while showering, changing, or using the toilet; sexual harassment; threatening conduct; and the psychological harm of being forced to alter daily routines to avoid male observation and threats. Those injuries are specifically attested to in the *Fleming* litigation, and those injuries would be exacerbated by Plaintiffs' requested injunction.

Prisoners retain constitutional protection against conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). They also retain bodily privacy interests, especially in forced exposure of unclothed bodies and intimate bodily functions. *See Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993) ("[P]risoners retain a constitutional right to bodily privacy."); *Lee v. Downs*, 641 F.2d 1117, 1120 (4th Cir. 1981) ("forceful removal of plaintiff's underclothing in the presence of male guards was an unwarranted invasion of her right of privacy"); *Kent v. Johnson*, 821 F.2d 1220, 1225–27 (6th Cir. 1987) (privacy in intimate functions and undress).

8

And housing males in women's prisons goes against the history and tradition of our nation, evidencing the Fifth Amendment right against such conditions, as well as the Cruel and Unusual nature of punishing women by subjecting them to male bodies in their confinement.

Indeed, the *Fleming* court has already recognized that Movants are likely to succeed on the merits of their Fifth and Eighth Amendment claims. *See* ECF No. 133. Plaintiffs' requested relief here would undermine that protection by requiring BOP to maintain biological males in women's facilities, including ▮▮▮▮▮▮, where Movants are incarcerated. Intervention is therefore necessary not only to protect their constitutional interests, but also to prevent this case from impairing relief already entered to protect those interests.

The same facts establish a protectable interest under Rule 24(a)(2). "[T]here is no requirement that the movant demonstrate the interest, if demonstrate means, as it often does, prove. All that is required is a claim." *Mandan, Hidatsa & Arikara Nat. v. U.S. Dep't of Interior*, 66 F.4th 282, 285 (D.C. Cir. 2023) (internal quotation marks omitted). Movants have claims to their constitutional rights, their bodily privacy, and their safety—legally protectible interests.

### C. Disposition of this action may impair Movants' ability to protect those interests.

Movants claim that they have a right to be free from male inmates in their women's prison. They have evidenced the harms that male presence causes through specific declarations.

Plaintiffs seek relief requiring BOP to keep biological males in women's facilities, including ▮▮▮▮▮▮. If granted, that relief will "as a practical matter impair or impede" Movants' safety, privacy, and constitutional rights. *See Mandan, Hidatsa & Arikara Nat.,* 66 F.4th at 286. Indeed, at every stage of the *Fleming* litigation, the BOP has argued that its hands are tied in administering ▮▮▮▮▮▮ due to this Court's prior injunction. *See, e.g.*, Jt. Notice at 2 n.2, *Fleming,* No. 4:25-cv-00157-D (N.D. Tex. June 1, 2026), ECF No. 198 ("For the avoidance of

9

doubt, the undersigned defense counsel notes that he has not been authorized to substantively agree or consent to a preliminary injunction of the type requested by Intervenor-Plaintiffs (*in large part due to concerns about the requirements of court orders entered elsewhere*, as has been discussed with the Court in prior filings and at the recent hearing." (emphasis added)).

The practical consequence of this case is that an injunction may require the continued placement of male inmates in female spaces where Movants must sleep, shower, change, use the toilet, and move through shared areas.

### D.    The Government does not adequately represent Movants.

"An individual seeking intervention ordinarily is required to make only a minimal showing that representation of his interest may be inadequate." *Env't Def. Fund, Inc. v. Higginson*, 631 F.2d 738, 740 (D.C. Cir. 1979) (per curiam). That showing is manifest here.

The Government's interests are not the interests of incarcerated women. The Government represents the United States, BOP's institutional discretion, the Executive Branch's policy judgments, and the overall administration of federal prisons. Movants seek to vindicate their own bodily privacy, personal safety, and constitutional rights. The D.C. Circuit has long recognized that a governmental defendant charged with representing broad public interests may not adequately represent a private party's narrower, personal interests. *See Dimond v. District of Columbia*, 792 F.2d 179, 192–93 (D.C. Cir. 1986) ("The District would be shirking its duty were it to advance this narrower interest at the expense of its representation of the general public interest.").

Here, the Bureau of Prisons has opposed Movants at every turn. BOP opposed Movants' initial motion to intervene in the *Fleming* litigation. *See* Resp. to Mot. Intervene, *Fleming,* No. 4:25-cv-00157-D (N.D. Tex. Dec. 1, 2025), ECF No. 90. BOP moved to dismiss Movants' complaint. *See* Defs.' Mot. Dismiss, *id.* (N.D. Tex. Mar. 9, 2026), ECF No. 147. BOP opposed Movants' motion for preliminary injunction. *See* Defs.' Resp. in Opp'n to Mot. Prelim. Inj*., id.*

10

(N.D. Tex. Apr. 20, 2026), ECF No. 166. And BOP even noted its objection to the court's preliminary injunction when that injunction was issued. *See* Jt. Notice at 2 n.2, *id.* (N.D. Tex. June 1, 2026)*,* ECF No. 198.

Most importantly, the government has already failed to represent the interests of affected female inmates in this litigation. This Court's previous preliminary injunction rested on the fact that "the defendants have not so much as alleged that the plaintiffs in this particular suit present any threat to the female inmates housed with them, or that this threat cannot be managed locally by prison staff." *Doe v. McHenry*, 763 F. Supp. 3d at 89; *accord Doe v. Blanche*, 172 F.4th at 910 (quoting similar).

Movants must speak for themselves. Plaintiffs, unsurprisingly, have no incentive to present the harm to biological females. The Government, for institutional reasons, has not done so fully. Without intervention, no party will.

## II.    In the Alternative, Movants Should be Granted Permissive Intervention.

Rule 24(b)(1)(B) permits intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Movants' defenses share common questions with the main action: whether Plaintiffs may obtain injunctive relief requiring BOP to keep biological males in women's facilities; whether such relief satisfies the PLRA; whether the balance of equities and public interest favor Plaintiffs; and whether the requested relief harms women's safety and privacy.

Permissive intervention will not delay or prejudice the original parties. Fed. R. Civ. P. 24(b)(3). Movants can proceed on the existing schedule, rely on their proposed opposition, and rely at this stage on declarations already filed in the *Fleming* litigation. Their participation will aid the Court by supplying firsthand evidence from the women whose interests are affected.

11

## CONCLUSION

Accordingly, Movants respectfully request that the Court grant Movants Brenda Leigh Kirk, Jasmine Meabon, Jessica Clemencio Morais, and Keisha Williams' intervention as of right, or in the alternative grant permissive intervention.

June 5, 2026

Respectfully submitted,

*/s/ Brian J. Field*
BRIAN J. FIELD
D.C. Bar No. 985577
JOHN GREIL*
Texas Bar No. 24110856
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Tel.: (202) 787-1060
bfield@schaerr-jaffe.com
jgreil@schaerr-jaffe.com

**Pro hac vice* forthcoming

*Counsel for Proposed Defendant-
Intervenors Brenda Leigh Kirk,
Jasmine Meabon, Jessica Clemencio
Morais, and Keisha Williams*

12