**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00286-RCL |
| JANE JONES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00401-RCL |
| MARIA MOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | Case No. 1:25-cv-00653-RCL |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A NEW PRELIMINARY INJUNCTION**

Jennifer L. Levi
Sarah Austin (admitted *pro hac vice*)
**GLBTQ Legal Advocates & Defenders**
18 Tremont, Suite 950
Boston, MA 02108

Christopher F. Stoll (admitted *pro hac vice*)
Amy Whelan (admitted *pro hac vice*)
**NATIONAL CENTER FOR LGBTQ RIGHTS**
1401 21st Street #11548
Sacramento, CA 95811

Jennifer Fiorica Delgado (Bar. No. NY296)
Alexander Shalom (Bar No. 66195)
Natalie J. Kraner (Bar No. 66202)
Wayne Fang (admitted *pro hac vice*)
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020

Eve L. Hill (Bar No. 424896)
ehill@browngold.com
**BROWN GOLDSTEIN & LEVY, LLP**
120 E. Baltimore St., Suite 2500
Baltimore, MD 21202
Tel: (410) 962-1030
Fax: (410) 385-0869

*Pro Bono Counsel for Plaintiffs*

## INTRODUCTION

This Court issued a preliminary injunction on June 7, 2026, that will soon expire on September 7, 2026. (ECF No. 147.) Plaintiffs therefore respectfully submit this Memorandum of Law in support of their Motion for a New Preliminary Injunction. In support of this motion, Plaintiffs incorporate by reference and rely upon the arguments and evidence set forth in the May 13, 2026, Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 117), including the accompanying Memorandum of Law (ECF No. 117-1), plaintiff declarations (ECF Nos. 117-3 to -17), expert declarations (ECF Nos. 117-18 to -28), as well as Plaintiffs' reply brief (ECF No. 198) and the declarations submitted in furtherance thereof (ECF Nos. 198-1 to -2). As demonstrated below and through the incorporated materials, this Court should enter a new preliminary injunction for the period from September 7, 2026, to December 6, 2026, enjoining Defendants from enforcing Section 4(a) of Executive Order 14168 ("EO 14168" or the "Executive Order") against Plaintiffs.[1]

As the Court recognized in its June 7 Memorandum Opinion and Order granting Plaintiffs a preliminary injunction (ECF Nos. 147–148, 161), Plaintiffs' submissions provide the individualized proof the Court of Appeals required to support judicial relief essential to protecting their lives and safety. Their declarations and supporting evidence establish, in granular detail, the distinct and compounding characteristics that make each Plaintiff acutely vulnerable to serious and known harms in a men's facility—including but not limited to pronounced and irreversible physical feminization surgeries; documented histories of sexual victimization in men's facilities

---

[1] The record before the Court on Plaintiffs' previous motion for a preliminary injunction, filed on May 13, 2026, also included evidence to support an order enjoining Defendants from enforcing Section 4(c) of EO 14168. Plaintiffs do not seek that relief here due to this Court's May 21, 2026, Order staying the claims relating to Plaintiffs' medical care "pending final adjudication of the class claims in *Kingdom v. Trump*, No. 25-cv-691." (ECF No. 127.)

for those previously housed there; and the unique risks they face because they have been housed in women's prisons and would be known by the men in men's prisons as being among this unique group. These are not generalized concerns; they are plaintiff-specific risks grounded in the record. Further, the Federal Bureau of Prisons ("BOP") has repeatedly recognized specific characteristics of each individual Plaintiff that would put them at serious risk of harm in men's facilities, including through regular assessments of their vulnerability to sexual abuse as required by regulations under the Prison Rape Elimination Act ("PREA"), *see* 28 C.F.R. §§ 115.41(d)(7), 115.42(a)–(d).

Absent a new injunction, Plaintiffs remain at substantial risk of serious harm—including sexual assault, physical violence, exacerbated gender dysphoria, mental health decompensation, and self-harm or suicide—because the Executive Order requires BOP to transfer them to men's facilities. Injunctive relief is therefore necessary to preserve the *status quo* and maintain Plaintiffs' placements in women's facilities.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs are fourteen transgender women who are currently housed in women's federal prisons, in women's halfway houses, or who are on home confinement but remain in the legal custody of the BOP.[2] Plaintiffs have resided in women's facilities for years pursuant to individualized determinations made by the BOP. Each has been clinically diagnosed with gender dysphoria and has received a sustained course of medical and sociopsychological treatment for that condition, including continuous hormone therapy and living as a woman amongst other

[2] Plaintiffs include Emily Doe, Lois Doe, Mary Doe, Olivia Doe, Rachel Doe, Sally Doe, Sara Doe, Wendy Doe, Zoe Doe, Amy Jones, Barbara Jones, Carla Jones, Jane Jones, and Maria Moe. Jane Jones and Wendy Doe are not currently housed in a BOP facility. However, as this Court recognized in its June 7 Order, the BOP retains discretion to revoke their home confinement and "[a]bsent an order from this Court, such revocation would automatically result in [their] placement in a men's facility pursuant to the Executive Order and the Bureau's implementing policies." (ECF No. 161 at 41.) Accordingly, all fourteen plaintiffs require relief from this Court.

incarcerated women. Several Plaintiffs have also undergone transition-related surgeries such as vaginoplasty, breast augmentation, and facial feminization. The factual record establishing each Plaintiff's medical and psychological history, psychiatric vulnerabilities, and other individualized risk factors is set forth in detail in Plaintiffs' prior submissions, which are incorporated by reference herein, and this Court's June 7 Memorandum Opinion. (ECF Nos. 117, 161.)

On January 20, 2025, the President issued Executive Order 14168, directing BOP to transfer transgender women in women's prisons to men's prisons without regard to individual health and safety risks, and further directing the BOP not to provide "any medical procedure, treatment, or drug" to transgender women for treatment of gender dysphoria. Exec. Order No. 14168, 90 Fed. Reg. 8615, at § 4(a), (c). The BOP began implementing the Executive Order at once. It removed several Plaintiffs from general population, placed them in segregated housing, told them they would be transferred to men's facilities, and told some that their hormone therapy would end. *See Doe v. Blanche*, 172 F.4th 901, 908 (D.C. Cir. 2026). The BOP willfully disregarded the severe harms that Plaintiffs would suffer if transferred to men's facilities and denied medically necessary healthcare.

Plaintiffs filed these consolidated actions (Case Nos. 1:25-cv-00401, 1:25-cv-00653, and 1:25-cv-00286) and sought injunctive relief. Plaintiffs challenged the actions taken by Defendants to implement Sections 4(a) and 4(c) of the Executive Order under the U.S. Constitution and the Administrative Procedure Act. Their complaints also detailed their removal from general population and placement in segregated housing because of the Executive Order, and *Doe* Plaintiffs directly challenged their segregation as unlawful agency action taken to implement the Executive Order. (*See* ECF No. 58-2 ¶¶ 77, 86, 90, 158.)

This Court granted preliminary relief, finding Plaintiffs likely to succeed on their Eighth Amendment claims as to both housing and medical care. *Doe v. McHenry*, 763 F. Supp. 3d 81, 84 (D.D.C. 2025); *Jones v. Bondi*, No. 1:25-cv-00401-RCL ("*Jones*"), 2025 WL 923117, at *1 (D.D.C. Feb. 24, 2025); *Moe v. Trump*, No. 1:25-cv-00653-RCL ("*Moe*"), ECF No. 62, at 1–2 (D.D.C. Mar. 10, 2025). On numerous occasions, the Court enjoined enforcement of Sections 4(a) and 4(c) and required Defendants to maintain the *status quo* by maintaining Plaintiffs' housing in women's facilities and continuing the gender dysphoria treatment Plaintiffs were receiving before January 20, 2025. (ECF Nos. 23, 44, 55, 68, 83, 89, 94, 101, 120, 125, 147, 160; *Jones*, ECF Nos. 28, 46, 69, 75, 81, 88; *Moe*, ECF Nos. 62, 84, 90, 96, 103.)

Defendants appealed only the housing placement decisions, and the D.C. Circuit vacated the preliminary injunctions and remanded for individualized findings. *Doe v. Blanche*, 172 F.4th 901 (D.C. Cir. 2026). On June 7, 2026, following remand, this Court made those individualized findings and entered a preliminary injunction barring implementation of Section 4(a) and requiring Defendants to maintain each Plaintiff's housing status in women's facilities for 90 days. (ECF Nos. 147–48, 160–161.)

The June 7, 2026, preliminary injunction expires on September 6, 2026. Plaintiffs seek a new preliminary injunction for the period from September 7, 2026, to December 6, 2026, to continue the protections afforded by the June 7 injunction while this litigation proceeds. As this Court found in its June 7 opinion, (ECF No. 161), Plaintiffs face grave and particularized risks of serious harm if they are forced to transfer to men's facilities.

## LEGAL STANDARD

An injunction issued in a lawsuit covered by the Prison Litigation Reform Act ("PLRA") automatically expires after ninety days unless the court "render[s] it permanent" by "ma[king]

specific findings that the restraint is narrowly drawn, extends no further than necessary to correct the violation of [the] federal right, and is the least intrusive means necessary to correct that violation." *Banks v. Booth*, 3 F.4th 445, 448 (D.C. Cir. 2021); *see also* 18 U.S.C. §§ 3626(a)(1)(A), 3626(a)(2). Alternatively, and as all parties agree, upon a showing by Plaintiffs that preliminary relief remains necessary, the Court can issue a new preliminary injunction. *See* Supplemental Brief for Appellants, *Doe v. Bondi*, Nos. 25-5099, 25-5101, 25-5208, at 6–13 (D.C. Cir. Sep. 24, 2025). "Nothing in the statute limits the number of times a court may enter preliminary relief." *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001); *see also Monroe v. Bowman*, 122 F.4th 688, 697 (7th Cir. 2024); *Smith v. Edwards*, 88 F.4th 1119, 1125 (5th Cir. 2023); *Alloway v. Hodge*, 72 F. App'x 812, 817 (10th Cir. 2003). The new injunction can be identical to the prior one, so long as the court makes the "needs-narrowness-intrusiveness" findings anew. *See Mayweathers*, 258 F.3d at 935–36.

This Court can thus preserve the *status quo ante* by issuing a new injunction and finding that the relief is "narrowly drawn, extend[s] no further than necessary to correct the harm the court finds requires preliminary relief, and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

To obtain a preliminary injunction, a movant "must establish that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). All four factors strongly support granting a new preliminary injunction here.

## ARGUMENT

This Court has already concluded that Plaintiffs have met their burden for preliminary injunctive relief when it issued a preliminary injunction on June 7. Because, absent this Court's injunction, Plaintiffs remain subject to BOP's implementation of the Executive Order and because Plaintiffs continue to face the same irreparable harms, this Court should issue a new preliminary injunction. As this Court has recognized, Plaintiffs have shown that they are likely to succeed on the merits of their claims, that they will face irreparable harm in the absence of continued injunctive relief, and that the public interest and balance of equities weigh in favor of granting preliminary injunctive relief.

### I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR EIGHTH AMENDMENT CLAIM.

The Eighth Amendment's prohibition on cruel and unusual punishment imposes limits on the conditions under which a prisoner is confined while incarcerated. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official violates the Eighth Amendment when that official acts with "deliberate indifference to a substantial risk of serious harm" to an incarcerated person. *Id.* at 836; *see also Doe*, 172 F.4th at 906, 910, 918. The standard contains both an objective component (whether the individual faces a sufficiently serious risk of harm) and a subjective component (whether officials knew of and disregarded that risk). *Farmer*, 511 U.S. at 834, 837. Deliberate indifference can be established based on risks "personal to [plaintiff]" as well as risks that are shared by "all prisoners in [her] situation." *Id.* at 843. This Court has recognized that "the Eighth Amendment requires that prison officials protect incarcerated people from violence and other serious harms." (ECF No. 160 at 5 (citations omitted).)

Plaintiffs' arguments and the evidence they marshaled demonstrating that they are likely to succeed on the merits of their Eighth Amendment claims are set forth in detail in Plaintiffs' prior

briefing and the record they submitted in support of the June 7 preliminary injunction and are incorporated by reference herein. (ECF Nos. 117-1 to -28, 183-1 to -7.) As this Court observed, the Executive Order's categorical requirement that Plaintiffs be transferred to men's facilities—despite preexisting individualized determinations from BOP that Plaintiffs should be housed in women's facilities—constitutes a failure to protect Plaintiffs from a substantial risk of serious harm and deliberate indifference to those risks if transferred to men's facilities. (*See, e.g.*, ECF No. 161 at 17 ("[T]he government has evidenced a subjective awareness of the objectively serious risks to Plaintiffs by presenting specific (though inadequate) plans to mitigate them."); *id.* at 18 ("Plaintiffs' original placements in women's facilities *were* motivated by safety and mental health concerns, and that conclusion supports finding that the government has an ongoing awareness of the risks.").)

This Court has already made the individualized, Plaintiff-specific findings determining that Plaintiffs are likely to succeed on the merits of their Eighth Amendment claim. (ECF No. 161 at 20–50.) In its June 7, 2026, Memorandum Opinion, this Court found that each Plaintiff faces particularized, "intolerable risks" of serious harm from forced transfer based on "the risk of increased physical violence against them and the risk of severely exacerbated gender dysphoria." (ECF No. 161 at 14; *see also id.* at 20–21.)

The Court's prior findings remain equally applicable today, as every Plaintiff has shown that she would face a substantial risk of serious harm if transferred to a men's facility due to her particular medical and social history, prior experiences in BOP custody, status as a transgender woman who would be stigmatized and targeted for being transferred from a women's to men's facility, and the effects that being removed from a women's facility would have on her gender

dysphoria. Based on the findings this Court has already made, and the evidence incorporated herein, Plaintiffs are likely to succeed on the merits of their Eighth Amendment claims.

## II. PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT THIS COURT'S INTERVENTION.

Plaintiffs incorporate by reference their arguments regarding irreparable harm set forth in their prior briefing in support of the June 7 preliminary injunction. (ECF Nos. 117-1 to -28, 183-1 to -7.) As this Court found, constitutional violations themselves constitute irreparable harm. (*See* ECF No. 161 at 50 (finding irreparable harm satisfied because Plaintiffs' likelihood of success on Eighth Amendment claims established a prospective constitutional violation, which inherently constitutes irreparable injury (citing *Davis v. District of Columbia*, 158 F.3d 1342, 1346 (D.C. Cir. 1998)).) Plaintiffs have also established, based on their individual characteristics, that they face irreparable harm from the serious and foreseeable threat of physical and sexual violence, psychological harm, and exacerbated gender dysphoria if they are transferred to men's facilities. (*See* ECF No. 117-1 at 61–62.)

## III. THE BALANCE OF HARMS AND PUBLIC INTEREST WEIGH HEAVILY IN FAVOR OF EMERGENT RELIEF.

Plaintiffs incorporate by reference their arguments regarding the balance of equities and public interest set forth in their prior briefing. (ECF Nos. 117-1, 183-1.) The balance of equities and the public interest strongly favor Plaintiffs and ongoing relief from the Court.[3] Simply put, enforcement of an unconstitutional policy is never in the public interest. *See Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020). And, as this Court has recognized, any public interest in the relocation of Plaintiffs "is slight at best" and "outweighed" by the serious and irreparable harm

[3] When the party opposing a preliminary injunction is the federal government, the final two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

that Plaintiffs face—including "a heightened risk of sexual violence, as well as self-harm and suicide"—if they are transferred from women's to men's facilities. (ECF No. 161 at 51.)

## IV. THE REQUESTED INJUNCTION MEETS THE PLRA'S REQUIREMENTS.

Plaintiffs incorporate by reference their arguments regarding the PLRA's requirements set forth in their prior briefing. (ECF Nos. 117-1, 183-1.) As is the case with the June 7 injunction, the requested injunction is narrowly drawn and extends no further than necessary to correct and prevent the harm to Plaintiffs that would result from implementation of the Executive Order. *See* 18 U.S.C. § 3626(a)(2). When issuing it's the most recent preliminary injunction, the Court found:

> Plaintiffs have shown a substantial likelihood of success on their claims that implementation of Section 4(a) of Executive Order 14168 would be unlawful as applied to them and would cause them immediate, irreparable harm. Preliminary relief preventing the implementation of that section as to Plaintiffs is necessary to correct this immediate, irreparable harm.
>
> This Order is narrowly drawn and extends no further than necessary to correct the harm that the Court finds requires preliminary relief. It restrains Defendants from applying only the challenged section of the Executive Order and BOP's policies implementing that section, and it restrains Defendants from doing so only as to Plaintiffs. Further, this Order is the least intrusive action the Court could take that will ensure Plaintiffs are not deprived of their rights or subjected to irreparable harm. The Order does not contemplate ongoing judicial supervision over Defendants' day-to-day management and operations of BOP facilities; it simply preserves Defendants' own prior determinations regarding Plaintiff's housing while this litigation proceeds, and pauses implementation of the section of an Executive Order that eliminates Defendants' discretion to determine housing on an individualized basis. The Court has considered any adverse impact on public safety or on the operation of the criminal justice system caused by the preliminary relief and has given substantial weight to such impacts. *Id.* The Court finds that no adverse impacts on public safety or the operation of the criminal justice system will result from maintaining the status quo of Plaintiffs' housing status in women's facilities for 90 days while this litigation proceeds.

(ECF No. 160 at 2–3.) The proposed preliminary injunction likewise requires Defendants to maintain Plaintiffs' housing in women's facilities while the litigation proceeds and can satisfy the PLRA's requirements for the same reasons.

Lastly, as this Court has previously found, this Order will have no adverse impact on public safety and operation of the criminal justice system. The effect of the Court's order is to return Plaintiffs to the *status quo*, consistent with BOP's own prior determinations that each Plaintiff can be safely housed in women's general population, subject to the same rules and regulations that bind all other women in women's facilities.

## CONCLUSION

For the foregoing reasons, and based on the arguments and evidence set forth herein and incorporated by reference, Plaintiffs respectfully request that the Court enter a new preliminary injunction for the period from September 7, 2026, to December 6, 2026, requiring Defendants to maintain the *status quo* immediately before January 20, 2025, by maintaining and continuing each Plaintiff's housing status in women's facilities.

Dated: August 18, 2026

Respectfully submitted,

/s/ *Jennifer Fiorica Delgado*

Jennifer Fiorica Delgado (Bar. No. NY296)
Alexander Shalom (Bar No. 66195)
Natalie J. Kraner (Bar No. 66202)
Wayne Fang (admitted *pro hac vice*)
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
(862) 926-2029
(973) 422-6722
jdelgado@lowenstein.com
ashalom@lowenstein.com
nkraner@lowenstein.com
wfang@lowenstein.com

Eve L. Hill (Bar No. 424896)
**BROWN GOLDSTEIN & LEVY, LLP**
120 E. Baltimore St., Suite 2500
Baltimore, MD 21202
(410) 962-1030
(410) 385-0869
ehill@browngold.com

Jennifer L. Levi (Bar. No. MA0056)
Sarah Austin (admitted *pro hac vice*)
**GLBTQ LEGAL ADVOCATES & DEFENDERS**
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
jlevi@glad.org
saustin@glad.org

Christopher F. Stoll (admitted *pro hac vice*)
Amy Whelan (admitted *pro hac vice*)
**NATIONAL CENTER FOR LGBTQ RIGHTS**
1401 21st Street #11548
Sacramento, CA 95811
(415) 365-1320
cstoll@nclrights.org
awhelan@nclrights.org

*Pro Bono Counsel for Plaintiffs*