**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| EMILY DOE, MARY DOE, OLIVIA DOE, SARA DOE, ZOE DOE, LOIS DOE, SALLY DOE, and WENDY DOE, | Case No. 1:25-cv-00286-RCL |
| JANE JONES, AMY JONES, BARBARA JONES, and CARLA JONES, | Case No. 1:25-cv-00401-RCL |
| MARIA MOE, | Case No. 1:25-cv-00653-RCL |
| Plaintiffs, | |
| v. | |
| TODD BLANCHE, *in his official capacity* as Attorney General of the United States, and WILLIAM K. MARSHALL III, *in his official capacity as* Director of the Bureau of Prisons, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO STAY DEADLINE TO RESPOND TO PRELIMINARY INJUNCTION (ECF NO. 247) AND PLAINTIFFS' REQUEST FOR A RULE 16 CONFERENCE**

Defendants are asking this Court for "emergency" relief from a schedule *they requested*. As justification, Defendants explain they intend to seek summary judgment on the issue of exhaustion—an affirmative defense on which they bear the burden, and which this Court has previously recognized Defendants "may . . . properly raise" in opposing Plaintiffs' preliminary-injunction motion, (ECF No. 237 at 5–6), which has now been pending for six weeks. The litigation preference of Defendants is no basis to indefinitely stall briefing on Plaintiffs' pending motion for injunctive relief—particularly where Plaintiffs have asserted they are suffering severe and ongoing irreparable harm. Defendants should be held to the schedule they requested, (ECF No. 229 at 2), and their current motion should be denied.

## BACKGROUND

In June and July 2026, Defendants moved all incarcerated Plaintiffs to a segregated unit that they referred to as "a new, all-male facility." (ECF No. 228 at 4.) After the Court concluded that challenges to that unit fell outside the existing pleadings, Plaintiffs moved on September 3, 2026, for leave to file a supplemental complaint, and filed their Motion for Preliminary Injunction the next day. (ECF Nos. 221, 224; ECF No. 229 at 1.)

Defendants opposed supplementation solely on the ground that Plaintiffs had not exhausted administrative remedies under the Prison Litigation Reform Act ("PLRA"), arguing that "the Court should not burden the government with motion practice and hearings until Plaintiffs established [sic] that they have satisfied the mandatory exhaustion prerequisite." (ECF No. 237 at 4 (quoting ECF No. 225 at 7).) Plaintiffs' reply explained that (1) no administrative remedy is available because the segregated unit implements Section 4(a) of Executive Order 14168, which the D.C. Circuit has held BOP's grievance process "cannot stop or reverse," and (2) Defendants, who bear

the burden on this affirmative defense, offered no evidence showing that Plaintiffs failed to exhaust. (ECF No. 228 at 1–8 (citing *Doe v. Blanche*, 172 F.4th 901, 906, 914 (D.C. Cir. 2026)).)

On September 16, 2026, Defendants moved for "clarification," effectively seeking a stay of briefing on Plaintiffs' preliminary-injunction motion until the Court decided the motion for leave to file the supplemental complaint. (ECF No. 229.) In that motion, Defendants represented that if leave were granted, they "intend to respond to the preliminary injunction motion within 7 days thereafter per the Local Civil Rules 65.1(c)." (*Id.* at 2.) Their proposed order asked the Court to direct that Defendants "shall respond to Plaintiffs' motion for preliminary injunction (ECF No. 224) within 7 calendar days after leave is granted." (*Id.* at 3.) The Court granted the motion. (ECF No. 232.)

On October 8, 2026, the Court granted leave to file the supplemental complaint. (ECF No. 237.) The Court held that failure to exhaust is an affirmative defense under the PLRA, that it may be resolved at the pleading stage only in the "narrow exception" where the relevant facts "are clear from the face of the complaint," and that this exception did not apply. (*Id.* at 3–5 (citing *Jones v. Bock*, 549 U.S. 199, 215–17 (2007), and *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998)).) The Court declined "to shift the burden of proof simply because Defendants have once again made a point to note that they feel hampered by litigating this case." (*Id.* at 4.) And the Court found "little prejudice to Defendants" from supplementation, because "Defendants have had plenty of time in which to review Plaintiffs' accompanying motion for preliminary injunction" and may raise exhaustion "there." (*Id.* at 5–6.)

That same day, Defendants demanded that Plaintiffs "confirm by COB today" that they had not exhausted and "immediately withdraw" both the preliminary-injunction motion and the supplemental complaint. (ECF No. 247-1 at 3.) Plaintiffs responded that they would oppose any

exhaustion defense on all available legal and factual grounds, noted that Defendants "have refused to produce [Plaintiffs'] own clients' records," including any grievance records, and stated that, given the urgent situation Plaintiffs face, they looked forward to Defendants' opposition on or before October 15, 2026, as ordered. (*Id.* at 2.) Defendants filed the present motion the next day, stating that they are "prepared to move for summary judgment . . . in seven calendar days." (ECF No. 247 at 2.)

## LEGAL STANDARD

A court's power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). But that power is not exercised lightly. "[I]f there is even a fair possibility that the stay . . . will work damage to some one else," the party seeking it "must make out a clear case of hardship or inequity in being required to go forward." *Id.* at 255. "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). A district court must weigh the competing interests and may not enter a stay that is "immoderate" or unjustified by the movant's showing. *See Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 731–32 (D.C. Cir. 2012).

Moreover, because Defendants' motion seeks, in substance, to modify a court-ordered briefing schedule on the motion for a preliminary injunction, it is also governed by Fed. R. Civ. P. 16(b)(4), which provides that a scheduling order may only be modified with the court's consent and upon a showing of "good cause." A party moving to modify must demonstrate both diligence and lack of prejudice to the opposing party. *See Headfirst Baseball LLC v. Elwood*, 206 F. Supp. 3d 148, 154 (D.D.C. 2016).

## ARGUMENT

### I. Defendants Have Not Shown Good Cause to Abandon the Schedule They Requested and the Court Ordered.

Defendants' motion asks the Court to retract relief Defendants requested and received. On September 16, Defendants told the Court that, if leave were granted, they would respond to the preliminary-injunction motion within seven days. (ECF No. 229 at 2–3.) The Court adopted that schedule. (ECF No. 232.) Nothing material has changed, except that their opposition to the motion for leave to file a supplemental complaint failed. (ECF No. 237.) When they proposed the schedule, Defendants knew their sole opposition to supplementation was exhaustion, (ECF No. 237 at 4), and that the Court might reject it. A party that obtains a schedule of its own design cannot, upon losing the underlying motion, declare an "emergency" and ask to be released from it. That is not good cause; it is an effort to obtain through a stay what Defendants could not obtain through their opposition to supplementation—a halt to preliminary-injunction proceedings until Plaintiffs affirmatively prove exhaustion. (*See* ECF No. 237 at 4.)

Nor can Defendants claim surprise or insufficient time. Plaintiffs' motion has been on file since September 4, 2026. (ECF No. 224.) By the October 15 deadline, Defendants will have had nearly six weeks to review and respond to it. The Court has already found that "Defendants have had plenty of time in which to review Plaintiffs' accompanying motion for preliminary injunction." (ECF No. 237 at 5–6.) The "emergency" Defendants invoke—a federal holiday and a deadline "in six days," (ECF No. 247 at 2–3)—is a timeline of their own choosing.

The Court has also already addressed, and rejected, the premise of this motion. Defendants previously urged that "the Court should not burden the government with motion practice and hearings" until Plaintiffs established exhaustion. (ECF No. 237 at 4 (quoting ECF No. 225 at 7).) The Court "decline[d] to shift the burden of proof simply because Defendants have once again

made a point to note that they feel hampered by litigating this case." (*Id.*) Defendants' present motion is the same argument in a new procedural wrapper. Their stated reason for a stay is that it does not "make sense . . . to require Defendants to simultaneously brief, in full, a request for emergency injunctive relief." (ECF No. 247 at 2.) But feeling hampered by the obligation to litigate is not a "clear case of hardship or inequity." *Landis*, 299 U.S. at 255. Responding to a properly filed motion on a schedule the movant proposed is the ordinary burden of litigation, not a hardship that justifies suspending it. Moreover, Defendants' unilateral decision to pursue summary judgment instead of opposing a preliminary injunction is a strategic choice, not a circumstance beyond their control, and it does not satisfy the diligence requirement. *See Centerline Logistics Corp. v. U.S. Dep't of Labor*, No. 26-cv-2773 (BAH), 2026 WL 2415797, at *1 (D.D.C. Aug. 18, 2026) ("[T]he USAO-DC, on behalf of defendants, has presented a proposal for briefing on a wished-for motion [for summary judgment] *not* currently pending before the Court and thus does nothing to address the motion [for a preliminary injunction] that *is* pending. Judges must decide the motions presented to them by the parties, however, even when the USAO-DC declines to participate in the briefing because of a preference to respond to a motion it believes plaintiffs should have brought. That is not the way litigation proceeds.") (emphasis in original).

## II. Defendants' Intention to File Another Premature Motion for Summary Judgment Does Not Warrant a Stay.

Defendants' motion for a stay rests on the premise that, because they intend to move for summary judgment, the Court should freeze briefing on a pending preliminary-injunction motion. (ECF No. 247 at 2–4.) That premise is unsupported. Defendants cite no authority holding that a party's announced intention to file a dispositive motion stays its obligation to respond to a pending motion. The only case they do cite, *Landis*, places the burden squarely on them to demonstrate a "clear case of hardship or inequity" where, as here, a stay threatens harm to the opposing party.

299 U.S. at 254–55. Courts in this District routinely decline to halt proceedings merely because a party believes its forthcoming dispositive motion will succeed; a contrary rule would allow any litigant to obtain an indefinite stay simply by announcing confidence in its own defense. *See Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 21–22 (D.D.C. 2019) (denying government's motion to stay summary-judgment briefing pending anticipated agency action it claimed would moot the case, because "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity,'" which is "particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before [the Court]") (citation modified); *Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131, 137–43 (D.D.C. 2017) (denying the "extraordinary remedy" of a stay pending a potentially dispositive appeal where the government showed neither "any true hardship" nor any efficiency gains from the substantial delay) (citation modified); *United States v. Honeywell Int'l, Inc.*, 20 F. Supp. 3d 129, 131–33 (D.D.C. 2013) (denying motion to stay pending resolution of summary-judgment motions where government did not "make out a clear case of hardship or inequity in being required to go forward" and the likelihood of success of the motions rested on "speculation").

Defendants' requested stay is also "immoderate" in duration. *Belize Soc. Dev.*, 668 F.3d at 732. Defendants do not propose to defer their opposition by a few days; they ask to defer it until the Court resolves a summary-judgment motion that has not yet been filed. (ECF No. 247 at 4.) Such a motion would require full briefing, would likely require Plaintiffs to seek discovery under Rule 56(d) because Defendants have refused to respond to discovery requests seeking the relevant records (*see* Part III.B *infra*), and would then await decision. Meanwhile, the preliminary-injunction motion—the only vehicle for interim relief from ongoing harm—would sit idle. A stay of that open-ended character, entered at the request of the party whose conduct is causing

irreparable harm, is precisely what *Landis* forbids absent a compelling showing. *See Nat'l Indus. for Blind*, 296 F. Supp. 3d at 140–41 (finding that the government cannot, "consistent with equity principles, . . . both opt to implement the policy that is allegedly harmful to Plaintiffs and simultaneously seek an indefinite delay of the proceedings that Plaintiffs have brought to challenge the policy—at least without good reason").

Finally, a stay is unnecessary because Defendants can fully present their exhaustion defense when opposing the motion for a preliminary injunction. A plaintiff seeking a preliminary injunction must show a likelihood of success on the merits, and Defendants are free to argue that exhaustion defeats that showing. The Court said exactly this: Defendants "may, and certainly will, properly raise the issue of exhaustion there." (ECF No. 237 at 5–6.) Defendants represent that they can prepare a summary-judgment motion on exhaustion in seven days. (ECF No. 247 at 2.) If so, they can present the same arguments, on the same seven-day timeline, in the opposition they are already required to file, without the additional delay and additional resources that another premature summary-judgment motion will entail. Defendants' supposed efficiency concern collapses: the efficient course is a single round of briefing in which the Court considers exhaustion together with the merits, not serial proceedings that postpone the merits indefinitely.

## III. The Exhaustion Question Is Not Simple, and the Court Has Already Declined to Treat It as Such.

Defendants' motion assumes that non-exhaustion is "not subject to dispute, much less a genuine one," and that the preliminary-injunction motion "cannot be granted." (ECF No. 247 at 2.) Both assumptions are wrong. The Court's acknowledgment that exhaustion may be a "substantial" obstacle, (ECF No. 237 at 5), is not a finding that the issue is simple or undisputed; the Court instead held that exhaustion could not be resolved on the face of the pleadings. (*Id.* at 3–

5.) As Plaintiffs explained in their reply in support of leave to file a supplemental complaint, the exhaustion inquiry turns on at least two contested questions. (ECF No. 228 at 1–8.)

### A. No Administrative Remedy Is Available Because the Segregated Unit Implements the Executive Order.

The PLRA requires exhaustion only of remedies that are "available." 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 642–43 (2016). A remedy is unavailable when it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643. The D.C. Circuit has already held, in this very case, that BOP's grievance process "cannot stop or reverse" actions mandated by Section 4(a) of Executive Order 14168, and that defendants bear the burden of showing that a remedy was available. *Doe v. Blanche*, 172 F.4th at 906, 914; (*see also* ECF No. 228 at 1–3).

The segregated unit is the next step in BOP's implementation of that same Executive Order. It is the product of a categorical, nationwide directive from BOP's Central Office applied to Plaintiffs because they are transgender women; BOP itself has described it as "a new, all-male facility"; and Defendants justify it by invoking the same privacy, safety, and dignity interests articulated in the Executive Order. (ECF No. 228 at 3–5; *see also* ECF No. 237 at 5.) No warden, regional director, or Central Office official in the grievance chain has authority to dissolve the unit or return Plaintiffs to women's general population without contravening the Executive Order as Defendants construe it. (ECF No. 228 at 5–6.) And to the extent Defendants contend the unit was compelled by the injunction in *Fleming v. Rule*, No. 4:25-cv-00157-D (N.D. Tex.), that contention only confirms that BOP officials disclaim authority to provide relief through the grievance process. (*Id.* at 4–5.) Either way, the grievance process is a dead end. At a minimum, whether a remedy was available—measured, as *Ross* requires, by the "facts on the ground"—is a genuinely disputed question that Defendants cannot resolve by mere assertion. 578 U.S. at 643.

### B. Defendants Have Not Shown That Plaintiffs Failed to Exhaust, and They Are Withholding the Very Records That Bear on the Question.

Failure to exhaust is an affirmative defense on which Defendants bear the burden. *Jones*, 549 U.S. at 216; *Doe v. Blanche*, 172 F.4th at 906; (ECF No. 237 at 3–4). Defendants have offered nothing new to carry it. Their only evidence remains a declaration based on administrative-remedy searches conducted only days—and in one instance one week—after four Plaintiffs were transferred to the segregated unit in July 2026. (ECF No. 228 at 7–8 (citing ECF No. 190-2 ¶¶ 40–43).) Defendants have made no effort to update that record. (*Id.* at 8.)

Defendants' insistence that non-exhaustion is "undisputed," (ECF No. 247 at 2), is particularly untenable because Defendants control the relevant evidence and are refusing to produce it to Plaintiffs. BOP maintains Plaintiffs' administrative-remedy filings and its responses (or non-responses) to them. Plaintiffs have repeatedly requested their own records informally and renewed that request in a First Request for Production of Documents served on August 20, 2026; Defendants have refused to produce them. (ECF No. 247-1 at 2.) Instead, Defendants accused Plaintiffs of "obfuscat[ion]" when Plaintiffs did not immediately "confirm" a failure to exhaust. (ECF No. 247 at 3–4; ECF No. 247-1 at 3.) This is not how litigation works, regardless of how hampered Defendants may feel. Defendants refuse to produce relevant documents and at the same time intend to move for summary judgment—a motion that requires undisputed facts—before even responding to the Amended and Supplemental Complaint. The information asymmetry Defendants have manufactured in this case, including through refusing to respond to discovery requests, is reason enough to reject Defendants' premise that summary judgment can be resolved quickly or that its outcome is a foregone conclusion. Indeed, Defendants' refusal to produce administrative-remedy records is a basis for relief under Federal Rule of Civil Procedure 56(d)—further demonstrating that Defendants' proposed stay would be anything but brief.

### IV. The Balance of Harms Weighs Decisively Against a Stay.

Where a stay "will work damage to some one else," the movant must make a "clear case of hardship or inequity" justifying the stay. *Landis*, 299 U.S. at 255. Here, a stay will cause concrete and ongoing damage to Plaintiffs, who are experiencing escalating gender dysphoria symptoms and rapidly deteriorating mental health because of their placement in the segregated unit. All incarcerated Plaintiffs report distress, including new or worsening thoughts of self-harm and suicide; and some have been placed on suicide watch. (ECF No. 228 at 8–9 (citing ECF Nos. 224-3 through 224-10).) Each day of delay prolongs and intensifies those harms.

On the other side of the ledger, Defendants identify only the inconvenience of filing an opposition that they have had nearly six weeks to prepare and that they promised to file within seven days of the Court's ruling. (ECF No. 247 at 2–3; ECF No. 229 at 2.) That is not hardship. The Court has already found "little prejudice to Defendants" from going forward because "they will still have a full and fair opportunity to litigate this matter"—including by raising exhaustion in their opposition to the motion for a preliminary injunction. (ECF No. 237 at 5.) The public interest and judicial economy likewise favor a single, prompt round of briefing in which the Court can consider all of Defendants' arguments—exhaustion included—together.

## CONCLUSION

Defendants' motion is their third attempt to defer any ruling on interim relief, each time at Plaintiffs' expense. (*See* ECF No. 225 at 7; ECF No. 229 at 1–2; ECF No. 247 at 4.) The Court should deny Defendants' Emergency Motion to Stay, (ECF No. 247), and order Defendants to file their opposition to Plaintiffs' Motion for Preliminary Injunction, (ECF No. 224), on or before October 15, 2026, as previously ordered, (ECF No. 232). Plaintiffs further respectfully request a

Rule 16 conference with the Court to establish deadlines and an orderly process for discovery and dispositive motions.

Dated: October 13, 2026

Respectfully submitted,

/s/ Alexander Shalom

Jennifer Fiorica Delgado (Bar No. NY296)
Alexander Shalom (Bar No. 66195)
Natalie J. Kraner (Bar No. 66202)
Wayne Fang (admitted *pro hac vice*)
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
(862) 926-2029 (973) 422-6722
jdelgado@lowenstein.com
ashalom@lowenstein.com
nkraner@lowenstein.com
wfang@lowenstein.com

Eve L. Hill (Bar No. 424896)
**BROWN GOLDSTEIN & LEVY, LLP**
120 E. Baltimore St., Suite 2500
Baltimore, MD 21202
(410) 962-1030
(410) 385-0869
ehill@browngold.com

Of Counsel
Emily Nash (Bar No. MA0031)
Matthew Miller (*pro hac vice* forthcoming)
Howard Weiss (Bar No. MA0046)
**FOLEY HOAG LLP**
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000
enash@foleyhoag.com
mmiller@foleyhoag.com
hweiss@foleyhoag.com

Jennifer L. Levi (Bar No. MA0056)
Sarah Austin (Bar No. ME0007)
**GLBTQ LEGAL ADVOCATES & DEFENDERS**
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
jlevi@glad.org
saustin@glad.org

Christopher F. Stoll (admitted *pro hac vice*)
Amy Whelan (admitted *pro hac vice*)
**NATIONAL CENTER FOR LGBTQ RIGHTS**
1401 21st Street #11548
Sacramento, CA 95811
(415) 365-1320
cstoll@nclrights.org
awhelan@nclrights.org

*Pro Bono Counsel for Plaintiffs*