**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JANE DOE, *et al.* ,

Plaintiffs,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, *et al.* ,

Defendants.

Civ. A. No. 25-286 (RCL)

Consolidated with *Jones v. Blanche*, Civ. A. No. 25-401 (RCL); *Moe v. Trump*, Civ. A. No. 25-653 (RCL)

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON SUPPLEMENTAL COMPLAINT(COUNTS IX–XIV) AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 1

I. Relevant Factual Background ........ 2

II. Relevant Procedural History ........ 3

ARGUMENT ........ 7

I. The Court Should Grant Summary Judgment to Defendants, and Dismiss the Supplemental Complaint, Because It Is Undisputed that Plaintiffs Have Failed to Exhaust Their Claims About FMC Carswell. ........ 7

II. Plaintiffs' Motion for Preliminary Injunction Should Be Denied as Moot, Because It Is Based on Unexhausted Claims. ........ 11

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABA, Inc. v. Dist. of Columbia*,
40 F. Supp. 3d 153 (D.D.C. 2014) ....11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .... 6, 10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....6, 7

*Doe v. Blanche*,
172 F.4th 901 (D.C. Cir. 2026) .... 2, 8, 10

*Doe v. Blanche*,
2026 WL 1642068 (D.D.C. June 7, 2026) ....2

*Jeanes v. Dep't of Justice*,
231 F. Supp. 2d 48 (D.D.C. 2002) ....11

*Jones v. Bock*,
549 U.S. 199 (2007) .... 1, 7, 8

*McCarthy v. Madigan*,
503 U.S. 140 (1992) ....7

*Ross v. Blake*,
578 U.S. 632 (2016) ....10

*Taylor v. Trump*,
788 F. Supp. 3d 1 (D.D.C. 2025) ....11

*Wallace v. Lynn*,
507 F.2d 1186 (D.C. Cir. 1974) ....11

*Woodford v. Ngo*,
548 U.S. 81 (2006) ....7, 8

**Statutes**

42 U.S.C. § 1997e ....1, 7

**Rules and Regulations**

Fed. R. Civ. P. 1 .......... 6

Fed. R. Civ. P. 56 .......... *passim*

28 C.F.R. §§ 542.13–.15 .......... 8

**Other Authorities**

Exec. Order No. 14,168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 30, 2025) .......... 2, 8

## INTRODUCTION

Plaintiffs are federal inmates who are transgender. In a "Supplemental" Complaint in this longstanding case challenging their transfer to *male* facilities, Plaintiffs assert new claims about the conditions of their confinement at Federal Medical Center ("FMC") Carswell, a female facility. ECF 242. Plaintiffs' Supplemental Complaint—and accompanying Motion for Preliminary Injunction (ECF 224)—fail as a matter of law. Among other deficiencies, Plaintiffs have failed to exhaust their administrative remedies, in violation of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Jones v. Bock*, 549 U.S. 199, 211 (2007) (exhaustion is "mandatory" under the PLRA and unexhausted claims "cannot be brought in court").

Pursuant to Federal Rule of Civil Procedure 56, Defendants respectfully ask that the Court enter judgment in their favor on Counts IX–XIV; dismiss the Supplemental Complaint in its entirety; and deny Plaintiffs' accompanying Preliminary Injunction Motion as moot.[1]

## BACKGROUND

The following background discussion is pertinent to this Motion. For further background of this case, *see* Defendants' Response to Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction, at 4–9, ECF 129.

---

[1] Defendants reserve the right to seek summary judgment on the Supplemental Complaint on additional grounds. This Motion is limited to the issue of exhaustion.

## I. Relevant Factual Background

On January 20, 2025, President Trump issued Executive Order 14,168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 30, 2025) (EO 14,168). Among other things, EO 14,168 directs BOP to ensure that male inmates are not housed in women's prisons to protect female inmates' safety, privacy, and dignity. *Id.* § 4(a). Plaintiffs, male trans-identifying inmates housed in women's facilities, sued and sought preliminary injunctions to block their transfer to men's prisons. *See Doe* Sec. Am. Compl., ECF 58-2; *Jones* Am. Compl., ECF 35; *Moe* Compl., ECF 1. After the D.C. Circuit vacated the first preliminary injunctions that this Court entered, *Doe v. Blanche*, 172 F.4th 901 (D.C. Cir. 2026), this Court entered another preliminary injunction on June 7, 2026, that again enjoined Defendants from transferring Plaintiffs to men's facilities. *Doe v. Blanche*, 2026 WL 1642068 (D.D.C. June 7, 2026). The government appealed, and expedited briefing in the D.C. Circuit is underway. *See* No. 26-5238 (D.C. Cir. June 24, 2026).

Meanwhile, BOP was defending another lawsuit in the District Court for the Northern District of Texas brought by biologically female inmates housed at FMC Carswell, a women's facility. *See* Compl., ECF 1, *Fleming v. Rule*, No. 4:25-cv-157 (N.D. Tex. Feb. 19, 2025). In *Fleming*, the plaintiffs sought to have the biologically male inmates then housed with them at FMC Carswell—which included some Plaintiffs here—moved elsewhere, on the basis that being housed with biological men violated their bodily integrity and subjected them to cruel and unusual punishment. *Id.* On June 2, 2026, the *Fleming* court granted a preliminary injunction and ordered that BOP "shall house male inmates in a secure, segregated area at FMC Carswell, and shall use such separate movement, routing, scheduling, or other measures

as necessary to prevent overlap between male inmates and female inmates in housing and shared spaces." *Id.*, Preliminary Injunction, at 3, ECF 199 (N.D. Tex. June 2, 2026).

BOP thereafter informed this Court that four of the biologically male inmates housed at FMC Carswell subject to the *Fleming* preliminary injunction were Plaintiffs in the instant case (Zoe Doe, Mary Doe,[2] Emily Doe, and Carla Jones), and, on June 2, 2026, in compliance with the *Fleming* injunction, these inmates along with a fifth inmate at FMC Carswell were moved to their own housing unit. *See* Notice of Prelim. Inj. in *Fleming*, ECF 133. BOP explained that "[t]his housing arrangement was also implemented to comply with both the *Fleming* and *Doe* injunctions and to protect the safety and bodily privacy concerns of both biologically female and biologically male inmates." Decl. of Rick Stover ¶ 14, ECF 189-2 ("Stover Decl."); *see also* Decl. of Warden Tyal Rule ¶ 6, ECF 189-3 ("Rule Decl."). The unit was selected because, *inter alia*, it is sufficiently spacious, includes an open area for socialization and programming, provides areas suitable for private medical examinations, and offers easy access to psychology and health services. Rule Decl. ¶ 7. BOP took significant measures, and expended significant resources, to establish and operationalize the FMC Carswell unit, including continuation of the inmates' medical care, mental health treatment, recreation, and programming. *Id.* ¶¶ 8, 10–11, 13–14, 17–28; *see also* Decl. of Dr. Brittany Field ¶¶ 6–8, ECF 189-4 ("Field Decl.").

## II. Relevant Procedural History

On July 15, 2026, BOP informed the Court that it would be transferring additional Plaintiffs from the female facilities where they were currently housed to the FMC Carswell

[2] Plaintiff Mary Doe's claims have since been voluntarily dismissed. ECF 236.

unit. Notice of Anticipated Transfer, ECF 168; *see* Rule Decl. ¶¶ 40–43 (stating that Maria Moe was transferred to the FMC Carswell unit on July 16, 2026, Amy Jones and Olivia Doe were transferred on July 20, 2026, and Sara Doe on July 21, 2026). Later that day, Plaintiffs moved on an emergency basis to "preserve the status quo" by blocking the transfers, ECF 169, and Defendants opposed, ECF 170. The Court asked Plaintiffs to explain whether transferring them "to a segregated housing unit within a women's facility . . . is contemplated by the existing complaint[.]" July 17, 2026 Order, ECF 177. Plaintiffs responded that it did, ECF 181; Defendants responded that it did not, ECF 184.

On the same day that Plaintiffs responded to the Court's jurisdictional inquiry and without waiting for the Court to decide the jurisdictional issue, Plaintiffs moved for a preliminary injunction to break up the FMC Carswell unit and to compel BOP to transfer them to the general populations of women's facilities in which they had previously been housed. ECF 183. On July 24, 2026, Defendants responded to Plaintiffs' preliminary injunction motion, arguing, *inter alia*, that the relief sought in Plaintiffs' motion did not fall within the scope of their complaint; Plaintiffs did not exhaust their administrative remedies under the PLRA (with a supporting declaration from the FMC Carswell Warden, Rule Decl. ¶¶ 31–43); the APA claims fail at their threshold; and in any event, the housing of Plaintiffs in the FMC Carswell unit is lawful. ECF 190. The Court denied Plaintiffs' motion on jurisdictional grounds but stated that "nothing in today's order prohibits Plaintiffs from seeking leave of court to amend their complaint and includes the issues for which they are requesting relief." *See* ECF 212, at 5–8.

On September 3, 2026, Plaintiffs moved for leave to file a supplemental complaint pleading allegations and claims challenging the FMC Carswell unit. ECF 221. Without waiting for the Court's decision as to whether leave was appropriate, on September 4, 2026, Plaintiffs filed another preliminary injunction motion targeting the unit. ECF 224. Defendants opposed Plaintiffs' motion for leave on futility grounds, explaining that Plaintiffs had not exhausted their administrative remedies under the PLRA. ECF 225. The Court then clarified that Defendants would not be required to respond to the latest preliminary-injunction motion regarding FMC Carswell (ECF 224), pending resolution of Plaintiffs' motion for leave to file the putative supplemental complaint that would encompass their FMC Carswell claims. ECF 232. The Court indicated that Defendants would, if leave were granted to file a supplemental complaint, have seven calendar days to respond to the premature preliminary-injunction motion. *Id.*

On October 8, 2026, the Court granted Plaintiffs' motion for leave to file the supplemental complaint. ECF 237. The Court found that Plaintiffs do not have the burden to plead exhaustion, which is an affirmative defense, and the putative supplemental complaint was "pointedly silent on its face" as to whether Plaintiffs had pursued their administrative remedies. *Id.* at 4, 5. The Court expressed appreciation, however, that, "exhaustion will likely be a substantial, perhaps insurmountable obstacle" for Plaintiffs' Supplemental Complaint. *Id.* at 5. The Court noted that "Defendants may, and certainly will" raise the issue of exhaustion in "any future answer or motion for summary judgment." *Id.* at 5–6. In an effort to avoid even more needless motions practice, Defendants immediately contacted Plaintiffs to ask whether Plaintiffs had, in fact, exhausted the FMC Carswell claims in their Supplemental Complaint.

ECF 247-1. Plaintiffs dodged Defendants' question, indicating that "[i]f Defendants choose to raise exhaustion as an affirmative defense, they can do so in their answer to the supplemental complaint, or in a motion to dismiss. Plaintiffs will oppose any such defense on all legal and factual grounds available to them." *Id.*

In the words of the Court, it is time for the exhaustion issue to be "squarely and promptly addressed." ECF 237 at 6. Defendants now do so.[3]

## LEGAL STANDARD

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 (1986) (quoting Fed. R. Civ. P. 1). Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one whose existence affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" factual dispute exists when the non-movant produces sufficient evidence of a material fact so that a fact finder is required to resolve the parties' differing versions at trial. *Id.* "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and

[3] Defendants have moved, on an emergency basis, to stay their deadline to oppose the preliminary-injunction motion regarding FMC Carswell, which is otherwise due on October 15, 2026. ECF 247. That motion to stay is pending.

defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex Corp*, 477 U.S. at 327.

## ARGUMENT

There is no genuine dispute that Plaintiffs have failed to exhaust their administrative remedies with regard to their FMC Carswell claims. As a matter of law, therefore, Defendants are entitled to judgment on the Supplemental Complaint (ECF 242). *See* Fed. R. Civ. P. 56(a). Because a preliminary injunction cannot be issued as against unexhausted claims, Plaintiffs' motion for preliminary injunction regarding FMC Carswell should be denied as moot—or, at the very minimum, held in abeyance pending resolution of this Motion.

### I. The Court Should Grant Summary Judgment to Defendants, and Dismiss the Supplemental Complaint, Because It Is Undisputed that Plaintiffs Have Failed to Exhaust Their Claims About FMC Carswell.

The PLRA requires federal inmates to exhaust their claims within prison remedial schemes before seeking judicial relief. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "[E]xhaustion is mandatory under the PLRA," and "unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.

Exhaustion of administrative remedies "serves two main purposes." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "First, exhaustion protects 'administrative agency authority,' . . . giv[ing] an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court[. ]'" *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). "Second, exhaustion promotes efficiency." *Id.* That is because "even where

a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id.* (quotations omitted). BOP's Administrative Remedy Program has four levels: (i) aggrieved individuals must first attempt an informal resolution with unit staff, then (ii) submit an administrative remedy request to the Warden, then (iii) appeal to BOP's Regional Director, and then, (iv) if necessary, appeal to BOP's General Counsel. *See* 28 C.F.R. §§ 542.13–.15. An inmate must fully exhaust this multi-stage process. Not a single Plaintiff in this case has exhausted their claims with respect to FMC Carwell, which were pled for the first time in the Supplemental Complaint, as explained in the Supplemental Declaration of Warden Rule, attached as Ex. 1, ¶¶ 4–12 ("Suppl. Rule Decl.").

Plaintiffs cannot avoid their exhaustion obligation by reliance on *Doe v. Blanche*, as they have foreshadowed their intent to do. *See* Pls.' Opp'n to Defs.' Emergency Mot. to Stay, at 8, ECF 249. In *Doe*, the D.C. Circuit determined that exhaustion was unnecessary because the remedy Plaintiffs sought—halting their transfer to a *men's* prison—was not actually "available" insofar as EO 14,168 precluded that exact relief. 172 F.4th at 914. Here, the relief that Plaintiffs seek is (1) to break up the FMC-Carswell unit, which is in a female facility; and (2) the transfer of Plaintiffs to the general population in a different women's facility. Suppl. Compl. at 46–47 (Prayer for Relief). That relief is currently "available," insofar as nothing prevents BOP from granting it. In contending otherwise, Plaintiffs ignore that the operative effect of Executive Order 14,168, and thus the remedies available to them, changed after this Court preliminarily enjoined enforcement of that EO. *See Jones*, 549 U.S. at 202 (under the PLRA, whether a prisoner has satisfied the exhaustion requirements is determined at the time of filing of the

complaint). Indeed, the general population of women's prisons is where Plaintiffs came from, so a return to those women's facilities—or other women's facilities—are available.

Plaintiffs note that Defendants "bear the burden" of showing the availability of other remedies, and espouse that exhaustion here would be a "dead end" because (Plaintiffs think) the FMC Carswell unit amounts to the "next step" in "implementation" of the EO. ECF 249 at 8. But Plaintiffs' *ipse dixit* is not fact. Indeed, it is demonstrably false.

As Defendants have previously explained at length, *see* Stover Decl., and consistent with this Court's preliminary injunction, BOP *chose* in its exercise of judgment and discretion to house Plaintiffs at the FMC-Carswell unit; BOP is not *precluded* by either the *Doe* or *Fleming* injunctions from disbanding that unit and transferring Plaintiffs to other female prisons. Mr. Stover explained under the penalty of perjury that BOP "consider[ed] and evaluat[ed] a range of potential measures that the BOP could take to address the issues raised in [the *Fleming*] litigation while continuing to comply with the injunction issued in *Doe* (which required plaintiffs to remain at a female facility)," and ultimately decided "to establish a separate housing unit at FMC Carswell for the specialized care of this inmate population." Stover Decl. ¶ 13. BOP discussed "which facilities were best equipped to keep Plaintiffs safe," and it determined that the FMC Carswell unit was ideal because "it allowed for routine staff contact at a female institution." *Id.* ¶ 16. BOP opted for the segregated FMC-Carswell unit, as opposed to other available options (for example, transfer to other women's facilities), because (1) the unit "protect[ed] the safety and bodily privacy concerns of both biologically female and biologically male inmates," *id.* ¶ 13; (2) as "the only female Federal Medical Center, the institution can successfully provide specialized medical and mental health services to this

inmate population diagnosed with Gender Dysphoria, as well as appropriate correctional programs," *id.* ¶ 18; (3) for administrative reasons such as bedspace, staffing, proximity to medical and mental health services, and resource conservation gained with centralization, *id.* ¶¶ 14, 15, 21; and (4) to protect BOP "from other lawsuits, like *Fleming*, which challenge the housing of biologically male inmates with biologically female inmates," *id.* ¶ 22.

In *Doe*, 172 F.4th at 914, "defendants acknowledge[d] that BOP's grievance procedure [could not] stop or reverse the challenged transfers because they [we]re mandated by the Executive Order." Here, by contrast, there is no genuine dispute that BOP considered other options to placement in the FMC-Carswell unit, including transfers to other women's prisons, and those alternate options remain "available" insofar as BOP's Administrative Remedy Program has "authority" to provide that relief. *See Doe*, 172 F.4th at 914 (quoting *Ross v. Blake*, 578 U.S. 632, 643 (2016)). Plaintiffs' apparent subjective distrust of BOP's sworn testimony is not evidence, much less a legitimate basis for finding a genuine dispute of material fact.

In sum, because there is no genuine dispute that a transfer out of the FMC-Carswell unit could be effectuated in response to and at the conclusion of Plaintiffs' pursuit of this mandatory process, summary judgment is appropriate. *Anderson*, 477 U.S. at 248.[4]

---

[4] Nor is there a need for discovery, to which Plaintiffs have alluded. *See* ECF 249 at 9 (internal pagination). The status of Plaintiffs' respective administrative remedies, which Plaintiffs refused to confirm in response to Defendants' express request (ECF 247-1) is exhaustively explored in the Supplemental Declaration by Warden Rule. It is noteworthy that—even in their latest filing (ECF 249), which vigorously opposes a stay—Plaintiffs *still* do not contend that they have, in fact, exhausted. It is because they cannot. *See supra*.

In any event, the Supplemental Rule Declaration puts any of Plaintiffs' supposedly remaining questions about their own exhaustion efforts to bed. *See generally* Suppl. Rule Decl. (testifying that no Plaintiff has exhausted). And discovery for the sake of discovery, when there are no material facts still to be discovered, is not a sound foundation under Rule 56(d).

## II. Plaintiffs' Motion for Preliminary Injunction Should Be Denied as Moot, Because It Is Based on Unexhausted Claims.

When a plaintiff has not administratively exhausted the claims that underlie a motion for preliminary injunctive relief, the preliminary injunction motion must be denied. *See Wallace v. Lynn*, 507 F.2d 1186, 1189 (D.C. Cir. 1974) ("Where a failure to exhaust administrative remedies would likely preclude an award of relief at the end of the litigation, the party seeking relief has not made a sufficient showing of probability of ultimate success to obtain a preliminary injunction."); *Taylor v. Trump*, 788 F. Supp. 3d 1, 8 (D.D.C. 2025) ("Because Defendants have shown that Plaintiffs have an available administrative remedy but have not exhausted it, Plaintiffs have failed to establish a substantial likelihood of success on the merits—a prerequisite for preliminary relief." (quotations omitted)); *ABA, Inc. v. Dist. of Columbia*, 40 F. Supp. 3d 153, 172 (D.D.C. 2014) ("Plaintiffs also cannot demonstrate likelihood of success on the merits because they have not exhausted administrative remedies."); *Jeanes v. Dep't of Justice*, 231 F. Supp. 2d 48, 51 (D.D.C. 2002) (denying motion for temporary restraining order and preliminary injunction because prisoner had not exhausted administrative remedies).

As discussed *supra* Part I, Plaintiffs have failed to exhaust the claims in their Supplemental Complaint (ECF 242), which ostensibly now provides a basis for jurisdiction over their latest Preliminary-Injunction Motion regarding FMC Carswell. Plaintiffs' Motion for Preliminary Injunction should therefore be denied as moot. At minimum, to avoid even more needless motions practice, the Preliminary-Injunction Motion should be held in abeyance pending resolution of this Motion for Summary Judgment on the Supplemental Complaint.

## **CONCLUSION**

For the foregoing reasons, the Court should enter judgment for Defendants on Counts IX–XIV; dismiss the Supplemental Complaint; and deny Plaintiffs' preliminary injunction motion as moot.

Dated: October 13, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MARIANNE F. KIES
Assistant Branch Director

/s/ *M. Jared Littman*
M. JARED LITTMAN
ELIZABETH B. LAYENDECKER
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
Jared.littman2@usdoj. gov